**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Penthouse Executive Club Compensation
Litigation

Master File No. 10 Civ 1145
(NRB)
**ECF Case**

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

---

Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................iii-vi

INTRODUCTION ...........................................................................................1

PRELIMINARY STATEMENT ......................................................................1

BACKGROUND .............................................................................................3

ARGUMENT...................................................................................................5

I.      PLAINTIFFS FAIL TO SATISFY THEIR BURDEN ON THEIR MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE PURSUANT TO § 216(b) ........................................................................5

      A.    Plaintiffs' Contention that Penthouse Has A Uniform Policy of Classifying Entertainers as Independent Contractors Is Not Sufficient to Show that the Putative Class is Similarly Situated.............................7

           1.   Plaintiffs' Declarations Do Not Establish That All Entertainers are Subject to the Same Policies ...................................10

               a.  Plaintiffs' Declarations Are Conclusory....................................10

               b.  Plaintiffs' Declarations Are Contradicted By the Declarations of Entertainers ................................................13

           2.  The Issues of Whether Entertainers Are Independent Contractors, Earn a Minimum Wage, and Receive Overtime or Are Not Determinable On the Basis of Common Proof and Individualized Analysis is Required...................................15

               a.  Classification of Entertainers as Independent Contractors.........................15

               b.  Minimun Wage/Overtime.........................................................18

           3.  Plaintiffs Do Not Demonstrate a Common Unlawful Policy Concerning Uniforms ....................................................19

II.    PLAINTIFFS' PROPOSED FORM OF NOTICE IS IMPROPER...................20

      A.    Plaintiffs' Proposed Notice Is Not Neutral........................................21

      B.    Plaintiffs' Proposed Notice Is Misleading.........................................22

      C.    Plaintiffs' Notice Does Not Have An Appropriate Opt-In Time Period .............23

III.   PLAINTIFFS' REQUEST FOR THE ENTERTAINERS' NAMES, ADDRESSES
       JOB TITLE, TELEPHONE NUMBERS, DATES OF EMPLOYMENT,
       LOCATION OF EMPLOYMENT, DATES OF BIRTH AND SOCIAL
       SECURITY NUMBERS IS UNREASONABLE ...........................................................24

CONCLUSION .......................................................................................................................25

*4462-002 Doc # 151*

## TABLE OF AUTHORITIES

*Adair v. Wisconsin Bell, Inc.*,
  No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008) ...................................7, 10

*Amendola v. Bristol-Myers Squibb Co.*,
  558 F. Supp. 2d 459 (S.D.N.Y. 2008) ...............................................................................7

*Ayres v. 127 Rest. Corp.*,
  12 F. Supp. 2d 305 (S.D.N.Y. 1998) ................................................................................19

*Bamgbose v. Delta-T Group, Inc.*,
  684 F. Supp. 2d 660 (E.D. Pa. 2010) ...........................................................................8, 15

*Barfield v. N.Y.C. Health and Hospitals Corp.*,
  No. 05 Civ. 6319 (JRS), 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005)............................6

*Bowens v. Atlantic Maint. Corp.*,
  546 F. Supp. 2d 55 (E.D.N.Y. 2008) ..........................................................................22, 23

*Brock v. Superior Care, Inc.*,
  840 F.2d 1054 (2d Cir. 1988) ...................................................................................15 n43

*Brooks v. BellSouth Telecomm., Inc.*,
  164 F.R.D. 561 (N.D. Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997).................25 n65

*Calabrese v. CSC Holdings, Inc.*,
  No. 02-cv-5171 (DLI)(JO), 2007 WL 749690 (E.D.N.Y. March 7, 2007) ......................24

*Chemi v. Champion Mortgage*,
  No. 2:05-cv-01238-WHW, 2009 WL 1470429 (D.N.J. Jun. 19, 2006) .............................8

*Clincy v. Galardi South Enterprises, Inc.*,
  Civil Action No 1:09-CV-2082-RWS,
  2010 WL 966639 (N.D. Ga. March 12, 2010) ...................................................17 n50, 18

*Colozzi v. St. Joseph's Hosp. Health Ctr.*,
  595 F. Supp. 2d 200 (N.D.N.Y. 2009)...................................................................6, 7, 25

*Colson v. Avnet*,
  687 F. Supp. 2d 914 (D. Ariz. 2010) ...............................................................................10

*Cooke v. Gen. Dynamics Corp.*,
  993 F. Supp. 56 (D. Conn. 1997) ......................................................................................8

*Crawford v. Dothan City Bd. Of Educ.,*
    214 F.R.D. 694 (M.D. Ala. 2003) .................................................................25 n65

*Damassia v. Duane Reade, Inc.,*
    No. 04 Civ. 8819 (GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ................9 n20, 25

*D'Anna v. M/A-Com, Inc.,*
    903 F. Supp. 889 (D. Md. 1995) ...........................................................................7

*Dean v. Priceline.com, Inc.,*
    No. 3:00CV1273 (DJS), 2001 WL 35961086 (D. Conn. June 6, 2001) ............................8

*Diaz v. Electronics Boutique of America, Inc.,*
    No.04-CV-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005)...5, 16 n44, 17 n50

*Diaz v. Scores Holding Co., Inc.,*
    No. 07 Civ. 8718(RMB), 2008 WL 7863502 (S.D.N.Y. May 9, 2008) .....................9 n21

*Eng-Hatcher v. Sprint Nextel Corp.,*
    07 Civ. 7350 (BSJ) (S.D.N.Y. Nov. 13, 2009) [Dkt. 90] ...................................17

*Fasanelli v. Heartland Brewery, Inc.,*
    516 F. Supp. 2d 317 (S.D.N.Y. 2007) ...................................................................25

*Flores v. Osaka Health Spa, Inc.,*
    No. 05 Civ. 962 VMKNF, 2006 WL 695675 (S.D.N.Y. March 16, 2006)..................6, 11

*Garcia v. Salamanca Group, Ltd.,*
    No. 07c4665, 2008 WL 818532 (N.D. Ill. March 24, 2008) ...........................................23

*Gayle v. U.S.,*
    85 Fed.Cl. 72 (2008) ...........................................................................................20

*Gjurovich v. Emmanuel's Marketplace, Inc.,*
    282 F. Supp. 2d 91 (S.D.N.Y. 2003) ...................................................................21, 23

*Guzman v. VLM, Inc.,*
    No. 07-CV-1126 (JG)(RER), 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) .......21, 22, 23

*Hallissey v. America Online, Inc.,*
    No. 99-CIV-3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ...................22, 23

*Hoffmann-La Roche, Inc. v. Sperling,*
    493 U.S. 165, 110 S.Ct. 482 (1989) .......................................................................20, 21

*In re FedEx Ground Package System, Inc. Employment Practice Litigation,*
    662 F. Supp. 2d 1069 (N.D. Ind. 2009) ........................................................... 15

*Jacobsen v. Stop & Shop Supermarket Co.,*
    No. 02 Civ. 5915 (DLC), 2004 WL 1918795 (S.D.N.Y. Aug. 27, 2004) ...................... 23

*Krueger v. N.Y. Tel. Co.,*
    Nos. 93 CIV. 0178 (LMM), 1993 WL 276058 (S.D.N.Y. July 21, 1993) ...................... 20

*Levinson v. Primedia Inc.,*
    No. 02Civ.222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) .. 2 n3, 5, 10-11, 17

*Masson v. Ecolab, Inc.,*
    No. 04 Civ. 4488 (MBM), 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ..................... 23

*Matson v. 7455, Inc.,*
    No. CV 98-788-HA, 2000 WL 1132110 (D. Or. Jan. 14, 2000) ............................ 17 n49

