```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/27/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

IN RE PENTHOUSE EXECUTIVE CLUB      MEMORANDUM AND ORDER
COMPENSATION LITIGATION             10 Civ. 1145 (NRB)

------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA") and the New York Labor Laws. Before this Court is plaintiffs' motion for conditional certification of an FLSA collective action under 29 U.S.C. § 216(b). Plaintiffs also request that the Court: (1) approve the distribution of opt-in consent forms to potential plaintiffs; and (2) order defendants to produce contact information for potential plaintiffs.

For the reasons discussed herein, plaintiffs' motion for conditional class certification is granted. Furthermore, the Court authorizes the distribution of an opt-in consent form, orders the parties to meet and confer regarding the content of such form, and orders defendants to produce contact information for potential plaintiffs as specified below.

## BACKGROUND

The named plaintiffs in this action are current or former dancers at the Penthouse Executive Club ("Penthouse Executive Club" or "the Club"), an adult entertainment club located in Manhattan. On December 29, 2009, plaintiffs Stefanie Carattini

and Nicole Hughes filed a class action complaint against the Executive Club LLC d/b/a the Penthouse Executive Club, the Penthouse Club Inc., and Robert Gans. Carattini v. The Exec. Club LLC, 09 Civ. 10572 (NRB). On February 11, 2010, plaintiff Leslie Liwanag filed a class action complaint against the Executive Club LLC d/b/a the Penthouse Executive Club, Robert Gans, and Mark Yackow. Liwanag v. The Exec. Club LLC, 10 Civ. 1145 (NRB). Defendants in both actions own and operate the Club. (Liwanag Answer ¶¶ 31, 38, 39, 43, 48; Carattini Answer ¶ 1.[1])

On June 11, 2010, following a joint initial conference, this Court concluded that the Carattini and Liwanag actions involve common questions of law and fact and consolidated these actions for all purposes under the name In re Penthouse Executive Club Compensation Litigation, Master File No. 10 Civ. 1145 (NRB). To date, seven additional dancers have opted into these lawsuits.

By way of background, plaintiffs allege that "the adult entertainment industry in New York City and elsewhere remains largely out of compliance with basic worker protection statutes . . . [and that] [t]he Penthouse Executive Club, a leader in the

---

[1] The following facts are drawn from the Carattini complaint ("Carattini Compl."), the Carattini Answer, jointly filed by all defendants in that action on February 3, 2010 ("Carattini Answer"), the Liwanag complaint ("Liwanag Compl."), and the Liwanag answer, jointly filed by all defendants in that action on March 31, 2010 ("Liwanag Answer").

2

industry, is no exception." (Liwanag Compl. ¶¶ 5-6.) According to plaintiffs, defendants have engaged in a number of unlawful practices. These practices include, but are not limited to: failing to pay dancers minimum wage; failing to pay dancers for overtime worked; encouraging customers to tip dancers in house scrip or "Executive Dollars," rather than in cash, and then deducting twenty percent of the face value of the scrip as a service charge when dancers exchange the Executive Dollars for cash; charging dancers a "house fee" for each shift that they dance at the Club; requiring dancers to purchase and wear a uniform – including gowns, high heels, and undergarments – that meets precise specifications; and imposing various other obligations and restrictions, such as prohibiting dancers from changing out of their uniforms, requiring that dancers remain on stage for at least three songs, and prohibiting dancers from discussing certain topics with Club customers. (Carattini Compl. ¶¶ 4, 26-27; Liwanag Compl. ¶¶ 10-18, 75, 84-99.)

Defendants raise a variety of defenses, including that dancers are independent contractors and thus FLSA does not apply. (Carattini Answer ¶ 12; Liwanag Answer ¶¶ 80, 165.)

## DISCUSSION

### I. Motion for Conditional Class Certification

Section 216(b) provides that an action under FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Neither FLSA nor its implementing regulations define the term "similarly situated." Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). However, courts in this Circuit consistently conduct a two-stage inquiry to determine whether potential opt-in plaintiffs are "similarly situated." See, e.g., Vaughan v. Mortg. Source LLC, No. 08 Civ. 4737 (LDW) (AKT), 2010 WL 1528521, at *3-4 (E.D.N.Y. Apr. 14, 2010); Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010); Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).

