**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Elizabeth Wagoner
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

**URBAN JUSTICE CENTER**
**SEX WORKERS PROJECT**
Gratienne Baskin (*admitted pro hac vice*)
123 Williams Street, 16th Floor
New York, New York 10038
Telephone: (646) 602-5600
Facsimile: (212) 533-4598

**VIRGINIA & AMBINDER LLP**
Lloyd Ambinder
LaDonna M. Lusher
111 Broadway, Suite 1403
New York, New York 10006
Telephone: (212) 943-9080
Facsimile: (212) 943-9082

**LEEDS BROWN LAW PC**
Jeffrey Brown
One Old Country Road, Suite 347
Carle Place, NY 11514-1851
Telephone: (212) 661-4370
Facsimile: (516) 747-5024

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Penthouse Executive Club Compensation Litigation** | **Master File No. 10 Civ. 1145 (KMW)** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
## CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
## APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
## APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

I.      FACTUAL AND PROCEDURAL BACKGROUND .......................................... 1

        A.      The Penthouse Overtime Litigation .......................................... 1

        B.      Investigation and Discovery ...................................................... 2

        C.      Settlement Negotiations ............................................................. 2

I.      SUMMARY OF THE SETTLEMENT TERMS ................................................. 3

        A.      The Settlement Fund .................................................................. 3

        B.      Releases ...................................................................................... 3

        C.      Allocation Formula .................................................................... 4

        D.      Attorneys' Fees, Litigation Costs, and Service Awards ........... 4

        E.      Settlement Claims Administrator ............................................... 5

II.     CLASS ACTION SETTLEMENT PROCEDURE .............................................. 5

III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................. 7

        A.      The Settlement is Fair, Reasonable, and Adequate ................... 8

                1.      Litigation Through Trial Would be Complex, Costly, and Long
                        (*Grinnell* Factor 1) .................................................................. 9

                2.      The Reaction of the Class Has Been Positive
                        (*Grinnell* Factor 2) ................................................................ 10

                3.      Discovery Has Advanced Far Enough to Allow the Parties to
                        Resolve the Case Responsibly (*Grinnell* Factor 3) ................... 10

                4.      Plaintiffs Would Face Real Risks if the Case Proceeded
                        (*Grinnell* Factors 4 and 5) ........................................................ 10

                5.      Maintaining the Class Through Trial Would Not Be Simple
                        (*Grinnell* Factor 6) .................................................................. 11

6.     Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7) ............................................................ 12

7.     The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........................................................................ 12

B.     Plaintiff Liwanag's Dissatisfaction With the Settlement Is Not a Bar to Preliminary Approval ........................................................................ 13

IV.     CONDITIONAL CERTIFICATION OF THE RULE 23CLASS IS APPROPRIATE ........................................................................................... 16

A.     Numerosity ................................................................................................... 17

B.     Commonality ................................................................................................ 17

C.     Typicality ..................................................................................................... 18

D.     Adequacy of the Named Plaintiffs .............................................................. 19

E.     Certification is Proper Under Rule 23(b)(3) ............................................... 21

1.     Common Questions Predominate .................................................. 21

2.     A Class Action is a Superior Mechanism .................................... 22

V.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ...................................................................................................... 23

VI.     THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE ............................................................................................... 24

VII.     PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT .................. 25

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alli v. Boston Market Corp.*,
No. 10 Civ. 00004, 2011 WL 6156938 (D. Conn., Dec. 9, 2011) ..........................................15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................21, 22, 23

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................................9

*Brad H. v. City of New York*,
185 Misc. 2d 420, 712 N.Y.S.2d 336 (Sup. Ct. N.Y.Co.), *aff'd* 276 A.D.2D 440, 716
N.Y.S.2d 852 (1st Dep't 2000) ............................................................................21

*Cagan v. Anchor Sav. Bank FSB*,
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)..................................12

*Capsolas v. Pasta Res. Inc.*,
No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)..................................20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................8, 9, 12

*Clark v. Astrue*,
274 F.R.D. 462, No. 06 Civ. 15521 (S.D.N.Y. Mar. 18, 2011)............................................21

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (S.D.N.Y. Nov.
27, 2009) ............................................................................7, 14, 20

*Clark v. Ecolab Inc.*,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May
11, 2010) ............................................................................18

*Cokely v. New York Convention Center Operating Corp.*,
No. 00 civ. 4637 (E.D.N.Y.) ............................................................................21

*Colabufo v. Continental Casualty Co.*,
No. 04 Civ. 1863 (E.D.N.Y.) ............................................................................21

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)............................................................................17

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)............................................................................................21

*In re Corrugated Container Antitrust Litig.,*
   643 F.2d 195 (5th Cir.1981) .......................................................................................15

*County of Suffolk v. Long Island Lighting Co.*,
   710 F. Supp. 1422 (E.D.N.Y. 1989), 907 F.2d 1295 (2d Cir. 1990) ........................16

*Dabrowski v. Abax Incorporated*,
   84 A.D.3d 643 (1st Dept. 2011)..................................................................................20

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)...........................................................................................9

