| | |
|---|---|
| **OUTTEN & GOLDEN LLP**<br>Justin M. Swartz<br>Elizabeth Wagoner<br>Amber C. Trzinski<br>3 Park Avenue, 29th Floor<br>New York, New York 10016<br>Telephone: (212) 245-1000<br>Facsimile: (212) 977-4005 | **URBAN JUSTICE CENTER**<br>**SEX WORKERS PROJECT**<br>Gratienne Baskin (*admitted pro hac vice*)<br>123 Williams Street, 16th Floor<br>New York, New York 10038<br>Telephone: (646) 602-5600<br>Facsimile: (212) 533-4598 |
| **VIRGINIA & AMBINDER LLP**<br>Lloyd Ambinder<br>LaDonna M. Lusher<br>111 Broadway, Suite 1403<br>New York, New York 10006<br>Telephone: (212) 943-9080<br>Facsimile: (212) 943-9082 | **LEEDS BROWN LAW PC**<br>Jeffrey Brown<br>One Old Country Road, Suite 347<br>Carle Place, NY 11514-1851<br>Telephone: (212) 661-4370<br>Facsimile: (516) 747-5024 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Penthouse Executive Club Compensation Litigation** | Master File No. 10 Civ. 1145 (KMW) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT**

I, Justin M. Swartz, declare as follows:

1. I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiff's counsel herein, and co-chair of its Class Action Practice Group. O&G is a 30+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation, that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. Along with lawyers from Virginia & Ambinder LLP ("V&A"), Leeds Brown Law, PC ("LBL"), and the Urban Justice Center Sex Workers Project ("UJC") (together with O&G, "Plaintiffs' Counsel"), I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**My Background and Experience**

4. I received a Juris Doctor degree from DePaul University School of Law in 1998 with honors. Since then, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5. I was admitted to the bar of the State of Illinois in 1998, and the bar of the State of New York in 2002. I am also admitted to the bars of the Second Circuit Court of Appeals, the United States District Courts for the Western, Eastern, and Southern Districts of New York, and the Northern District of Illinois. I am a member in good standing of each of these bars.

6. From September 1998, through February 2002, I was associated with Stowell & Friedman, Ltd. in Chicago, Illinois, where I represented plaintiffs in class and multi-plaintiff employment discrimination cases. From March 2002, through October 2003, I worked for

Goodman & Zuchlewski, LLP in New York City where I represented employees in discrimination cases and other employee rights matters.

7.  Since joining O&G in December 2003, I have been engaged primarily in prosecuting wage and hour class and collective actions and class action discrimination cases.

8.  I am or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008).  Others include *Capsolas v. Pasta Resources Inc.*, No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Palacio v. E*TRADE Financial Corp.*, No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) (certifying class and approving settlement of wage and hour class action brought under New York, California, and federal law); *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214, 2011 WL 6402303 (S.D.N.Y. Sept. 13, 2011) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) (same); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) (same); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (S.D.N.Y. May 11, 2010) (certifying class and approving settlement of multi-state wage and hour class action); *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084 (E.D.N.Y. June 26, 2009) (same); and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G class counsel in multi-

state wage and hour class action).

9. I am a member of the National Employment Lawyers Association ("NELA") and serve on the Executive Board of its New York Chapter ("NELA/NY"). I am co-chair of NELA's Fair Labor Standards Act Committee. I served on the Civil Rights Committee of the New York City Bar Association of the Bar of the City of New York from 2005 through 2008 and the Committee on Labor and Employment Law from September 2002 until June 2005. I was co-chair of the American Bar Association Labor and Employment Law Section Ethics and Professional Responsibility Committee from 2006 through 2009, and am a member of its Equal Employment Opportunity Committee. I also serve on the Recent Graduate Advisory Group of the New York University Center for Labor and Employment Law.

10. I speak frequently on employment law issues, including wage and hour issues and discrimination issues. I have recently been a faculty member for continuing legal education programs focused on employment law and ethics sponsored by the American Bar Association Section of Labor and Employment Law; the New York State Bar Association Labor and Employment Law Section; the New York City Bar Committee on Labor and Employment Law, NELA, and the Practicing Law Institute, among others.

11. In connection with my work, I regularly read the New York Law Journal, advance sheets, and other literature related to employment law and class action law developments. I attend workshops and seminars at least four times per year sponsored by NELA, NELA/NY, the American Bar Association, and other organizations.

12. Courts have repeatedly found O&G to be adequate class counsel in wage and hour class actions. *See, e.g.*, *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *4 (S.D.N.Y. Nov. 15, 2012) (appointing O&G and SLG as class counsel, noting

both firms' "years of experience prosecuting and settling wage and hour class actions"); *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel and noting O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Palacio*, 2012 WL 1058409, at *2 (appointing O&G and SLG as class counsel and noting both firms' extensive experience litigating and settlement wage and hour class and collective actions); *Matheson*, 2011 WL 6402303, at *3 (appointing O&G and F&S as class counsel, finding that they "have substantial experience prosecuting and settling . . . wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Johnson*, 2011 WL 1872405, at *2 (May 17, 2011) (appointing O&G as class counsel); *McMahon*, 2010 WL 2399328, at *6 (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Clark*, 2009 WL 6615729, at *5 (appointing O&G as class counsel); *Damassia*, 250 F.R.D. at 158 (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

**Nature of Plaintiffs' Claims**

13.     Plaintiffs and the members of the class ("Class Members" or "the Class"), were entertainers (dancers) at the Penthouse Executive Club, an adult night club in New York City.