*Mazur v. Olek Lejbzon & Co.,*
    No. 05 Civ. 2194 (RMB) DF, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005) ................ 22

*Mendoza v. Casa de Cambio Delgado, Inc.,*
    No. 07 cv 2579 (HB), 2008 WL 938584 (S.D.N.Y. April 7, 2008) ............................. 6, 11

*Mike v. Safeco Ins. Co. of America,*
    274 F. Supp. 2d 216 (D.Conn. 2003) ........................................................... 6, 16 n44

*Morales v. Plantworks, Inc.,*
    No. 05 Civ. 2349(DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ........................... 5, 11

*Morisky v. Public Service Electric and Gas Co.,*
    111 F. Supp. 2d 493 (D.N.J. 2000) ................................................................... 9 n21

*Myers v. Hertz Corp.,*
    No. 02 Civ. 4325 (BMC)(MLO), 2007 WL 2126264 (E.D.N.Y. July 24, 2007) ............. 17

*Naton v. Bank of California,*
    649 F.2d 691 (9th Cir. 1981) ....................................................................... 23

*Nerland v. Caribou Coffee Co., Inc.,*
    564 F. Supp. 2d 1010 (D. Minn. 2007) ............................................................ 9 n20

*Nicole Hughes and Niki Marx v. Jacaranda Club, LLC d/b/a Sapphire New York*, et al,
    Index No.: 09-CV-10571 (RJS) (S.D.N.Y.) ..................................................... 16 n48

*Pfaahler v. Consultants for Architects, Inc.,*
    No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000) .............................................15

*Prizmic v. Armour,*
    No. 05-CV-2503 (DLI)(MDG),
    2006 WL 1662614 (E.D.N.Y. June 12, 2006)..................................................6, 7, 25 n65

*Roebuck v. Hudson Valley Farms, Inc.,*
    239 F. Supp. 2d 234 (N.D.N.Y. 2002) ...........................................................................21

*Ruggles v. WellPoint, Inc.,*
    591 F. Supp. 2d 150 (N.D.N.Y. 2008) ...........................................................................25

*Severtson v. Phillips Beverage Co.,*
    137 F.R.D. 264 (D. Minn. 1991) .......................................................................................7

*Summa v. Hofstra Unv.,*
    No. CV 07-330 (DRH)(ARL), 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008) ...............25

*Trinh v. JP Morgan Chase & Co.,*
    No. 07-CV-1666 (WMS), 2008 WL 1860161 (S.D. Cal. April 22, 2008) ........................8

*West v. Verizon Communications, Inc.,*
    No. 8:08-cv-1325-T-33 MAP, 2009 WL 2957963 (M.D. Fla. Sept. 10, 2009) ...........8 n19

*Vinole v. Countrywide Home Loans, Inc.,*
    571 F.3d 935 (9th Cir. 2009) .............................................................................................9

## Statues

29 U.S.C. § 206 ...............................................................................................................1, 18

29 U.S.C. § 207 ....................................................................................................................1

## Other Authorities

7B Charles Alan Wright, Arthur R. Miller & Mary K. Kane,
    *Federal Practice & Procedure* § 1807 (3d ed. 2005) .........................................................6

## INTRODUCTION

Defendants The Executive Club LLC d/b/a The Penthouse Executive Club ("Penthouse Executive Club" or the "Club"); Robert Gans ("Gans"); and Mark Yackow ("Yackow") (collectively, "Defendants") submit this memorandum of law in opposition to the motion of the plaintiffs, Stephanie Carattini, Nicole Hughes, and Leslie Liwanag ("Named Plaintiffs"), on behalf of themselves, and other persons all similarly situated (collectively "Plaintiffs"), for conditional class certification and court authorized notice pursuant to Section 216(b) of the FLSA.[1] As demonstrated herein, Plaintiffs' arguments in support of their motion are without merit, and thus, Plaintiffs' motion should be denied in its entirety.

This is an action brought pursuant to the Fair Labor Standards Act ("FLSA") and New York state law, by former entertainers who allegedly performed at Penthouse Executive Club. Plaintiffs allege, *inter alia*, that they and other persons who performed as entertainers at the Club were improperly classified as independent contractors,[2] were paid less than the minimum wage and denied overtime pay for work which they performed in excess of 40 hours per week, and were not reimbursed for alleged "uniform" expenses in violation of 29 U.S.C. §§ 206 and 207.

## PRELIMINARY STATEMENT

Plaintiffs' collective action allegations suffer from a fatal flaw: Plaintiffs do not point to a single common policy or plan that violates the law. Plaintiffs must show that they and the potential collective members together were "victims of a common policy or plan that violated the

---

[1]    Defined terms herein have the same meaning ascribed to them in the accompanying Declaration of Jeffrey Kimmel (the "Kimmel Decl.") and in the accompanying Declaration of Mark Yackow (the "Yackow Decl.").

[2]    Plaintiffs' proposed collective is based on the assumption that all entertainers at Penthouse Executive Club are "independent contractors." However, since late April, 2010 a substantial number of entertainers who have performed and continue to perform at the club have entered into a "License Agreement" with Penthouse Executive Club pursuant to which they license the right to use the premises and club facilities to conduct their business. These entertainers are licensees, not simply independent contractors.  A copy of the form of License Agreement is annexed to the Yackow Decl. as Exhibit A.

law."[3] Without a common unlawful policy or plan, Plaintiffs are not similarly situated to the putative collective and they therefore have no collective action. Instead, they are left with individuals who each have different experiences with the Defendants, and therefore, if this Court were to certify this case as a collective action, the Court would need to engage in an individualized case-by-case analysis and determine whether each individual who opted in to the action has a claim.

Plaintiffs' entire action rests on the premise that entertainers are employees. This is an important point because only an employee can have an FLSA claim. However, entertainers who perform at the Club do so as independent businesses, not employees. Moreover, the classification of entertainers as independent contractors (or "licensees" in some cases) is not a facially unlawful policy or plan under the FLSA. In fact, even the alleged *misclassification* of entertainers as independent contractors is not a violation of the FLSA. This means that Plaintiffs cannot base their motion solely on the argument that all of the entertainers are misclassified and are therefore similarly situated. Rather, all of those allegedly misclassified entertainers must still be shown to be victims of a common policy or plan that violates the law. As shown in the argument below, Plaintiffs cannot get past the first hurdle of showing that the issue of whether entertainers are "employees" is one that is subject to common proof and therefore, properly the subject of a collective action. Moreover, Plaintiffs have not submitted evidence sufficient to show that there exists any common policy or plan that actually violates the FLSA.

As demonstrated by the declarations submitted by both sides, entertainers cannot possibly be grouped together with regard to their relationships with Defendants. For example, as discussed more fully in section I.A.1.a below, in the declarations that Plaintiffs submitted in support of this motion, entertainers essentially assert (in a conclusory fashion) that Defendants

---

[3]   *See Levinson v. Primedia Inc.,* No. 02Civ.222 (CBM), 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).

exercised control over their performance in certain respects, while other entertainers claim that the very reason they prefer to perform at this particular Club is because it does not exert control over entertainers at all. Moreover, there are significant differences between the declarations that each of the Plaintiffs have submitted. Based on Plaintiffs' conflicting declarations alone, this Court cannot conditionally certify a collective action that includes all of these entertainers.