The first stage is often referred to as the "notice" stage. See Cohen, 686 F. Supp. 2d at 326; Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). At this stage, a court determines whether the named plaintiffs and the potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and to allow the case to proceed as a collective action through discovery. Lynch, 491 F. Supp. 2d at

4

368. Plaintiffs' burden at this stage is simply to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman, 982 F. Supp. at 261; see also Diaz v. Scores Holding Co., Inc., No. 07 Civ. 8718 (RMB), 2008 WL 7863502, at *4 (S.D.N.Y. May 9, 2008). Courts alternatively describe this burden as "very low" or "minimal." See, e.g., Lynch, 491 F. Supp. 2d at 368; Diaz, 2008 WL 7863502, at *5; Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

Importantly, at this first stage, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." Cohen, 686 F. Supp. 2d at 326; see also Vaughan, 2010 WL 1528521, at *7 (declining to assign weight to defendants' competing affidavits and reasoning that "[a]ttacks on credibility . . . are not properly addressed in the context of a motion for conditional certification"); Damassia, 2006 WL 2853971, at *6 (concluding that "defendant's attacks on plaintiffs' affidavits and other evidence" are premature at the notice stage).

As the term conditional class certification suggests, a court's determination at the first stage is only "preliminary." See Gayle v. Harry's Nurses Registry, Inc., No. 07 Civ. 4672 (CPS) (MDG), 2009 WL 605790, at *10 (E.D.N.Y. Mar. 9, 2009);

5

Lee, 236 F.R.D. at 197. At the second stage, typically after discovery has been completed, defendants may make a motion for decertification of the class. Cohen, 686 F. Supp. 2d at 327. At this later stage, a court will apply increased scrutiny to determine, based on the developed record, whether the additional plaintiffs are, in fact, similarly situated. See id.; Damassia, 2006 WL 2853971, at *4. If the court is not satisfied that the plaintiffs are similarly situated, the collective action will be decertified and the claims of the opt-in plaintiffs will be dismissed without prejudice. See Cohen, 686 F. Supp. 2d at 327; Sipas v. Sammy's Fishbox, Inc., No. 05 Civ. 10319 (PAC), 2006 WL 1084556, at *2 n.1 (S.D.N.Y. Apr. 24, 2006).

Because plaintiffs make the instant motion at the notice stage, they must only make "a modest factual showing" that they and potential opt-in plaintiffs were victims of a common policy or plan that violates the law. To establish the existence of these common plans, plaintiffs rely on affidavits from nine dancers, an affidavit from a hair and makeup artist at the Club, and the allegations in the complaints. (Declaration of Sonia R. Lin in Support of Plaintiffs' Motion for Conditional Certification and Court Authorized Notice Pursuant to Section 216(b) of the FLSA ("Lin Decl.") Exs. F-N.)

Through these affidavits, plaintiffs state that the unlawful policies and plans attributable to defendants include:

misclassifying all dancers as independent contractors; failing to pay dancers any wages; failing to pay overtime premiums; requiring that all dancers pay a "house fee," often exceeding $100, for each shift worked; deducting a service charge from tips paid in Executive Dollars; requiring that all dancers share their tips with other Club personnel, including the hairstylists and makeup artists, who do not provide direct customer service; and forcing dancers to follow strict appearance standards. (Lin Decl. Exs. F-N; P. Mem. 3-6, 10-13.)

Defendants acknowledge that plaintiffs' burden is "not onerous" but argue that plaintiffs have nevertheless failed to meet their burden. (D. Mem. at 6.) We disagree and address defendants' arguments in turn.

First, according to defendants, an allegation that workers were misclassified as independent contractors does not satisfy a plaintiff's burden at this stage. However, defendants' argument is flawed. The cases that defendants cite for this proposition merely stand for the uncontroversial concept that where workers have different job titles and responsibilities, uniform classification of these disparate groups of workers as independent contractors does not, alone, justify class certification. See, e.g., Bamgbose v. Delta-T Grp., Inc., 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010) (denying conditional certification of a group of healthcare workers that included

psychiatrists, psychologists, nurses, counselors, and providers of special education, all of whom were classified as independent contractors, in light of the "wide array of skills, responsibilities, and experiences" of the members of the prospective class);[2] Dean v. Priceline.com, Inc., No. 3:00 CV 1273 (DJS), 2001 WL 35961086, at *2 (D. Conn. June 6, 2001) (denying conditional certification of a group of workers who were allegedly misclassified as "exempt" under FLSA where those workers had different job titles and different responsibilities). Defendants' contention is not persuasive in the instant case where the putative class would include individuals with the same job title, the same job responsibilities, and who all worked at a single adult entertainment club.

Second, defendants argue that plaintiffs' affidavits are conclusory and fail to satisfy plaintiffs' burden. Again, we disagree. Plaintiffs' pleadings and the affidavits from nine dancers contain sufficient detail to satisfy their burden. Although plaintiffs' affidavits are concise, this Court declines to require a plaintiff to submit additional affidavits or greater detail at this early stage of the litigation. To do so

---

[2] The analysis in Bamgbose may further contradict defendants' own argument. There, the court expressly acknowledges that "[a]pplication of a uniform policy may render a class similarly situated for cases involving different FLSA violations or workers all holding the same job title. 684 F. Supp. 2d at 669 n.12 (citing cases).