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) (Lynch, J.)..........................................................20, 23

*deMunecas v. Bold Food, LLC*,
   No. 09 Civ. 440, 2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010)..............................14, 8

*Disability Advocates, Inc. v. Paterson*,
   No. 03 Civ. 3209, 2010 WL 933750 (E.D.N.Y. Mar. 11, 2010) ...............................21

*Dorn v. Eddington Sec., Inc.*,
   No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)...........................10, 16

*Espinoza v. 953 Associates, LLC*,
   No. 10 Civ. 5517 (S.D.N.Y.) .......................................................................................20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610,
   06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177
   (S.D.N.Y. July 27, 2007) ...............................................................................................8

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................ passim

*Garcia et al. v. The Executive Club*,
   No. 10 Civ. 1545 (S.D.N.Y.) ..................................................................................20, 21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)..........................................................................................16

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).....................................................................................................17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).................................................................................8, 10

*Gonzalez v. Nicholas Zito Racing Stable, Inc.*,
   No. 04 Civ. 0022 (E.D.N.Y.) ...................................................................................20

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968)....................................................................................22

*Guzman v. VLM, Inc.*,
   No. 07 Civ. 1126 (E.D.N.Y.) ...................................................................................20

*Heard v. Cuomo*,
   80 N.Y.2d 684, 594 N.Y.S.2d 675 (1993) ..............................................................21

*Hernandez v. Merrill Lynch & Co., Inc.*,
   11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ........................ passim

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969)..........................................................................10

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)....................20, 24

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ....................5, 14

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ............................................................................17

*Lane v. Facebook, Inc.*,
   No. 08 Civ. 3845, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009)...........................14

*Lujan, et al. v Cabana Management, et al.*,
   No. 10 Civ. 755 (E.D.N.Y.) .....................................................................................20

*Marcus, et al. v. AXA Advisors, LLC, et al.*,
   No. 11 Civ. 2339 (E.D.N.Y.) ...................................................................................20

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)....................................................................................19

*Marriott v. Cnty. of Montgomery*,
   227 F.R.D. 159 (N.D.N.Y. 2005).............................................................................21

*Martin v. Restaurant Associates Events Corp.*,
   Westchester County Sup. Ct. Comm. Part (Index No. 53700/2011) ........................21

*Matheson v. T-Bone Restaurant, LLC*,
   No. 09 Civ. 4214, 2011 WL 6402303 (S.D.N.Y. Sept. 13, 2011) ..........................................20

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) ....................................................................................................7

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................................22

*McBeth, et al. v. Gabrelli Truck Sales Ltd., et al.*,
   No. 09 Civ. 4112 (E.D.N.Y.) ..................................................................................................20

*McBeth v. Gabrielli Truck Sales Ltd.*,
   No. 09 Civ. 4112 (E.D.N.Y.) ..................................................................................................21

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................................24

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................................ passim

*Morris v. Alle Processing, Corp.*,
   No. 08 Civ. 4874 (E.D.N.Y.) ..................................................................................................20

*Nawrocki v. Crimson Construction*,
   No. 08 Civ. 3151 (E.D.N.Y.) ..................................................................................................20

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ............................................................................................22

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..................................................................................................12

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................................10, 15

*Palacio v. E*TRADE Fin. Corp.*,
   No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ....................................8, 20

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983)....................................................................................................17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ..............................................................................................17

*Reyes v. Altamarea Grp., LLC*,
   No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011)...............................................8

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...................................................................................19

*In re TD Ameritrade Account Holder Litig.*,
    Nos. 07 Civ. 2852 & 4903, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)...........................14

*Torres v. Gristede's Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).........................................22

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).........................................19

*In re Traffic Exec. Ass'n*,
    627 F.2d 631 (2d Cir. 1980)...................................................................................7

*Trinidad v. Breakaway Courier Sys., Inc.*,
    No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)...........................................19

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)........................................10

*In re Visa Check/MasterMoney Antitrust Litig*,
    280 F.3d 124 (2d Cir. 2001)...................................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................7

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...................................................................................10

*Warren v. Xerox*,
    No. 01 Civ. 2909 (E.D.N.Y.)...................................................................................21

*White v. Experian Info. Solutions, Inc.*,
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) ........................................................................14

**STATUTES**

29 U.S.C. § 216(b)...................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23................................................................................................ passim

Fed. R. Civ. P. 30...................................................................................................2

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
    ("*Newberg*"), §§ 11.22 (4th ed. 2002) ........................................................................ passim

**INTRODUCTION**

Subject to Court approval, Plaintiffs and Defendants the Executive Club LLC d/b/a The Penthouse Executive Club; Robert Gans, and Mark Yacow (collectively "Penthouse" or "Defendants") (together with Plaintiffs, "Parties") have settled this wage and hour class and collective action for $8,000,000.  The proposed settlement satisfies all of the criteria for preliminary approval.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), Decl. of Justin M. Swartz ("Swartz Decl.") Ex. A; (2) certify the proposed class for settlement purposes; (3) appoint Outten & Golden LLP ("O&G"), Virginia & Ambinder LLP ("V&A"), Leeds Brown Law, PC ("LBL"), and the Urban Justice Center Sex Workers Project ("UJC") (collectively, "Plaintiffs' Counsel") as Class Counsel; and (4) approve the proposed Notice of Class Action Settlement, Swartz Decl. Ex. B.  Defendant does not oppose this motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.    <u>The Penthouse Overtime Litigation</u>**