14.     Plaintiffs Stephanie Carattini and Nicole Hughes filed a class and collective action on December 29, 2009. Plaintiff Leslie Liwanag filed a similar case on February 11, 2010.

15.     On June 11, 2010, the District Court (Judge Naomi Buchwald presiding) ordered that the two cases be consolidated. Id., ECF No. 20.  Plaintiffs alleged that Penthouse misclassified Class Members as independent contractors, denying them the protections of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

16.     As a result, Plaintiffs claimed, Defendants paid Class Members no wages, unlawfully required them to pay "house fees" and other fees, and unlawfully took Class Members' tips by retaining a portion of Class Members' credit card and "executive dollar" tips.

17.     On October 27, 2010, the Court granted Plaintiffs' motion for conditional certification of a FLSA collective action under 29 U.S.C. § 216(b) and for court-authorized notice.  20 additional dancers joined the case.

**Investigation and Discovery**

18.     Before filing *Liwanag*, O&G and UJC conducted a thorough investigation.

19.     This included extensive legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, the likelihood of class certification, and Defendants' affirmative defenses.

20.     After filing, formal discovery included reviewing thousands of pages of documents; analyzing time, payroll and tip allocation records, tax documents, and financial records; preparing three Plaintiffs and four opt-in plaintiffs for their depositions and defending them; serving and responding to document requests and interrogatories; taking a Fed. R. Civ. P. 30(b)(6) deposition; and deposing two of Defendants' managers.  The parties also engaged in heavy discovery motion practice.  Plaintiffs' Counsel have provided a benefit to the class and the judicial system by agreeing to cooperate in the prosecution and settlement of this case, which

began as two separate cases.

**Settlement Negotiations**

21.     After substantial discovery, the parties agreed to attempt to resolve the case through private mediation overseen by David Geronemus of JAMS.

22.     Plaintiffs submitted a detailed mediation statement that explained the claims, noted Defendants' vulnerabilities, acknowledged risk, and explained the damage calculations.

23.     On January 26, 2012, the Parties attended an all-day mediation.  The parties made progress but did not settle.

24.     After further discovery and motion practice, the parties attended a second mediation on June 12, 2012, conducted by Martin F. Scheinman.  The parties made further progress towards a settlement and, during the next several months, exchanged more information and nearly finalized a settlement.

25.     In order to address the outstanding issues, the parties attended a third mediation session on January 10, 2013.  After several follow-up telephone calls with the mediator, the parties finally reached an agreement on all terms, which they memorialized in the Settlement Agreement.  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A.**

26.     At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

**Reaction of the Class Has Been Positive**

27.     At this early stage in the process, two of the three Named Plaintiffs have expressed their approval of the settlement by signing the Settlement Agreement.

28.     That the other Plaintiff, Leslie Liwanag does not support the settlement, does not preclude preliminary approval.  The opt-ins who have learned of the settlement have reacted positively to the settlement.

**Plaintiff Liwanag's Dissatisfaction With the Settlement Is Not a Bar to Preliminary Approval**

29.     One Plaintiff, Leslie Liwanag, has indicated a desire to object to the settlement.  .

30.     Because Liwanag has not claimed that the settlement is collusive or was not negotiated at arms-length, her objections come too soon.

31.     The Proposed Settlement has "no obvious defects."

**Settlement Terms and Allocation Formula**

32.     The Settlement Agreement creates a common fund of $8,000,000 (the "Fund"), Ex. A (Settlement Agreement) § 3.1(A), which covers Class Members' awards, the cost of settlement administration, any Court-approved service payments, and Court-approved attorneys' fees and costs.  (Settlement Agreement) § 3.1(A).

33.     All participating Class Members will receive $3,727.79 for the first calendar year during which she performed ("Minimum Payment").  Ex. A (Settlement Agreement) § 3.4.  In addition, Class Members who worked during additional calendar years will receive additional payments of approximately $988.13 per year through June 12, 2012.  *Id.*

34.     For example, a Class Member who worked for Penthouse during 2005, 2006, and 2007 will be allocated the base payment of $3,727.79, plus $1996.26 (two times $998.13).

35.     Five calendar days after the Effective Date,[1] Defendants will deposit funds sufficient to pay all Class Members' claims, any Court-approved service payments, and

---

[1]     The "Effective Date" of the settlement will be 31 days after the Court enters its Final Order and Judgment, unless there is an appeal, in which case the Effective Date will be the day after any and all avenues of rehearing or reconsideration have been exhausted. Ex. A (Settlement Agreement) § 1.12(A)-(B).

8

$1,000,000 as a first installment of any Court-awarded attorneys' fees and expenses. (Settlement Agreement) § 3.1.

36. Defendants will pay the rest of any Court-awarded attorneys' fees and expenses in two additional installments three months and six months, respectively, after the Effective Date of the settlement. *Id.* Any funds remaining in the settlement account more than 180 days after the last date to file a claim will be returned to Defendants. (Settlement Agreement) § 3.4(D).

**Claims Administration**

37. After Plaintiffs' Counsel shall choose the Claims Administrator with Defendants' input and approval, which will not be unreasonably withheld. (Settlement Agreement) § 2.1.

38. The Claims Administrator's fees will be paid out of the Fee Award. (Settlement Agreement) § 2.1.

39. There are approximately 1,245 Class Members.

40. Attached as **Exhibit B** is the proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and Claim Form and Release ("Proposed Notice").

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 5th day of April, 2013
New York, New York.

                                       /s/ Justin M. Swartz_____
                                       Justin M. Swartz
                                       **Outten & Golden LLP**
                                       3 Park Avenue, 29th Floor
                                       New York, NY 10016
                                       (212) 245-1000