Second, even if Plaintiffs could plausibly argue that the issue of whether all of the entertainers were misclassified is subject to collective adjudication, (which, based on the conclusory statements in their declarations, they cannot do), Plaintiffs still face the fatal flaw of their case: they do not allege a common policy or practice that violates the FLSA. Plaintiffs claim that they did not earn a minimum wage and that some of them did not receive overtime pay and that the entertainers were not reimbursed for "uniforms." But the declarations they submit in support of this motion do not allege an actual common policy or plan of Defendants that violates the FLSA, or that all entertainers did not receive a minimum wage or overtime compensation, or that there was any common policy to deprive them of minimum wage or overtime. At most, the declarations submitted by Plaintiffs make conclusory statements alluding to a violation of the FLSA, followed by sweeping and conclusory statements that these violations apply to other entertainers as well. None of the entertainers actually state that they were not paid a minimum wage (they only state that they were not paid an *hourly* wage), and only six entertainers even claim to have worked overtime hours. There are no facts to show a factual nexus among the plaintiffs and the proposed collective. Without more, the Court cannot conditionally certify a collective action of these entertainers.

## BACKGROUND

Defendant Penthouse Executive Club is an adult nightclub in New York that opened in June 2003. Robert Gans is the owner of Penthouse Executive Club and Mark Yackow is the

Chief Operating Officer of Penthouse Executive Club.[4]

Prior to late April 2010, entertainers performed at the Club as independent contractors.[5] Since late April 2010, entertainers have had the option of entering into License Agreements with the Club.[6] Entering into a license agreement is not a requirement to perform at the Club and not all entertainers have entered into these agreements.[7] If an entertainer does not enter into the licensing agreement with the Club, the entertainer is still an independent contractor.[8] To date, approximately 60% of the entertainers who perform at the Club have entered into License Agreements with the Club.[9]

Named Plaintiffs in this action are individuals who once performed at the Club as entertainers. Plaintiffs claim that entertainers who performed at the Club were actually employees of the Club and not independent contractors.[10] They also claim, *inter alia,* that they were not compensated a minimum wage,[11] that they worked overtime hours for which they were not compensated,[12] and that the outfits they wore while performing at the Club were actually uniforms for which they were not reimbursed.[13] They now seek to conditionally certify a FLSA collective and authorization of judicial notice to all entertainers.

---

[4]   Though named as a defendant, Penthouse Club Inc. has never had any operations or assets.

[5]   Yackow Decl. at ¶¶ 4-5.

[6]   Id. at ¶¶ 5.

[7]   Id. at ¶¶ 5.

[8]   Id. at ¶ 5.

[9]   Id. Decl. at ¶ 5.

[10]   Lin Decl. Exhs. A at ¶24 and B at ¶24.

[11]   Id. Exhs. A at ¶91 and B at ¶23.

[12]   Lin Decl. Exhs. A at ¶93 and B at ¶27.

[13]   Id. Exh. A at ¶96 *[Liwanag Complaint only]*.

On December 29, 2009, Plaintiffs Carattini and Hughes filed their lawsuit[14] and Defendants answered on February 3, 2010.[15] Shortly thereafter, on February 11, 2010, Plaintiff Liwanag filed her lawsuit[16] and Defendants answered on March 31, 2010.[17] On June 11, 2010 the Court consolidated the two actions.[18]

## ARGUMENT

I.  **PLAINTIFFS FAIL TO SATISFY THEIR BURDEN ON THEIR MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE PURSUANT TO § 216(b)**

It is well settled that "plaintiffs have the burden of demonstrating that they are 'similarly situated' to members of their proposed collective action." *Diaz v. Electronics Boutique of America, Inc.*, No. 04-CV-0840E (SR), 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005). "While the factual showing that [a plaintiff] must make at this stage is 'modest,' it must be 'sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Levinson v. Primedia Inc.*, No. 02 Civ. 222 (CBM), 2003 WL 22533428, at * 1 (S.D.N.Y. Nov. 6, 2003) (internal citations omitted) (denying the plaintiff's request for notice to potential class members where plaintiff failed to demonstrate that the putative class members were similarly situated); *see also Morales v. Plantworks, Inc.*, No. 05 Civ. 2349(DC), 2006 WL 278154 (SD.N.Y. Feb. 2, 2006) (denying motion for conditional class certification where motion was based on conclusory allegations); *Barfield v. N.Y.C. Health and*

---

[14]  Id. Exh. B.

[15]  Id. Exh. D.

[16]  Id. Exh. A.

[17]  Id. Exh. C.

[18]  *See* Docket No. 15. Since the commencement of Plaintiffs' action, seven entertainers have filed consent forms to join the action. Consents to join the action have been filed on behalf of Heather Ashley and Christina Sanchez on March 5, 2010 (Dkt. No. 2); Chelsea Rogers on March 9, 2010 (Dkt. No. 8); Nicki Mpogiatzis on March 11, 2010 (Dkt. No. 10); Alycia Daniels on April 29, 2010 (Dkt. No. 16); Kimberly Howard on June 5, 2010 (Dkt. No. 18), and Linda Coyle on June 15, 2010 (Dkt. No. 21).

*Hospitals Corp.*, No. 05 Civ. 6319 (JRS), 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) (denying plaintiff's motion for conditional collective action certification under the FLSA and holding that the plaintiff did not present sufficient evidence that plaintiffs were victims of a common policy or plan that violates the law); *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1807 (3d ed. 2005) ("Conclusory allegations are not sufficient .... courts requir[e] that there be some factual support and affidavits showing that the class members are 'similarly situated'"). The similarly situated analysis, then, centers upon the features which make the particular uniform policy or practice unlawful. *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009).

"Although the plaintiff's burden at this initial stage is not onerous, mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made. A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations." *Prizmic v. Armour*, No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (internal quotations and citations omitted); *see also Flores v. Osaka Health Spa, Inc.*, No. 05 Civ. 962 VMKNF, 2006 WL 695675, at * 3 (S.D.N.Y. March 16, 2006), *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 cv 2579 (HB), 2008 WL 938584 (S.D.N.Y. April 7, 2008) (observing that "conclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action"). "[T]he court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination on the merits." *Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216 (D.Conn. 2003).

"Where a plaintiff fails to carry this burden or where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff **or that it will**

**likely succeed at trial**…a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice." *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) (emphasis added).

In evaluating a request for collective action certification, the Court must "take a measured approach…mindful of the potential burden associated with defending against an FLSA claim involving a broadly defined collective group of plaintiffs." *See Colozzi,* 595 F. Supp. 2d at 207; *see also Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) (holding that "[t]he courts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation.") "Where a plaintiff has not made at least a modest factual showing that certification is appropriate, '[i]t would be a waste of the Court's and the litigant's time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.'" *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360 (E.D.Wis. Sept. 11, 2008). "Absent such a showing, an employer may be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.'" *Prizmic,* 2006 WL 1662614, at * 2 (*citing D'Anna v. M/A-Com, Inc.,* 903 F. Supp. 889, 893-94 (D.Md. 1995)).

As demonstrated herein, Plaintiffs have not met their burden of making even a modest showing that the Named Plaintiffs are similarly situated to the proposed class.