8

would undermine the purpose of the FLSA, see Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) (noting the remedial purpose of FLSA and the judiciary's interest in avoiding a multiplicity of suits), and would be inconsistent with the level of specificity that courts consistently require at the notice stage. See, e.g., Khalil v. Original Homestead Rest., No. 07 Civ. 695 (RJH), 2007 WL 7142139, at *1 (S.D.N.Y. Aug. 9, 2007) (granting conditional class certification based on the pleadings, one affidavit, and a consent-to-sue form); Sipas, 2006 WL 1084556, at *2 n.2 (granting conditional class certification based on the pleadings and three affidavits); Legrand v. Educ. Mgmt. Corp., 03 Civ. 9798 (HB) (HBP), 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (granting conditional class certification based on the pleadings and three affidavits).

Third, defendants submit opposing affidavits from current dancers at the Club and contend that these affidavits demonstrate that the policies about which plaintiffs complain do not exist. However, defendants' argument amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage. Plainly, the accuracy of these competing views will be tested throughout discovery and may be raised before this Court on a motion to decertify the class after the close of discovery. At this

stage, however, the defendants' equally untested affidavits do not undermine plaintiffs' showing.

Fourth, defendants maintain that class certification is improper because the issue of whether the Club properly classified dancers as independent contractors will require an "individualized, fact intensive inquiry" into the nature of each dancer's relationship with the Club. This argument borders on specious – members of the proposed class all hold the same job title, have the same job responsibilities, work at the same location, and, by extension, are subject to the same ownership and management. If such a group does not merit at least preliminary class treatment, one would expect that class treatment would rarely be granted in FLSA actions, a proposition that is plainly incorrect as an empirical matter.

Fifth, defendants argue that plaintiffs fail to demonstrate that there exists an unlawful policy regarding plaintiffs' obligation to wear uniforms. As a threshold matter, we note that this alleged policy plays a tangential role in plaintiffs' allegations. As such, even if plaintiffs' failed to make the requisite factual showing on this issue, it would not justify denying conditional certification. However, plaintiffs have made the modest showing necessary to sustain their burden; by contrast, defendants' arguments relate to the merits of plaintiffs' allegations, rather than to the propriety of

10

conditional class certification. Defendants may ultimately be correct that no policy exists, but such a determination is not warranted at this time.

For these reasons, plaintiffs' motion for conditional class certification is granted.[3]

## II. Request for Court-Approved Notice

As discussed above, FLSA authorizes an employee to sue his employer for violations of FLSA on behalf of himself and on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). However, unlike a class action under Federal Rule of Civil Procedure 23, plaintiffs must affirmatively opt into a collective action under FLSA. Id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); see also Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y.

---

[3] We also note that defendants have failed to provide this Court with any justification for departing from the conclusions reached in two similar cases. See Clincy v. Galardi S. Enters., Inc., No. 1:09 Civ. 2082 (RWS), 2010 WL 966639 (N.D. Ga. Mar. 12, 2010) (conditionally certifying class of dancers at one adult entertainment club); Diaz v. Scores Holding Co., Inc., No. 07 Civ. 8718 (RMB), 2008 WL 7863502 (S.D.N.Y. May 9, 2008) (conditionally certifying class of dancers from two related adult entertainment clubs). In those cases, dancers brought lawsuits under FLSA to remedy practices similar to those alleged herein. Thereafter, the named plaintiffs sought conditional certification of a collective action. In Clincy, the defendants did not "seriously contest" that the putative class members were similarly situated and the court conditionally certified the collective action. Clincy, 2010 WL 966639 at *2. In Diaz, the court implicitly assumed that dancers at the same club were similarly situated and analyzed whether dancers at two Manhattan branches of an adult nightclub were similarly situated to one another for the purpose of conditional class certification. Diaz, 2008 WL 7863502 at *4-5. There too, the court granted conditional class certification.

11

2010); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 196 (S.D.N.Y. 2006).

To enable "similarly situated" potential plaintiffs to opt in, a court has discretion to authorize notice to such individuals. See Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read [Section 216(b)], by deliberate omission, as not providing for notice, we hold that it makes more sense, in light of the "opt-in" provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case."); see also Cohen, 686 F. Supp. 2d at 331.

Likewise, the district court has discretion regarding the form and content of the notice. See Lee, 236 F.R.D. at 202 ("[T]he Supreme Court has noted that the "details" of notice should be left to the broad discretion of the trial court.") (citing Hoffmann-La Roche v. Sperling, 493 U.S. 165, 170 (1989)). According to the Second Circuit, such rules comport with "the broad remedial purpose" of FLSA. Braunstein, 600 F.2d at 336.

Plaintiffs have submitted a proposed opt-in consent form, a model notice, and various court-approved notices used in connection with other FLSA collective actions. (Lin Decl. Exs. O-Q.) Defendants raise a number of objections to the proposed

12

notice and submit a counterproposal. (D. Mem. at 20-23; Declaration of Jeffrey Kimmel ("Kimmel Decl.") Ex. A.)