Plaintiffs and the members of the class ("Class Members" or "the Class"), were entertainers (dancers) at the Penthouse Executive Club, an adult night club in New York City. Swartz Decl. ¶ 13.  Plaintiffs Stephanie Carattini and Nicole Hughes filed a class and collective action on December 29, 2009.  Swartz Decl. ¶¶ 14-16; Decl. of Lloyd Ambinder ("Ambinder Decl.") ¶¶ 6-8; Decl. of Jeffrey K. Brown ("Brown Decl.") ¶¶ 8-10; Decl. of Gratienne Baskin ("Baskin Decl.") ¶¶ 7-9.  Plaintiff Leslie Liwanag filed a similar case on February 11, 2010.  *Id.* On June 11, 2010, the District Court (Judge Naomi Buchwald presiding) ordered that the two cases be consolidated.  *Id.*; ECF No. 20.  Plaintiffs alleged that Penthouse misclassified Class Members as independent contractors, denying them the protections of the Fair Labor Standards

Act ("FLSA") and the New York Labor Law ("NYLL").  *Id.*  As a result, Plaintiffs claimed,

Defendants paid Class Members no wages, unlawfully required them to pay "house fees" and

other fees, and unlawfully took Class Members' tips by retaining a portion of Class Members'

credit card and "executive dollar" tips.  *Id.*

On October 27, 2010, the Court granted Plaintiffs' motion for conditional certification of

a FLSA collective action under 29 U.S.C. § 216(b) and for court-authorized notice.  *See* ECF No.

34.  20 additional dancers joined the case.  Swartz Decl. ¶ 17.

### B.    Investigation and Discovery

Before filing, Plaintiffs' Counsel conducted thorough investigations.  Swartz Decl. ¶¶ 18-

20; Ambinder Decl. ¶¶ 9-13; Brown Decl. ¶¶ 11-15; Baskin Decl. ¶¶ 10-14.  They also

conducted extensive legal research on the underlying merits of the class claims, the likelihood of

obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of

damages, the likelihood of class certification, and Defendants' affirmative defenses.  *Id.*

Formal discovery included reviewing thousands of pages of documents; analyzing time,

payroll and tip allocation records, tax documents, and financial records; preparing three Plaintiffs

and four opt-in plaintiffs for their depositions and defending them; serving and responding to

document requests and interrogatories; taking a Fed. R. Civ. P. 30(b)(6) deposition; and deposing

two of Defendants' managers.  *Id.*  The parties also engaged in heavy discovery motion practice.

*See* ECF Nos. 26, 35, 50, 60, 65, 88-89.

### C.    Settlement Negotiations

After substantial discovery, the parties agreed to attempt to resolve the case through

private mediation overseen by David Geronemus of JAMS.  Swartz Decl. ¶ 21.  Plaintiffs

submitted a detailed mediation statement that explained the claims, noted Defendants'

vulnerabilities, acknowledged risk, and explained the damage calculations.  *Id.* ¶ 22.

On January 26, 2012, the Parties attended an all-day mediation.  *Id.* ¶ 23.  The parties made progress but did not settle.  *Id.*  After further discovery and motion practice, the parties attended a second mediation on June 12, 2012, conducted by Martin F. Scheinman.  *Id.* ¶ 24. The parties made further progress towards a settlement and, during the next several months, exchanged more information and nearly finalized a settlement.  *Id.*  In order to address the outstanding issues, the parties attended a third mediation session on January 10, 2013.  *Id.* ¶ 25. After several follow-up telephone calls with the mediator, the parties finally reached an agreement on all terms, which they memorialized in the Settlement Agreement.  *Id.*[1]

## I.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Settlement Fund

The Settlement Agreement creates a common fund of $8,000,000 (the "Fund"), Ex. A (Settlement Agreement) § 3.1(A), which covers Class Members' awards, the cost of settlement administration, any Court-approved service payments, and any Court-approved attorneys' fees and expenses.  Ex. A (Settlement Agreement) § 3.1(A).  All individuals who performed at Penthouse as entertainers between January 1, 2004 and June 12, 2012, may participate in the settlement.  Ex. A (Settlement Agreement) § 1.5.

### B.   Releases

Class Members who do not timely opt-out release Defendants from all wage and hour claims under the NYLL.  Ex. A (Settlement Agreement) § 3.5(A)(1).  Each Class Claimant who files a Claim Form and Release shall release Defendants from all wage and hour claims under the

---

[1]     Plaintiff Leslie Liwanag has informed Plaintiffs' Counsel and the Court that she intends to object to the settlement and has declined to sign the settlement agreement.  Simultaneously with this motion, or shortly thereafter, Plaintiffs are filing a motion to amend the *Liwanag* complaint to add an additional named plaintiff, Nicki Mpogiatzis.