### A. Plaintiffs' Contention that Penthouse Has A Uniform Policy of Classifying Entertainers as Independent Contractors Is Not Sufficient to Show that the Putative Class is Similarly Situated

Plaintiffs erroneously assert that the simple allegation that entertainers were "misclassified" as independent contractors is sufficient to satisfy their burden of showing that the members of the proposed collective are similarly situated. (Plaintiffs' Mem at p. 10.) What

Plaintiffs are attacking is classification, which is a facially *lawful* policy or plan. Attacking a

*lawful* policy or plan cannot support conditional certification.[19]

Courts have held that uniform classification alone is not a "policy" or "practice" that

warrants conditional certification. *See, e.g.*, *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d

660 (E.D. Pa. 2010) (stating that uniform classification of workers is not enough to establish that

individuals are similarly situated for purposes of conditional certification); *Dean v.*

*Priceline.com, Inc.*, No. 3:00CV1273 (DJS), 2001 WL 35961086, at *2 (D. Conn. June 6, 2001)

(rejecting claim that "putative class members are similarly situated because all were denied

overtime pay as a result of being misclassified as exempt"); *Trinh v. JP Morgan Chase & Co.*,

No. 07-CV-1666 (WMS), 2008 WL 1860161, at *4 n.2 (S.D. Cal. April 22, 2008) (adopting the

reasoning of other courts in finding that merely alleging that class of employees was improperly

designated "exempt" does not constitute showing of unlawful, institution-wide policy); *Cooke v.*

*Gen. Dynamics Corp.*, 993 F. Supp. 56, 61 (D. Conn. 1997) (stating that an employer's mere

labels are irrelevant to whether an employee is covered by an overtime exemption). If a

company's classification of individuals alone was sufficient to satisfy a plaintiff's burden on a

motion for conditional certification, then certification would be automatic simply based on a

showing that employees were classified as "exempt" or as independent contractors without any

further inquiry. *See Chemi v. Champion Mortgage,* No. 2:05-cv-01238-WHW, 2009 WL

1470429, at *8 (D.N.J. Jun. 19, 2006) (alleging improper exempt classification was not sufficient

to meet burden on motion for conditional certification because if that were true "every case

brought before the courts alleging improper designation as non-exempt employees would

---

[19]   While the Court need not determine now on the merits whether Plaintiffs or other entertainers were actually misclassified as independent contractors, "[i]t is entirely appropriate for the Court to be cognizant of the factual and legal issues presented by the cases when determining whether this case can be appropriately treated as a collective action." *West v. Verizon Communications, Inc.*, No. 8:08-cv-1325-T-33 MAP, 2009 WL 2957963, at *4 (M.D. Fla. Sept. 10, 2009).

automatically qualify for conditional class certification"); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (holding that the district court did not abuse its discretion in denying collective certification, even though the employer classified workers pursuant to its internal uniform exemption policy, where the employer did not have a standard policy governing how employees spent their time and the employees' status depended on an individualized determination of each employee's work).[20]

Rather, as set forth in more detail below, to meet their burden, Plaintiffs must show that (1) putative class members were all subject to the same policies that violate the law,[21] and (2) the issues to be resolved on a collective basis are all subject to common proof and analysis.

---

[20] Plaintiffs contend that "blanket classification decisions are well suited for collective adjudication" and cite to *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160-161 (S.D.N.Y. 2008). The cited decision however concerns certification of a Rule 23 class action for state law claims. Discovery had been conducted and substantial evidence had been presented to the Court. Plaintiffs also cite *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) for the premise that Defendants cannot collectively classify entertainers as independent contractors while claiming that Plaintiffs cannot proceed to collectively challenge the classification. In *Nerland*, the court found plaintiff's evidence of the defendant's own internal use of a generalized approach in considering whether store managers were exempt to be highly persuasive. Here, there is no such evidence and Plaintiffs' contention that "Defendants admit that they classify all dancers as independent contractors" does not warrant conditional certification of the putative collective. (Plaintiffs' Mem. p. 10.)

[21] Plaintiffs cite *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718(RMB), 2008 WL 7863502 (S.D.N.Y. May 9, 2008) for the premise that a uniform compensation policy is sufficient to warrant conditional certification and that the legality of the policy "is a question for another day" (Plaintiffs' Mem. P. 10), but this is not true and it is an inaccurate interpretation of *Diaz*. First, Plaintiffs must allege a uniform compensation policy that violates the FLSA. *Diaz* does not hold that the policy's legality is for another day. *Diaz* states "at this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Diaz* at *2. Second, because entertainers are classified as independent contractors, a compensation policy cannot be improper on its face. *See e.g., Morisky v. Public Service Electric and Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (alleged scheme to defraud employees of overtime cannot be improper on its face because the employees were classified as exempt; therefore what plaintiff was really challenging was defendant's determination that employees were exempt under FLSA). Third, to show that all of the entertainers are similarly situated as victims of a common unlawful policy, Plaintiffs cite to three paragraphs in Defendants' Answer to the Complaint filed by Carattini and Hughes, wherein Defendants state that the *two plaintiffs* (Carattini and Hughes) were not paid a salary and received no direct payments from the Club, and that a house fee was required to perform at the Club. Plaintiffs then broadly and vaguely state "this policy applies to all dancers in the same way" without providing any factual support for this statement. This is insufficient to claim the uniform compensation policy that Plaintiffs argue warrants conditional certification.

1. **Plaintiffs' Declarations Do Not Establish**
   **That All Entertainers are Subject to the Same Policies**

   a. **Plaintiffs' Declarations Are Conclusory**

The entertainer declarations submitted by Plaintiffs ("Plaintiffs' Ent. Decls.") contain a series of general and conclusory statements as to vague rules and policies.[22] In a few circumstances, the general statements concerning these policies are followed by the wholly conclusory statement that "this was true for other dancers as well" without any explanation how the declarant knows on personal knowledge that this statement is true. The declarations are almost devoid of any specificity. In the few circumstances where a specific example of alleged "enforcement" of policy is given, the examples lack any reference to who at the club enforced the policy, when the occurrence of alleged enforcement took place, etc. This is wholly insufficient to make a showing that Plaintiffs and the putative collective are all victims of a common unlawful policy.[23]

Though the evidence required at the first step of certification is less than that required at the second step, "if declarations in support of conditional certification are not required to be more probative than bare allegations, the requirement of factual support would be superfluous." *See Adair,* 2008 WL 4224360, at \*9-\*10 (internal quotations and citations omitted) (holding that named plaintiff's "observations" that co-workers worked overtime without pay was insufficient to establish a common policy or that co-workers were "similarly situated"); *see also Levinson,*

---

[22]   In support of their motion, Plaintiffs have submitted declarations from the Named Plaintiffs, as well as from 6 out of 7 of the opt-in plaintiffs. Plaintiffs have not submitted a declaration on behalf of Chelsea Rogers and thus there is no evidence that she sustained the same injuries allegedly suffered by the putative. The declaration submitted by Russell Whelchel should not be given any weight because he is a hair and make-up artist and is not even a member of the putative collective. *See, e.g., Colson v. Avnet,* 687 F. Supp. 2d 914 (D. Ariz. 2010) (denying motion for collective action certification and holding that declarations submitted by an individual who "observed" the performance and job duties of members of the putative collective, and was not even a member of the putative collective, had little evidentiary value).

[23]   In fact, as addressed in more detail in section I(A)(1)(b) below, even among the otherwise cookie cutter entertainer declarations submitted by Plaintiffs, there are glaring inconsistencies that show that they were not similarly situated.

2003 WL 22533428, at * 1 (internal citations omitted) (denying plaintiff's request to notice to potential class members where plaintiff failed to demonstrate that the putative class members were similarly situated); *Morales,* 2006 WL 278154, at *3 (denying conditional certification where plaintiffs offered only conclusory allegations); *Flores v Osaka Spa, Inc.*, 2006 WL 695675, at *3; *Mendoza,* 2008 WL 938584, at *2 ("In short, the pleadings and affidavits of the Plaintiffs fail even to make the modest factual showing that they are similarly situated to other employees past and present, thus the collective action certification is denied without prejudice").