We believe that it is appropriate for plaintiffs to distribute an opt-in consent form to members of the proposed class. However, before authorizing a specific form, we direct the parties to meet and confer regarding the content of the notice.[4] The parties shall submit a joint proposal for Court approval within two weeks of the entry of this Memorandum and Order. If the parties are unable to agree on certain provisions, the disagreements and the reasons for each party's preference shall be specified.

### III. Request for the Production of Contact Information

Finally, plaintiffs request that the Court order defendants "to identify all Potential Opt-In Plaintiffs in a computer

---

[4] Although we direct the parties to resolve the content of the notice, we provide guidance on two issues raised in the parties' briefing. First, the maximum statute of limitations for a claim under FLSA is three years, 29 U.S.C. § 255, and courts traditionally permit a three-year notice period. See Diaz v. Scores Holding Co., Inc., 2008 WL 7863502, at *5; Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 106 (S.D.N.Y. 2003). Accordingly, it is appropriate at this stage for the plaintiffs to provide notice to all dancers who worked at the Penthouse Executive Club within three years of the sending of the notice to conform as closely to 29 U.S.C. § 256 as possible. Reference in the notice to the possible applicability of a two year period seems advisable. Second, we are aware that, after the commencement of this action, certain dancers signed license agreements which contain a provision that purports to waive the dancer's right to participate in any collective action. Although the Court does not take a position regarding the enforceability of this provision, we encourage a plain language disclosure in the notice such as the following: "Some of you may have signed a 'License Agreement' with the Penthouse Executive Club. Even if you have signed such an agreement, you may still have the right to opt into this collective action. If you choose to file an opt-in consent form, you should understand that no decision has been made about the validity of the License Agreement and there is no assurance that you will be able to participate in this action."

readable data file containing their names, last known mailing addresses, last known telephone numbers, Social Security numbers, work locations, and dates of employment." (P. Mem. at 14.)

A district court has the power to direct a defendant to produce the names and contact information of potential plaintiffs. See Colozzi v. St. Joseph's Hospital Health Center, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) ("It is certainly not controversial that in a case such as this, where preliminary certification has been granted, defendants should be required to provide names and addresses of potential opt-in plaintiffs; indeed, discovery of such information was specifically authorized by the Supreme Court . . .") (citing Hoffmann-La Roche v. Sperling, 493 U.S. 165, 169 (1989)). As a practical matter, courts often order the production of such information at the notice stage. See, e.g., Shajan v. Barolo, Ltd., No. 10 Civ. 1385 (CM), 2010 WL 2218095, at *1; Colozzi, 595 F. Supp. 2d at 210; Gayle v. Harry's Nurses Registry, Inc., No. 07 Civ. 4672 (CPS) (MDG), 2009 WL 605790, at *11; Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *8 (S.D.N.Y. Oct. 5, 2006).

Defendants object to plaintiffs' request, arguing that defendants are concerned about disclosing prospective plaintiffs' personal information. Specifically, defendants

14

object to disclosing social security numbers and telephone numbers. (D. Mem. at 24.) This Court agrees with defendants that disclosure of social security numbers raises unnecessary privacy and security concerns. See Gayle, 2009 WL 605790, at *11 (declining to order defendants' to produce social security numbers); Colozzi, 595 F. Supp. 2d at 210 (same); Damassia, 2006 WL 2853971, at *8 (same). We also agree that, to the extent plaintiffs have requested disclosure of present work locations, that information need not be disclosed. However, the balance of the information requested by plaintiffs is essential to identifying potential opt-in plaintiffs and should be disclosed within 30 days of the entry of this Memorandum and Order.

Finally, defendants request that the information provided be treated as confidential and be used solely "for the purpose of sending notice of the pendency of this action." (D. Mem. at 25.) We agree that plaintiffs should properly safeguard the information provided to them by defendants and direct the parties to enter into a confidentiality agreement within two weeks of the entry of this Memorandum and Order.

## CONCLUSION

For the foregoing reasons, plaintiff's motion is granted.

15

Dated:      New York, New York
            October 26, 2010

                                              NAOMI REICE BUCHWALD
                                              UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiffs**
Justin M. Swartz
Sonia R. Lin
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, NY 10016

Lloyd Ambinder, Esq.
LaDonna Lusher, Esq.
Virginia & Ambinder LLP
111 Broadway, Suite 1403
New York, NY 10006

Gratienne Baskin
Urban Justice Center
Sex Workers Project
123 Williams Street, 16th Floor
New York, NY 10038

**Attorney for Defendants**

Jeffrey A. Kimmel
Meister Seelig & Fein LLP
2 Grand Central Tower
140 East 45th Street, 19th floor
New York, NY 10017

16