FLSA as well.[2]  Ex. A (Settlement Agreement) § 3.5(A)(2).

### C.   Allocation Formula

All participating Class Members will receive $3,727.79 for the first calendar year during which she performed ("Minimum Payment").  Ex. A (Settlement Agreement) § 3.4.  In addition, Class Members who worked during additional calendar years will receive additional payments of approximately $988.13 per year through June 12, 2012.  *Id.*  For example, a Class Member who worked for Penthouse during 2005, 2006, and 2007 will be allocated the base payment of $3,727.79, plus $1996.26 (two times $998.13).  Swartz Decl. ¶¶ 33-34.

Five calendar days after the Effective Date,[3] Defendants will deposit funds sufficient to pay all Class Members' claims, any Court-approved service payments, and $1,000,000 as a first installment of any Court-awarded attorneys' fees and expenses.  Ex. A (Settlement Agreement) § 3.1.  Defendants will pay the rest of any Court-awarded attorneys' fees and expenses in two additional installments three months and six months, respectively, after the Effective Date of the settlement.  *Id.*  Any funds remaining in the settlement account more than 180 days after the last date to file a claim will be returned to Defendants.  Ex. A (Settlement Agreement) § 3.4(D).

### D.   Attorneys' Fees, Litigation Costs, and Service Awards

Plaintiffs' Counsel will apply for up to 27.1875% of the Fund as attorneys' fees, costs, and expenses.[4]  Ex. A (Settlement Agreement) § 3.2(A).  The Court need not decide attorneys'

---

[2]     "Class Claimant" shall mean a Class Member who files a Claim Form and Release, post-marked on or before the Claim Bar Date, electing to participate in the settlement of this Litigation.  Ex. A (Settlement Agreement) § 1.7.

[3]     The "Effective Date" of the settlement will be 31 days after the Court enters its Final Order and Judgment, unless there is an appeal, in which case the Effective Date will be the day after any and all avenues of rehearing or reconsideration have been exhausted. Ex. A (Settlement Agreement) § 1.12(A)-(B).

[4]     This is less than the typical fee award in the Second Circuit.  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622-23 (S.D.N.Y. 2012) ("Class and Plaintiff's Counsel's

fees and costs now.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs' Counsel will move

for attorneys' fees and costs along with their Motion for Final Approval of the Settlement.

Plaintiffs will apply for service awards of $15,000 to each of the two Named Plaintiffs, and for

$8,750 to opt-in Plaintiffs Nadene Speer, Alicia Daniels, Nicki Mpogiatzis, and Marsha

Chalmers, in recognition of the services they rendered on behalf of the class ("Service

Awards").[5]  Ex. A (Settlement Agreement) § 3.3.[6]  The Court need not rule on the proposed

attorneys' fees awards or service awards now.  Plaintiffs will file separate motions asking the

Court to approve them simultaneously with Plaintiffs' Motion for Final Approval of the

Settlement.

      **E.**     **Settlement Claims Administrator**

Plaintiffs' Counsel shall choose the Claims Administrator with Defendants' input and

approval, which will not be unreasonably withheld.  Ex. A (Settlement Agreement) § 2.1.  The

Claims Administrator's fees will be paid out of the Fee Award.  *Id.*

**II.**    **CLASS ACTION SETTLEMENT PROCEDURE**

The well-defined class action settlement procedure includes three distinct steps:

    1.    Preliminary approval of the proposed settlement after submission to the Court of a

---

request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotation marks and citation omitted); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at \*19 (S.D.N.Y. Sept. 16, 2011) ("A fee of 33% of the Settlement Fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotation marks and citation omitted).  In addition, the fee for which Plaintiffs' Counsel will apply will include out-of-pocket expenses, while most fee awards in class action settlements are in addition to awards for out-of-pocket expenses.  *See Hernandez v. Merrill Lynch & Co., Inc.*, 11 Civ. 8472, 2013 WL 1209563, at \*10 (S.D.N.Y. Mar. 21, 2013).

[5]    Because Leslie Liwanag will not sign the Settlement Agreement, Plaintiffs' Counsel will no longer apply for a Service Award on her behalf and Defendants will not agree to pay one.

[6]    These are typical service awards in the Second Circuit.  *See, e.g.*, *Sewell*, 2012 WL 1320124, at \*14-15 (granting service awards of $15,000 and $10,000 to class representatives in wage and hour class action settlement, and listing supporting cases); *Johnson*, 2011 WL 4357376, at \*21 (granting service awards of $10,000 to class representatives in wage and hour settlement).

written motion for preliminary approval;

2.     Dissemination of notice of settlement to all class members; and

3.     A final settlement approval hearing at which class members may be heard, and at which argument concerning the fairness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  Plaintiffs request that the Court take the first step now – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, approving Plaintiffs' Proposed Notice, and authorizing Plaintiffs to send them.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.     Notices will be mailed within 30 days after the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement.  Ex. A (Settlement Agreement) §§ 2.5(A)-(B).