In *Levinson,* which concerned the classification of workers as independent contractors, this Court noted that "...plaintiffs allege that defendants have the 'company wide' policy of '[m]isclassifying guides as independent contractors exempt from the overtime requirements of the FLSA,' but they fail to support this legal conclusion with a factual showing that extends beyond their own circumstances." *See also Levinson,* 2003 WL 22533428, at * 2. As to the minimum wage claim in *Levinson,* this Court found that the statement contained in the plaintiff's affidavit that, "[f]or many guides, and perhaps most guides, myself included, the monthly compensation that was received was often less than the minimum wage of $5.15 an hour" was insufficient to support a finding that the proposed collective was similarly situated. *Id.*

In *Flores,* the court also rejected the plaintiff's motion for conditional certification based on the conclusory nature of the evidence submitted by the plaintiff. In so ruling the, Court noted:

> These allegations, like the allegations Flores made in an affidavit she submitted in reply to the defendants' opposition to her motion, are broad conclusory allegations. As such, they offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated Flores and the way they may have compensated other employees during the relevant time period. The plaintiff's determination to rely upon broad conclusory allegations and nothing more, also militates against certifying this as a FLSA collective action.

Similarly, in this case, the Plaintiffs' Ent. Decls. conclusorily state that:

- the Club "controlled many aspects of my working conditions and the working conditions of all other dancers," without explaining which "working conditions" were controlled by Defendants or the basis of the declarant's alleged knowledge of the working conditions of other entertainers. [24]

- the Club "*generally* imposed the same rules on all dancers"[25] (emphasis added)

- the Club imposed "strict procedures while dancing," without explaining what "strict procedures" were imposed on the entertainers when dancing, or how these procedures were allegedly enforced by Defendants.[26]

- Entertainers "*generally*...had to dance for at least three songs" (emphasis added).[27]

- In connection with several alleged policies, Plaintiffs include language that states "[t]his was true for other dancers as well;"[28] or "[t]his applied to all dancers" or "[t]his rule applied to all dancers," without any testimony explaining the basis for the declarants purported personal knowledge of how such policies were applied to other entertainers.[29]

- the Club "had rules and requirements regarding dancers' schedules, including mine."[30]

These are all conclusory statements lacking even the most basic level of specificity or detail required to support Plaintiffs' argument that they are similarly situated to the members of the putative collective with respect to any policy that violates the law.

Moreover, as to many of the alleged wage and hour violations under the FLSA, the Plaintiffs' Ent. Decls. do not, even in a conclusory fashion, bother to assert that the alleged

---

[24]   *See* Lin Decl. Exhs. E at ¶14; F at ¶14; G at ¶12; H at ¶12; I at ¶14; J at ¶13; K at ¶15; L at 14; M at ¶ 11.

[25]   *See* Id. Exhs. E at ¶15; F at ¶15; G at ¶13; H at ¶13; I at ¶15; J at ¶14; K at ¶16; L at 15; M at ¶ 12.

[26]   *See* Id. Exhs. E at ¶16; F at ¶16; H at ¶14; I at ¶16; J at ¶16; K at ¶17; L at 16; M at ¶ 13.

[27]   *See* Id. Exhs. E at ¶16; F at ¶16; G at ¶14; H at ¶14; I at ¶16; J at ¶16; K at ¶17; L at 16; M at ¶ 13.

[28]   *See* Id. Exhs. E at ¶16; F at ¶16; G at ¶14; H at ¶14; I at ¶16; J at ¶16; K at ¶17; L at 16; M at ¶ 13.

[29]   *See* Id. Exhs. E at ¶16, 18-19; F at ¶16, 18-19; G at ¶14, 16-17; H at ¶14, 16-17; I at ¶16, 18-19; J at ¶16, 18-19; K at ¶17, 19-20; L at 16, 19; M at ¶ 13, 15-16; N at ¶ 7.

[30]   *See* Id. Exhs. E at ¶17; F at ¶17; G at ¶15; H at ¶15; I at ¶17; J at ¶17; K at ¶18; L at 17; M at ¶ 14.

violations were a result of unlawful policies that applied across the board to other entertainers. For example, each of the declarations state that "[t]he Penthouse Executive Club did not pay *me* any hourly wages for my work as a dancer" but do not make any statement concerning how other entertainers were compensated. Moreover, not paying an "hourly wage," if a policy at all, is not a policy that violates the FLSA. Failing to pay an employee an amount equal to the *minimum* wage may be a violation of the FLSA. In this respect, the Plaintiffs Ent. Decls. do not even purport to claim that minimum wage laws were violated by Defendants with respect to the declarants, much less the entire class of entertainers.

Additionally, only 5 of the 9 Plaintiffs' Ent. Decls. allege that they were not paid an overtime premium for performing for more than 40 hours in a week. And none of the Plaintiffs' Ent. Decls. state that there was a uniform policy to deny entertainers overtime pay.

For the foregoing reasons, the Plaintiffs have fallen far short of their burden of showing that Plaintiffs are similarly situated to the putative collective members.

**b. Plaintiffs' Declarations Are Contradicted By the Declarations of Entertainers**

Plaintiffs describe in their declarations the circumstances under which they conduct their business at the Club and their relationship with Defendants, and assert several vague rules and policies that they claim applied to them. However, the declarations submitted by entertainers on behalf of Defendants demonstrate that the purported rules and policies to which Plaintiffs refer do not even exist.[31]

For example, Liwanag claims that the Club schedules entertainers for certain shifts and requires entertainers to obtain permission to work shifts other than their scheduled shifts, and

---

[31] Copies of the declarations of 7 entertainers who currently perform at the club are annexed to the Kimmel Decl. as Exhibits D-J. These declarations are collectively referred to herein as "Defendants Ent. Decls." In order to protect the privacy interests of these individuals, their names have been redacted from the electronically filed version of Defendants' opposition papers.

that if they did not show up for a scheduled shift, they were subject to discipline.[32] Carattini states that she was required to work one slow day per week in order to work busier shifts and that if she wanted to leave early, she needed an excuse and permission from the House Mother.[33] Hughes also states that she was required to work three shifts per week, including one slow day.[34] But this is directly contradicted by the Club and by other entertainers who perform at the Club, who clearly state that there is no schedule at all, that entertainers can perform on whatever days they want and are not told what time to arrive or leave, that entertainers do not inform the Club that they plan to perform on a particular night or at a particular time and that entertainers have never been told to work a "slow day."[35] In fact, one entertainer explained that sometimes she performs "a couple times a month," sometimes she performs "a couple times a week," and she'll "even go months without performing at all." She also stated that she has performed at other clubs and what she likes about this Club is that she can "come and go as [she] please[s], without a schedule."[36]

Likewise, Plaintiffs state that entertainers were required to dance on stage and that the entertainers had to follow strict procedures while dancing (although they do not describe these alleged strict procedures),[37] but according to the Club and other entertainers, this is not true.[38] Plaintiffs claim that they were required to attend staff meetings,[39] but other entertainers state that

---

[32]   Lin Decl. Exh. E at ¶17.

[33]   Id. Exh. F at ¶17.

[34]   Id. Exh. G at ¶15.

[35]   Yackow Decl. at ¶11; Kimmel Decl. Exhs. D at ¶¶3-4, E at ¶¶3-4, F at ¶¶3-4, G at ¶3; H at ¶¶3-4, I at ¶¶2-3, J at ¶¶2-3.

[36]   Kimmel Decl. Exh. J at ¶2.

[37]   Lin Decl. Exhs. E at ¶16, F at ¶16, G at ¶14.