2.     Class Members will have 90 days after the Notice mailing to opt out of the settlement or object to it ("Notice Period").  Ex. A (Settlement Agreement) §§ 2.6(A), 2.8(A).

3.     A final fairness hearing will be held as soon as is convenient for the Court.

4.     Plaintiffs will file a Motion for Final Approval of Settlement no later than 15 days before the Fairness Hearing.  Ex. A (Settlement Agreement) § 2.9.

5.     After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no reconsideration or rehearing is sought of the Court's Final Order and Judgment, the Effective Date of the settlement will be 31 days after the Court enters its Final Order and Judgment.  Ex. A (Settlement Agreement) § 1.12(A)-(B).

6.     If rehearing or reconsideration is sought, the Effective Date of Settlement shall be the day after any and all avenues of rehearing or reconsideration have been exhausted and no further rehearing or reconsideration is permitted, and the time for seeking such review has expired, and the Judgment and rulings on service awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.  Ex. A (Settlement Agreement) § 1.12(B).

7.     The Settlement Claims Administrator will disburse settlement checks to the Class Members, as well as Class Counsel's attorneys' fees and costs, 30 days after the Effective Date.  Ex. A (Settlement Agreement) § 3.1(C).

### III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing *Newberg* § 11.25).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).  If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement.  *Clark*, 2009 WL 6615729, at *3.

The approval of a proposed class action settlement is a matter of discretion.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Clark*, 2009 WL 6615729, at *3 (citations omitted).  Preliminary approval requires only an "initial evaluation" of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the

proposed settlement does not disclose grounds to doubt its fairness . . ." the court should permit notice to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41). [7]

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

A.   <u>The Settlement is Fair, Reasonable, and Adequate</u>

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the

---

[7]   Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g.*, *Hernandez*, 2012 WL 5862749, at *1 (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011) (same); *deMunecas*, 2010 WL 2399345 (same).

reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of

the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in

favor of preliminary approval.

### 1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid

significant expense and delay, and ensure recovery for the class.  "Most class actions are

inherently complex and settlement avoids the costs, delays and multitude of other problems

associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174

(S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This

case is no exception, with more than 1,000 Class Members and multiple claims.

Further litigation here would cause additional expense and delay.  Additional discovery

would be required to establish liability and prove damages.  In addition, the parties likely would

file cross-motions for summary judgment on Defendants' defenses.  If the Court denied the

motions, a fact-intensive trial would be necessary to determine employment status.  A trial would

be lengthy and consume tremendous time and resources.  A judgment would likely be appealed.

The settlement, on the other hand, makes monetary relief available to Class Members in a

prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of approval.

2.      **The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

Notice of the settlement and its details has not yet issued to the class.  The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object.  At this early stage in the process, two of the three Named Plaintiffs have expressed their approval of the settlement by signing the Settlement Agreement.  Swartz Decl. ¶¶ 28-29.   That the other Plaintiff, Leslie Liwanag does not support the settlement, does not preclude preliminary approval.  *See* Section (III)(B), *infra*.  The opt-ins who have learned of the settlement have reacted positively to the settlement.  *Id.*

3.      **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)**

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).  The Parties' discovery here meets this standard.  *See* Section (I)(B), *supra*; Swartz Decl. ¶¶ 18-20. This factor favors preliminary approval.  *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding, in a case at similar stage of discovery, that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

4.      **Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)**

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the

merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  Plaintiffs would have to overcome Penthouse's defenses that Class Members were independent contractors and not employees under the FLSA or NYLL, and that the tips they earned were not gratuities, but rather mandatory service charges which should be considered wages, among other defenses.  While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development.  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

### 5.    <u>Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)</u>

The risk of obtaining certification and maintaining it through trial is also present.  The Court has not certified the Rule 23 Class, and the Parties anticipate that such a determination would be reached only after further discovery and exhaustive briefing.  In opposing class certification, Defendants would likely argue that individualized questions preclude class certification.  Settlement eliminates the risk, expense, and delay that permeates such processes.

In addition, after the close of discovery, Defendants would likely challenge the Court's determination that Plaintiffs may proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

6.      **Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)**

While it is not clear whether Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

7.      **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Defendants have agreed to pay a substantial amount, up to $8,000,000. This represents considerable value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million

class settlement where the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." Each Class Member will receive a payment based upon the number of years she worked during the relevant period. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

*     *     *

The *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

**B.     Plaintiff Liwanag's Dissatisfaction With the Settlement Is Not a Bar to Preliminary Approval**

Here, one Plaintiff, Leslie Liwanag, has indicated a desire to object to the settlement. Swartz Decl. ¶ 29. Objections to a class action settlement, however, are premature at the preliminary approval stage. The proper time for the Court to consider objections to a settlement is at the final approval hearing. In a recent FLSA and NYLL case in this district, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012), two of the three named plaintiffs did not support the settlement and objected to preliminary settlement approval. 09 Civ. 1932, 2013 WL 940506, at *1 (S.D.N.Y. Mar. 11, 2013) (Plaintiffs objected in August 2011); 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) (granting preliminary approval on December 15, 2011). The Court granted preliminary approval over the two named plaintiffs' objections, *id.*, and, after notice issued to the class, the Court held a final approval hearing at which the objecting named plaintiffs were heard. *Morris*, 859 F. Supp. 2d 611 (granting final approval).