[38]   Yackow Decl. ¶ 25; Kimmel Decl. Exhs. D at ¶10, E at ¶9, F at ¶9, G at ¶8, H at ¶9, I at ¶9, J at ¶8.

[39]   Lin Decl. Exhs. E at ¶15, F at ¶15, G at ¶13.

this is not true.[40] Further, Plaintiffs state that they had no ability to control their compensation,[41] but other entertainers state that this is not true and that entertainers could, for example, charge a customer a different rate than the minimum fee set for a private room.[42] Thus, either Plaintiffs are not accurately describing their relationship with Defendants or they each have/had an entirely different relationship with Defendants. Neither of these options supports conditional certification of a collective action.

>    **2.  The Issues of Whether Entertainers Are Independent Contractors, Earn a Minimum Wage, and Receive Overtime Are Not Determinable On the Basis of Common Proof and Individualized Analysis is Required**
>
>        **a. Classification of Entertainers as Independent Contractors**

The issue of whether the named plaintiffs are similarly situated to other putative class members with respect to whether they were properly classified as independent contractors cannot be determined by common proof. In order to make such a determination, the court would have to conduct an individualized, fact intensive inquiry as to the nature of each entertainers' relationship with Penthouse.[43] *See Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000); *see also Bambgose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660 (E.D. Pa. 2010). Under such circumstances, conditional certification is improper. *See id.; see also In re FedEx Ground Package System, Inc. Employment Practice Litigation*, 662 F. Supp. 2d 1069 (N.D. Ind. 2009) (denying conditional certification and holding that there is a

---

[40]   Kimmel Decl. Exhs. D at ¶19, E at ¶17, F at ¶17, H at ¶17, I at ¶17, J at ¶16.

[41]   Lin Decl. Exhs. E at ¶19, F at ¶19, G at ¶17.

[42]   Kimmel Decl. Exhs. D at ¶13, E at ¶12, F at ¶12, G at ¶12, H at ¶12, I at ¶12, J at ¶11.

[43]   In making this determination, the court "must evaluate the employment status of each claimant" and examine the following factors: (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business. *Id.; see also Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir. 1988).

lack of substantial similarity among the putative class members because the evidence pertaining to the factors relating to each individual's employment varies throughout the proposed class).[44]

While Defendants do assert that all entertainers are independent contractors, the evidence submitted by both parties shows (as is typical of independent contractor relationships) that the circumstances under which each entertainer performs and the entertainer's relationship with Defendants are different. For example, seven of the nine Entertainer Declarations submitted by Plaintiffs state that they were required to obtain permission to work shifts other than their scheduled shift and that if they did not show up for a shift they were subject to discipline,[45] but Carattini and Hughes do not make this statement. Also, Carattini states that if she wanted to leave early, she needed "permission" from the House Mother.[46] Other entertainers state that they can leave early if they want, they just have to let the Manager know.[47] Of all the entertainer declarations submitted by both sides, only Hughes and Carattini state that they were required to work a slow day and only Hughes states that she was required to work three shifts per week.[48] And as discussed above, some entertainers state that they are required to dance on stage while others are not required to do so, and some state that they had no ability to control their compensation, while others said that they did. These declarations illustrate the differences in experiences between individual entertainers and the lack of common proof applicable to entertainers as a whole. Even if the Court were to conclude on the merits that one or some of

---

[44]   Courts in this Circuit recognize that the unique nature of misclassification claims requires a determination of whether liability is subject to common proof. *See, e.g., Diaz,* 2005 WL 2654270, at *5; *Mike,* 274 F. Supp. 2d 216, 221 (denying certification because it would require each plaintiff to "present specific evidence of his or her daily tasks).

[45]   *See* Lin Decl. Exhs. E at ¶17; H at ¶15; I at ¶17; J at ¶18; K at ¶18; L at ¶17; M at ¶15).

[46]   *See Id.* Exh. F ¶ 17.

[47]   Kimmel Decl. Exhs. D at ¶4, E at ¶4, F at ¶4, H at ¶4, I at ¶3, J at ¶3.

[48]   *See* Lin Decl. Ex. F at ¶17, G at ¶15. Even though Hughes asserts that the club controlled her schedule, a lawsuit she commenced against another club shows that she was permitted to perform at other clubs. *See Nicole Hughes and Niki Marx v. Jacaranda Club, LLC d/b/a Sapphire New York,* et al, Index No.: 09-CV-10571 (RJS) (S.D.N.Y.), alleging similar claims to those contained herein.

these entertainers actually fall under the definition of employee under the FLSA, it is clear that the terms under which they performed at the Clubs are not uniform and are not subject to common proof. Classification of entertainers as independent contractors is not an unlawful policy and Plaintiffs have not shown a common unlawful policy of *mis*classification and violation of the wage and hour law.[49]

Moreover, Plaintiffs have not established that the members of the putative collective performed under the same terms as the named plaintiffs. *See, e.g., Levinson,* 2003 WL 22533428, at *2 ("While plaintiffs have provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants... they have failed to make a sufficient showing that the same was true for other potential plaintiffs... plaintiffs allege that defendants have the company-wide policy of misclassifying guides as independent contractors... but they fail to support this legal conclusion with a factual showing that extends beyond their own circumstances.") (emphasis in original) (internal quotations omitted); *see also Eng-Hatcher v. Sprint Nextel Corp.,* 07 Civ. 7350 (BSJ) (S.D.N.Y. Nov. 13, 2009) [Dkt. 90], at 18-19 ("In this case, the Court has found that Plaintiff has failed to identify an illegal policy employed by Defendant... Without such an overarching policy, determinations of class membership would require an inquiry into the merits of each member's claims."); *Myers v. Hertz Corp.,* No. 02 Civ. 4325 (BMC)(MLO), 2007 WL 2126264, at *1 (E.D.N.Y. July 24, 2007).[50]

---

[49]   Although the merits are not at issue, plaintiffs fail to acknowledge that courts have found adult entertainers to be independent contractors and not employees. In the case of *Matson v. 7455, Inc.,* No. CV 98-788-HA, 2000 WL 1132110 (D. Or. Jan. 14, 2000), the plaintiff, an entertainer at an adult entertainment club, asserted that she had been improperly classified as an independent contractor and, as such, her employer violated the FLSA by failing to pay her a minimum wage. *Matson,* 2000 WL 1132110, at *4.   The *Matson* court held that the plaintiff was *not* an employee and was properly classified as an independent contractor.

[50]   Although Plaintiffs' attempt to analogize *Clincy* to the case at bar because it involved adult entertainers, Plaintiffs' analysis and reliance is misplaced. Contrary to Plaintiffs' statement on p. 13 of its brief, *Clincy* does not provide that the "Court granted conditional certification because defendants could not 'seriously contest' that plaintiffs and their putative collective held the same position." (emphasis added) Rather, the decision states that "it appears that Plaintiffs and putative class members held identical positions at the Onyx and Defendants do not seriously contest that issue in their brief."(emphasis added) *Clincy v. Galardi South Enterprises, Inc.,* Civil Action

17

### b. Minimum Wage/Overtime

The issues of whether Plaintiffs and the putative collective received minimum wage or overtime cannot be decided on the basis of common proof and require individualized determinations for each entertainer. First, none of the entertainers actually state in their declarations that they were compensated below the minimum wage. Instead, each and every one of them states as follows: "The Penthouse Executive Club did not pay me any hourly wages for my work as a dancer."[51] But an hourly wage is not required under the FLSA, 29 U.S.C. § 206, and therefore failure to pay an hourly wage is not a common unlawful policy. Further, only a handful of the entertainers state that they even worked over 40 hours in a week[52] and of those that do state this, only a few of those state that they were not compensated for this time.[53] For example, Liwanag claims that some workweeks she worked more than 40 hours and was not paid an overtime premium for the overtime hours.[54] Carattini claims that some workweeks she worked more than 40 hours, but unlike Liwanag, she does not claim that she was not compensated for the overtime hours worked.[55] Hughes does not claim to have worked *any* overtime hours at all.[56] And neither Ashley nor Sanchez claim to have worked any overtime hours.[57] It is evident that there can be no collective action with respect to Plaintiffs' overtime

---

No. 1:09-CV-2082-RWS, 2010 WL 966639, at *2 (N.D. Ga. March 12, 2010). The decision makes clear that defendants "rest[ed] their opposition rather, on the argument that plaintiffs have failed to demonstrate that there are other employees who desire to opt in," *see Id.*, an argument that was not persuasive to the court.