Likewise, In *Davis v. J.P. Morgan Chase & Co.*, the court deferred early objections to a FLSA and NYLL settlement, holding that, "to the extent that the proposed interveners have particular objections to the terms of the proposed settlement, there is no reason why those concerns cannot be fully and adequately aired at the fairness hearing and in the context of the Court's decision whether to finally approve the settlement."  775 F. Supp. 2d 601, 608 (W.D.N.Y. 2011).  *See also In re TD Ameritrade Account Holder Litig.*, Nos. 07 Civ. 2852 & 4903, 2011 WL 4079226, at *7 (N.D. Cal. Sept. 13, 2011) (noting that objections are "germane to the final approval, as opposed to the preliminary approval, of the Settlement"); *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1102 (C.D. Cal. 2011) (appropriate time to consider objections is at final approval); *Lane v. Facebook, Inc.*, No. 08 Civ. 3845, 2009 WL 3458198, at *5 (N.D. Cal. Oct. 23, 2009) (denying motion to intervene and object at preliminary approval stage because proper time to consider objections is at final approval).  The Court should do the same here.

Because Liwanag has not claimed that the settlement is collusive or was not negotiated at arms-length,[8] her objections come too soon.  Swartz Decl. ¶ 30.  Preliminary settlement approval is a non-dispositive ruling that simply allows notice of the settlement to issue to the class so that class members can evaluate it.  An "initial evaluation" of the proposed settlement and "probable cause" that it will be approved is all that is necessary.  *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 2399345, at *1 (S.D.N.Y. Apr. 19, 2010) (issuing notice to the proposed settlement class based on finding that

---

[8]     A settlement like this one, reached with the help of third-party neutrals enjoys a "presumption that the settlement achieved meets the requirements of due process." *See Johnson v. Brennan*, 10 Civ. 4712 CM, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) (citing *Wal–Mart Stores*, 396 F.3d at 116; *deMunecas*, 2010 WL 3322580, at *4).

proposed settlement was "within the range of possible approval.") *See also* Section (III)(A),

*supra*.  Courts should grant preliminary approval where the settlement agreement has "no

obvious defects."  *See Alli v. Boston Market Corp.*, No. 10 Civ. 00004, 2011 WL 6156938, at *3

(D. Conn., Dec. 9, 2011).

Here, the Proposed Settlement has "no obvious defects."  Swartz Decl. ¶ 31.  Even if

Liwanag claims that the settlement amount is too low or that the settlement fund will not be

allocated in a way that satisfies her, these are not the type of "obvious defects" that should derail

the settlement process before it begins.  *Id.*  Even at final approval, an objection to the amount of

a settlement in a case like this is an uphill battle because the settlement agreement provides for

substantial consideration ($8,000,000.00 for 1,245 class members) and the settlement was

negotiated at arms-length.  *Id.*  There is "a range of reasonableness with respect to a settlement –

a range which recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*,

228 F.R.D. at 186 (quoting *Newman*, 464 F.2d at 693).  In any event, a complaint about the

settlement amount should be addressed at the final approval hearing after all of the Class

Members have had a chance to weigh in and the all parties have made full presentations.

Likewise, an objection to an allocation formula should not affect the preliminary

approval determination.  The Court should allow the rest of the class a chance to evaluate the

settlement and the allocation formula, especially because, like any allocation formula, class

members with different circumstances might view it differently.  *See In re PaineWebber P'ships

Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("in the case of a

large class action the apportionment of a settlement can never be tailored to the rights of each

plaintiff with mathematical precision . . . "); *In re Corrugated Container Antitrust Litig.,* 643

F.2d 195, 219 (5th Cir.1981) (negotiation of an allocation formula among classes avoids "the almost impossible task of determining the distribution of the settlement fund among the myriad claimants") (citing *In re Equity Funding Corp. of America Securities Litig.*, 603 F.2d 1353, 1365 (9th Cir. 1979).

## IV.   CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiffs respectfully request that the Court conditionally certify the NYLL class under Federal Rule of Civil Procedure 23(e) for purposes of effectuating the settlement.  As discussed below, the settlement Rule 23 class meets all of the requirements for class certification for settlement purposes.  *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class); *Dorn*, 2011 WL 382200, at *1-2 (provisionally certifying wage and hour settlement class at preliminary approval stage).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

A.      **Numerosity**

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs easily satisfy this requirement because there are approximately 1,245 Class Members. Swartz Decl. ¶ 39.

B.      **Commonality**

The proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). The proper question is

17

whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citation omitted).