[51]   *See* Lin Decl. Exhs. E-M, all at ¶ 2.

[52]   *See* Id. Exhs. E-F and I-L, all at ¶ 3.

[53]   *See* Id. Exhs E and I-L, all at ¶ 3.

[54]   *See* Id. Exh. E at ¶ 3.

[55]   *See* Lin Decl. Exh. F at ¶ 3.

[56]   *See* Id. Exh. G at ¶¶2-3.

[57]   *See* Id. Exhs. H at ¶¶ 2-3; M at ¶¶ 2-3.

claim. Clearly each entertainer has had her own experience.

Moreover, with respect to other members of the putative collective, Plaintiffs do not submit any evidence as to whether these other members received a minimum wage or overtime. Each of the Plaintiffs only references herself directly with regard to minimum wage and overtime statements.[58] The compensation of each entertainer is individualized, based on, *inter alia,* the year, the day of the week, and the patrons at the Club on a particular night. This is demonstrated by the difference in earnings reported by the Plaintiffs for each year they performed at the Club.[59]

### 3. Plaintiffs Do Not Demonstrate a Common Unlawful Policy Concerning Uniforms

There is and never has been a common unlawful policy or plan concerning "uniforms"[60] and Plaintiffs do not cite to one in their Complaints or declarations. The entertainer declarations submitted by both sides are clear that there was no requirement that Plaintiffs or any other entertainer purchase any type of apparel from Defendants.[61] First, clothing that can be worn as part of an individual's ordinary wardrobe is not included in the definition of "uniform." *See, e.g., Ayres v. 127 Rest. Corp.,* 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998)(finding that required attire of white shirt, khakis, black shoes, and black socks, is not part of the definition of a "uniform" under New York law). The attire worn by the entertainers is no different than the "uniform" of a business suit worn in offices across the country, and just as with the individuals who wear business suits, the entertainers handled their attire in different ways.[62] There simply is no

---

[58]   *See* Id. Exhs. E at ¶¶2-3, F at ¶¶2-3, G at ¶2.

[59]   For example, Liwanag earned $541,936.52 over the course of 4 years, Hughes earned $80,579.70 over the course of 3 years, and Carattini earned $116,235.00 over the course of 6 years. *See* Yackow Decl. at ¶¶32, 35, 38.

[60]   *See* Yackow Decl. ¶¶19-21.

[61]   *See* Lin Decl. Exhs E at ¶11; F at ¶11; G at ¶9; I at ¶11; K at ¶12; L at 11.

[62]   *See* Lin Decl. Exhs E at ¶11; F at ¶11; G at ¶9; H at ¶9; I at ¶11; J at ¶10; K at ¶12; L at 11; M at ¶9 .

common unlawful policy here and there can be no conditional certification of a collective group based on this claim.

## II.   PLAINTIFFS' PROPOSED FORM OF NOTICE IS IMPROPER

While it is Defendants' position that this motion should be denied, and no notice should issue, the fact is that the Plaintiffs' version of the court authorized Notice (the "Notice"), a copy of which is attached to the Lin Declaration as Exhibit O, is misleading and generally defective and therefore should be modified by this Court as suggested by Defendants. Defendants have annexed their counter proposed form of Notice, which contains the elements that courts of this Circuit have approved, as Exhibit A to the Kimmel Decl., as well as a redlined version showing Defendants' modifications to Plaintiffs' version of the Notice, as Exhibit B to the Kimmel Decl.

It is well-settled that "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172, 110 S.Ct. 482, 487 (1989). Indeed, "court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut off dates to expedite disposition of the action." *Id.* Courts have held that "the form and content of the notice ... is to be approved by the Court prior to mailing in order that present and after-the-fact disputes between counsel as to form and manner of consent may be eliminated." *Krueger v. N.Y. Tel. Co.*, Nos. 93 CIV. 0178 (LMM), 1993 WL 276058, at * 3 (S.D.N.Y. July 21, 1993) (citing *Hoffman-LaRoche*, 493 U.S. at 170, 110 S.Ct. 482).

### A.  Plaintiffs' Proposed Notice Is Not Neutral

To conform to the requirement of judicial impartiality articulated in *Hoffman La-Roche*, the notice should set out a neutral statement of the claims and the [defendants'] answer, without any indication of the future outcome in the case." *Gayle v. U.S.*, 85 Fed.Cl. 72, 81 (2008). In this

regard, Plaintiffs' Notice must be modified in several respects. First, throughout the Notice, Plaintiffs use language to suggest that entertainers are employees rather than using neutral language. The Defendants' version has been modified throughout to use neutral language that refers to entertainers "performing at" the Club, rather than being employed by or "working for" Defendants. Additionally, to ensure neutrality, wherever the Notice contains a description of the claims in the lawsuit, Defendants have made it clear that Defendants deny the claims. *See, e.g., Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 241 (N.D.N.Y. 2002) (holding that the notice should contain a statement of defendant's position on the case). Additionally, since there are no claims asserted under the FLSA for improper deductions from gratuities, which claims are asserted only under state law, references to claims regarding retention of tips have been removed by Defendants.

Moreover, Plaintiffs' Notice should be modified to identify the Defendants' attorneys on the notice form and not only the Plaintiffs' attorneys. An entertainer who receives the Notice should be able to decide for herself whether she wants to direct questions concerning the lawsuit to Plaintiffs' counsel or Defendants' counsel. *See Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at * 8 (E.D.N.Y. Oct. 11, 2007) (holding that courts routinely require that counsel for both parties be listed on the notice form); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 99 (S.D.N.Y 2003) (approving a form of notice which identified the defendants' counsel).[63]

The Notice should also be modified to make it clearer that "the Court has taken no position in this case regarding the merits of the Plaintiffs' claims or of the Defendants' defenses." *See, e.g., Gjurovich*, 282 F. Supp 2d at 99.

---

[63]   Even the form offered by Plaintiffs, attached to the Lin Decl. as Exhibit Q, identifies the attorneys for the Defendants.

In addition, Plaintiffs' Notice should be modified to provide that any potential opt in plaintiffs send their consent forms to the Clerk of the Court and not to Plaintiffs' counsel. Courts in this Circuit as well as in other circuits routinely require that consent forms be sent to the Clerk of the Court, holding that language directing potential class members to Plaintiffs' counsel for further information "improperly discourages class members from seeking outside counsel." *See Hallissey v. America Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 WL 465112, at * 4 (S.D.N.Y. Feb. 19, 2008); *Guzman*, 2007 WL 2994278, at *9 (finding that sending forms to plaintiff's counsel "inappropriately discourages employees from seeking outside counsel" and ordering that the notice direct recipients to submit their consent forms to the Clerk of the Court, not to the plaintiffs' attorneys); *see also Bowens v. Atlantic Maint. Corp.*, 546 F. Supp. 2d 55, 81 (E.D.N.Y. 2008) (...[R]ecent decisions have held that such a provision improperly discourages class members from seeking outside counsel and thus, Courts have directed that Consent Forms be sent to the Clerk of the Court).