This case involves numerous common issues.  Plaintiffs and Class Members all bring the identical claims that Defendants misclassified them as independent contractors and failed to pay them overtime wages in violation of state wage and hour laws.  Other common issues include, but are not limited to, (a) whether Penthouse failed to pay minimum wage; (b) whether Penthouse failed to pay spread-of-hours wages; (c) whether Penthouse failed to maintain required records; (d) whether Penthouse failed to post a notice of wage and hour laws; (e) whether Penthouse failed to furnish Class Members with notice of hours worked, rates paid, gross wages, and the tip allowance claimed; (f) whether Penthouse took unlawful deductions from Class Members' gratuities; and (g) whether Penthouse required Class Members to wear uniforms.  *See Morris*, 859 F. Supp. 2d at 615-16 (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked")).

### C.   <u>Typicality</u>

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is

satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Defendants classified all Plaintiffs and Class Members as independent contractors pursuant to the same company policy and pattern or practice. Plaintiffs also claim the same injuries as do Class Members – that Defendants failed to properly pay them for overtime hours worked. Accordingly, Plaintiffs satisfy the typicality requirement. *See Hernandez*, 2012 WL 5862749, at *3 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same).

### D.    Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)

(quoting *Penney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  Plaintiffs meet the

adequacy requirement because there is no evidence that Plaintiffs have interests that are

antagonistic to or at odds with those of Class Members.  *See Morris*, 859 F. Supp. 2d at 616 (no

evidence that named plaintiffs' and class members' interests were at odds).  Plaintiffs' Counsel

also meet the adequacy requirement of Rule 23(a)(4).[9]

---

[9]    O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour class action law," *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) (internal quotation marks omitted); *see also Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *McMahon*, 2010 WL 2399328, at *6 (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (Lynch, J.) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area"); and have served as lead counsel on numerous class and collective actions, including *Hernandez*, 2012 WL 5862749, at *4 (appointing O&G and SLG as class counsel, noting both firms' "years of experience prosecuting and settling wage and hour class actions"); *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel); *Palacio*, 2012 WL 1058409, at *2 (appointing O&G and SLG as class counsel and noting both firms' extensive experience litigating and settlement wage and hour class and collective actions); *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214, 2011 WL 6402303, at *3 (S.D.N.Y. Sept. 13, 2011) (appointing O&G and F&S as class counsel, finding that they "have substantial experience prosecuting and settling . . . wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Johnson*, 2011 WL 1872405, at *2 (appointing O&G as class counsel); and *Clark*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *5 (appointing O&G as class counsel), among others.

    The Appellate Division for the First Department of the New York State Supreme Court has specifically noted the skill with which Virginia & Ambinder prosecutes wage and hour class actions: "Plaintiffs' counsel has demonstrated its expertise and zealous representation of the plaintiffs here, as well as in prior class action cases which have reached this court on appeal." *Dabrowski v. Abax Incorporated*, 84 A.D.3d 643 (1st Dept. 2011). V&A has represented thousands of workers to recover unpaid wages in dozens of class and collective actions including:  *Marcus, et al. v. AXA Advisors, LLC, et al.*, No. 11 Civ. 2339 (E.D.N.Y.); *McBeth, et al. v. Gabrelli Truck Sales Ltd., et al.,* No. 09 Civ. 4112 (E.D.N.Y.); *Garcia et al. v. The Executive Club*, No. 10 Civ. 1545 (S.D.N.Y.); *Lujan, et al. v Cabana Management, et al.*, No. 10 Civ. 755 (E.D.N.Y.); *Espinoza v. 953 Associates, LLC*, No. 10 Civ. 5517 (S.D.N.Y.); *Morris v. Alle Processing, Corp.,* No. 08 Civ. 4874 (E.D.N.Y.); *Nawrocki v. Crimson Construction*, No. 08

### E.   Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1.   Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005)

---

Civ. 3151 (E.D.N.Y.); *Gonzalez v. Nicholas Zito Racing Stable, Inc.*, No. 04 Civ. 0022 (E.D.N.Y.); *Guzman v. VLM, Inc.,* No. 07 Civ. 1126 (E.D.N.Y.).

Leeds Brown Law, P.C. (formerly Leeds Morelli Brown P.C.) has served as class counsel in *Warren v. Xerox*, No. 01 Civ. 2909 (E.D.N.Y.); *Colabufo v. Continental Casualty Co.*, No. 04 Civ. 1863 (E.D.N.Y.); and *Cokely v. New York Convention Center Operating Corp.*, No. 00 civ. 4637 (E.D.N.Y.).  Both V&A and LBL have served as co-class counsel in numerous class actions including *Garcia et al. v. The Executive Club*, No. 10 Civ. 1545 (S.D.N.Y.); *McBeth v. Gabrielli Truck Sales Ltd.*, No. 09 Civ. 4112 (E.D.N.Y.), *Martin v. Restaurant Associates Events Corp.*, Westchester County Sup. Ct. Comm. Part (Index No. 53700/2011).