## B.  Plaintiffs' Proposed Notice is Misleading

In addition to the fact that Plaintiffs' Notice lacks neutrality, Plaintiffs' Notice is also misleading to a potential opt-in plaintiff in several respects. First, Plaintiffs' Notice does not state that it is not intended to imply that the recipient of such notice has a valid claim. In this regard, courts in this Circuit have permitted the inclusion of language that states "this notice does not mean you have a valid claim or are entitled to any monetary recovery. Any such determination must still be made by the Court." *See Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB) DF, 2005 WL 3240472, at*6 (S.D.N.Y. Nov. 30, 2005) (upholding such language in Notice and including it in the section entitled "Your Right to Participate in this Suit").

Plaintiffs' Notice is also misleading because it dissuades potential opt-in plaintiffs from exercising their right to consult with or retain other counsel. *See, e.g., Guzman*, 2007 WL

2994278, at * 7; *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *17 (S.D.N.Y. Aug. 17, 2005); *Gjurovich,* 282 F. Supp.2d at 99.

Finally, Plaintiffs' Notice also is misleading in that it fails to fully and accurately describe the effect of joining this case on a potential opt-in plaintiff. Plaintiffs' notice is not clear about the opt-in plaintiffs' responsibilities upon joining the lawsuit. Thus, Defendants also propose that the Notice state that an individual who opts in to this suit may be asked to (1) appear for depositions; (2) respond to written discovery; (3) testify at trial; (4) pay costs if they do not prevail. *See Hallissey*, 2008 WL 465112, at * 4 (holding that including such information on notice is appropriate).

### C. Plaintiffs' Notice Does Not Have An Appropriate Opt-In Time Period

In this action, should this Court authorize notice, there are no special circumstances that would require the lengthy 90 day time opt-in period that Plaintiffs suggest. The courts generally provide for an opt-in period between 30 and 60 days. *See Garcia v. Salamanca Group, Ltd.*, No. 07c4665, 2008 WL 818532, at * 5 (N.D.Ill. March 24, 2008) (permitting a 45 day opt-in period); *Naton v. Bank of California*, 649 F.2d 691, 697 (9th Cir. 1981) (permitting a 30 day opt-in period); *Gjurovich*, 282 F. Supp.2d at 101 (permitting a 60 day opt-in period); *Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915 (DLC), 2004 WL 1918795 (S.D.N.Y. Aug. 27, 2004) (permitting a 60 day opt-in period); *Bowens*, 549 F. Supp at 60 (permitting a 60 day opt-in period).

Thus, Defendants' contend that in the event this Court authorizes notice, the Court should direct that any opt-in plaintiffs be required to opt-in within a period which is no greater than 60 days of service of court authorized Notice.

**III.    PLAINTIFFS' REQUEST FOR THE ENTERTAINERS' NAMES, ADDRESSES,
JOB TITLE, TELEPHONE NUMBERS, DATES OF EMPLOYMENT,
LOCATION OF EMPLOYMENT, DATES OF BIRTH AND
<u>SOCIAL SECURITY NUMBERS IS UNREASONABLE</u>**

Plaintiff, almost as an afterthought in their moving brief, request the production "in a computer readable data file" of the names, last known mailing addresses, last known telephone numbers, dates of employment, work locations, dates of birth and the social security numbers of all persons "employed" by Defendants as entertainers during the last three years. Moreover, not only is Plaintiffs' request overbroad, it also seeks personal and confidential information such as social security numbers of potentially thousands of individuals. Additionally, not only does such a request violate the entertainers' privacy rights, but responding to such a request would also impose an undue burden on Defendants.[64]

A plaintiff seeking the names of nonparty potential class members "in an attempt to broaden their class" is "a tactic disfavored by the courts." *Calabrese v. CSC Holdings, Inc.,* No. 02-cv-5171 (DLI)(JO), 2007 WL 749690 (E.D.N.Y. March 7, 2007). Plaintiffs should not have unfettered access to the information they seek concerning the current and former entertainers who provided services at the Club over the past three years. Such unfettered access risks violating the legitimate privacy rights and expectations of those entertainers. These individuals have all worked as entertainers for varying time periods, with some of them working at these clubs for as little as a day. Because of the nature of the business of the putative class members, *i.e.,* adult entertainers, their privacy concerns are heightened.

Defendants object to disclosing the personal information of these entertainers, especially their social security numbers and telephone numbers, due to privacy concerns and courts in this Circuit have agreed that disclosure of this information is not necessary. *See Damassia v. Duane*

---

[64]    Moreover, there is no evidence that Defendants have the information sought by Plaintiffs available in a "computer readable data file" format or in a format that could be easily converted to a readable data file. Should the Court direct the disclosure of any contact information, Defendants will produce any responsive information it possesses in the manner in which it is maintained in the ordinary course of the Club's business.

*Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200 (N.D.N.Y. 2009) (holding that the plaintiff did not have a need for inherently private information such as email addresses, telephone numbers, social security numbers and dates of birth); *see also Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150 (N.D.N.Y. 2008); *Summa v. Hofstra Unv.*, No. CV 07-330 (DRH)(ARL), 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008) (directing that defendant produce only the names and last known addresses of its employees and denying that Plaintiff's request for additional information such as email addresses, social security numbers and dates of employment). Thus, should this Court grant Plaintiffs' motion for conditional certification of the collective action, it should allow Plaintiffs access only to the names and last known addresses of entertainers who have performed at the Club during the three years prior to this Court's order. *Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317 (S.D.N.Y. 2007).[65] Moreover, in that event, this information should be provided to Plaintiffs under an obligation of confidentiality and *solely* to be used for the purpose of sending notice of the pendency of this action and not any other form of solicitation or contact.

## CONCLUSION

For all the reasons set forth above, and in the accompanying Kimmel Declaration and Yackow Declaration and the exhibits annexed thereto, the Court should deny Plaintiffs' motion in its entirety.

---

[65]   Here, Plaintiffs contend that they are entitled to such discovery but have not established that the entertainers are similarly situated. Thus, to the extent Plaintiffs' motion is denied, Defendants should not be required to turn over the names, addresses, etc. of entertainers. Where a plaintiff brings an action pursuant to the FLSA, and seeks the names and addresses of employees in the absence of a conditionally certified collective action, courts have denied such discovery. *See Prizmic v. Armour*, 2006 WL 1662614 (E.D.N.Y.); *see also Crawford v. Dothan City Bd. Of Educ.,* 214 F.R.D. 694 (M.D. Ala. 2003) (denying such discovery as premature and holding that this approach comported with the two step process of resolving requests for conditional certification by first making a determination of whether individuals are similarly situated based on pleadings and affidavits and if so certifying the action and then permitting the defendant to move to decertify based on evidence obtained through discovery); *Brooks v. BellSouth Telecomm., Inc.,* 164 F.R.D. 561, 571 (N.D. Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997). Where an action is not certified as a collective action, "discovery before step one of the two step process is premature." *See Crawford*, 214 F.R.D. at 695.

Dated: New York, New York
     July 23, 2010

MEISTER SEELIG & FEIN LLP

s/ Jeffrey A. Kimmel

By: Jeffrey A. Kimmel
    James M. Ringer
    Racquel Crespi Weintraub
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
212-655-3500
*Attorneys for Defendants*