The Urban Justice Center ("UJC") is a not-for-profit legal organization that provides both direct legal services and system-wide advocacy on a variety of issues relating to marginalized populations. The UJC consists of 10 projects including the Sex Workers Project. The UJC has been engaged in class action litigation for more than twenty years and has been co-counsel in more than twenty class action cases through its projects. *See, e.g.*, *Brad H. v. City of New York*, 185 Misc. 2d 420, 712 N.Y.S.2d 336 (Sup. Ct. N.Y.Co.), *aff'd* 276 A.D.2D 440, 716 N.Y.S.2d 852 (1st Dep't 2000); *Disability Advocates, Inc. v. Paterson*, No. 03 Civ. 3209, 2010 WL 933750 (E.D.N.Y. Mar. 11, 2010); *Heard v. Cuomo*, 80 N.Y.2d 684, 594 N.Y.S.2d 675 (1993). In *Clark v. Astrue*, 274 F.R.D. 462, No. 06 Civ. 15521 (S.D.N.Y.  Mar. 18, 2011), Urban Justice Center was approved as class counsel as it was judged to be "qualified, experienced, and generally able to conduct the litigation" by the court.

(quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)).

Simply because a defense may arise and affect different class members differently does not

defeat predominance.  *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004)

(quoting *In re Visa Check/MasterMoney*, 280 F.3d at 138).  Where plaintiffs are "unified by a

common legal theory" and by common facts, predominance is satisfied.  *McBean v. City of New*

*York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The predominance requirement is "designed to

determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by

representation.'"  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

Here, Class Members' common factual allegations and legal theory – that Defendants

violated federal and state law by misclassifying them as independent contractors and failing to

pay them overtime wages – predominate over any variations among Class Members.  *See*

*Hernandez*, 2012 WL 5862749, at *4 (common factual allegations and legal theory predominated

over variations in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ.

3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient

proof that Defendants engaged in a common practice to deny employees overtime pay," and "this

issue predominates over any individual calculations of overtime wages").

### 2.   A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis compares whether "the class action device

[is] superior to other methods available for a fair and efficient adjudication of the controversy."

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at

the very core of the class action mechanism is to overcome the problem that small recoveries do

not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")

(internal citation omitted).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to

judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[10] Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction, and Defendants' headquarters are based here. The class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims. *See Morris*, 859 F. Supp. 2d at 617; *Damassia*, 250 F.R.D. at 161, 164. A class action is the best mechanism to fairly and efficiently resolve Class Members' claims.

## V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs' Counsel should be appointed as Class Counsel under Rule 23(g), which governs the standards and framework for appointing class counsel. Rule 23 (g) sets forth four criteria: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class". Fed. R. Civ. P. 23(g)(1)(A).

---

[10]     Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check/MasterMoney*, 280 F.3d at 140 (internal quotation marks omitted).

Plaintiffs' Counsel meet all of these criteria. Plaintiffs' Counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims. Swartz Decl. ¶¶ 18-20. They have provided a benefit to the class and the judicial system by agreeing to cooperate in the prosecution and settlement of this case, which began as two separate cases. *Id.* Plaintiffs' Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and the lawyers assigned to this matter are well-versed in class action and wage and hour law and are well-qualified to represent the class. *Id.* ¶ 12. Accordingly, courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in wage and hour class actions. *See* note 9, *supra*.

## VI.   THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Proposed Notice, which is attached to the Swartz Declaration as Exhibit B, complies with due process and Federal Rule of Civil Procedure 23. Notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notice satisfies each of these requirements. The Notice also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Courts have approved class notices even when they provided only general information about a

settlement.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson*, 2011 WL 1872405, at *3.  The detailed information in the Proposed Notices far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

Notices will be mailed by the Claims Administrator to the last known address of each Class Member within 30 days of preliminary approval.  Ex. A (Settlement Administrator) §§ 2.5(A)-(C).  The Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing.  Ex. A (Settlement Agreement) § 2.5(C).  As discussed above, the Notice contains information about how to exclude oneself or object to the settlement.  Class Members will have 90 days from the date of mailing to submit opt-out requests or to comment on or object to the settlement.  Ex. A (Settlement Agreement) §§ 2.6(A), 2.8(A).   The Claims Administrator will mail Class Members their payments 30 days after the Effective Date.  Ex. A (Settlement Agreement) § 3.1(C).

## VII.   PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs will seek approval of the settlement of the FLSA claims with their final approval motion.  The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns.  *See McMahon*, 2010 WL 2399328, at *6 ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.").  When Plaintiffs file their motion for final approval of the settlement, they will seek approval of the FLSA settlement.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated:  April 5, 2013
        New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz
Justin M. Swartz
Elizabeth Wagoner
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**VIRGINIA & AMBINDER LLP**
Lloyd Ambinder
LaDonna M. Lusher
111 Broadway, Suite 1403
New York, New York 10006
Telephone:  (212) 943-9080
Facsimile:   (212) 943-9082

**URBAN JUSTICE CENTER**
**SEX WORKERS PROJECT**
Gratienne Baskin (*admitted pro hac vice*)
123 Williams Street, 16th Floor
New York, New York 10038
Telephone:  (646) 602-5600
Facsimile:   (212) 533-4598

**LEEDS BROWN LAW PC**
Jeffrey Brown
One Old Country Road, Suite 347
Carle Place, NY 11514-1851
Telephone: (212) 661-4370
Facsimile: (516) 747-5024

**Attorneys for Plaintiffs and the Putative**
**Class and Collective**