# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

IN RE PENTHOUSE EXECUTIVE CLUB          :
COMPENSATION LITIGATION                       :          Master File
                                                              :          No. 10 Civ. 1145
                                      (KMW)

----------------------------------------------------------------X

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined) and Defendants (as hereinafter defined).

## RECITALS

WHEREAS, by Order of Hon. Naomi Reice Buchwald, dated June 11, 2010, the Court consolidated two related lawsuits, *Liwanag v. The Executive Club LLC*, No. 10 Civ. 1145 (NRB) (S.D.N.Y. filed February 11, 2010) ("*Liwanag Action*") and *Carattini v. The Executive Club LLC*, No. 09 Civ. 10572 (NRB) (S.D.N.Y. filed December 29, 2009) ("*Carattini Action*");

WHEREAS, the Class Action Complaints in the *Liwanag Action* and the *Carattini Action* (the "Complaints") asserted class claims under the New York Labor Law and collective claims under the Fair Labor Standards Act and sought recovery of, among other things, unpaid minimum wages, unpaid overtime compensation, unpaid spread-of-hours pay, tip credit claims, tip misappropriation claims, unpaid uniform expenses and statutory uniform maintenance costs, liquidated damages, and attorneys' fees and costs;

WHEREAS, Defendants, as defined herein, collectively and individually, denied and continue to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined) and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.   Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Defendants, individually and collectively further deny that they were an employer of Plaintiffs or the Class (as hereinafter defined) under the Fair Labor Standards Act or the New York Labor Law or that Plaintiffs or the Class were employees and, therefore, deny all liability;

WHEREAS, Defendants have agreed to pay the Settlement Payment (as hereinafter defined) to settle the claims alleged in the Complaints;

WHEREAS, Class Counsel (as hereinafter defined) has conducted extensive investigation including, but not limited to, interviewing and obtaining declarations from Plaintiffs and Class Members, reviewing documents produced by Defendants, participating in party and non-party discovery, including the depositions of Plaintiffs and Defendants' representatives, and analyzing time, payroll and tip allocation records, tax documents and other financial records;

WHEREAS, the Parties participated in three mediation sessions of this matter, the first on January 26, 2012, conducted by David Geronemus, Esq. of JAMS, and the second and third on June 12, 2012 and January 10, 2013, conducted by Martin Scheinman, Esq.;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiffs and the Class (as hereinafter defined); and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Class, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation (except with respect to the individual non-class claims of any Plaintiff who does not sign the settlement agreement) on the following terms and conditions:

1.     **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1    *Agreement.*   "Agreement" shall mean this Joint Stipulation of Settlement and Release Agreement.

1.2    *Claim Bar Date.*   "Claim Bar Date" shall mean the last date for a Class Member to perform one of the following acts as further defined in this Agreement: (i) file a Claim Form; (ii) opt-out of the Litigation, or; (iii) file a timely objection to the proposed settlement, which shall be 90 calendar days after the Claims Administrator mails the Notice pursuant to Section 2.5(b).

1.3    *Claim Form.*   "Claim Form" shall mean the form, a copy of which is attached to the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing, that the Class Members must sign and return post-marked by the Claim Bar Date in the form attached hereto as Exhibit 1.   The Claim Form must be timely filed with

the Claims Administrator for a Class Member to be eligible to receive her distribution from the Settlement Fund Account.

1.4    *Claims Administrator.*   "Claims Administrator" shall mean the entity selected to provide notice to the Class and administer payment of the settlement to Class Members.   Plaintiffs shall select the Claims Administrator with Defendants' approval, which will not be unreasonably withheld.   The Claims Administrator is _____.

1.5    *Class; Class Members.*   The "Class" shall mean all individuals who perform or performed at the Penthouse Executive Club as entertainers from on or about January 1, 2004 through June 12, 2012, including any individual who has signed an "Entertainer License Agreement" or any other agreement containing a class or collective action waiver.   A member of the Class is a "Class Member."   The names of all Class Members are on the class list attached as Exhibit 2.

1.6    *Class Counsel.*   "Class Counsel" shall mean Outten & Golden LLP, Virginia & Ambinder, LLP, Leeds Brown Law, PC and Urban Justice Center.

1.7    *Class Claimant.*   "Class Claimant" shall mean a Class Member who files a Claim Form and Release, post-marked on or before the Claim Bar Date, electing to participate in the settlement of this Litigation.

1.8    *Court.*   "Court" shall mean the United States District Court for the Southern District of New York, the Honorable Kimba M. Wood, U.S.D.J.   presiding.

1.9    *Covered Period.*   "Covered Period" shall mean the period from January 1, 2004 through June 12, 2012.

1.10    *Defendants.*   "Defendants" shall mean The Executive Club, LLC d/b/a Penthouse Executive Club, The Penthouse Club, Inc., Robert Gans and Mark Yackow.

1.11    *Defendants' Counsel.* "Defendants' Counsel" shall mean Meister Seelig & Fein LLP as to Mark Yackow, The Penthouse Club, Inc. and  The Executive Club, LLC, and  Proskauer Rose as to Robert Gans.  For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Jeffrey Kimmel, Meister Seelig & Fein LLP, 140 East 45th Street, 19th Floor, New York, NY 10017 and Gregory Rasin, Proskauer Rose, 11 Times Square, New York, NY 10036.

1.12    *Effective; Effective Date.*   "Effective" shall mean the occurrence of all of the following, and "Effective Date" shall be the date that all of the following have occurred:

(A)    the Court has entered Judgment and ruled on the motions for awards of service payments to Plaintiffs pursuant to Section 3.3 and for attorneys' fees and reasonable costs pursuant to Section 3.2; and

(B)     the Judgment and the rulings on such motions have become Final.   "Final" means the later of:

    (1)     31 days after the Court enters Judgment if no reconsideration or rehearing is sought;

    (2)     If rehearing or reconsideration is sought, after any and all avenues of rehearing or reconsideration have been exhausted and no further rehearing or reconsideration is permitted, and the time for seeking such review has expired, and the Judgment and rulings on service awards and attorneys' fees and reasonable costs have not been modified, amended or reversed in any way.

1.13    *Fairness Hearing.*   "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.14    *Fee Award.*   "Fee Award" shall mean the court-approved attorneys' fees and costs as described in Section 3.2.

1.15    *Litigation.*   "Litigation" shall mean the Liwanag Action and the Carattini Action, consolidated as *In Re: Penthouse Executive Club Litigation*, Case No. 10 Civ. 1145 (KMW), pending in the United States District Court for the Southern District of New York.

1.16    *Net Settlement Fund.*   "Net Settlement Fund" shall mean the remainder of the Settlement Payment after deductions for the Fee Award as described in Section 3.2, court-approved service payments to Plaintiffs as described in Section 3.3, any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1, and any taxes incurred directly or indirectly as a result of investing the Settlement Payment.

1.17    *Net Fund For Allocation*.   The "Net Fund For Allocation" shall mean the base recovery for a Class Member performing for a single calendar year, which is $3,727.79, times the total number of Class Members, which the parties agree is approximately 1245.

1.18    *Order Granting Final Approval or Final Order and Judgment.*   "Order Granting Final Approval" or "Final Order and Judgment" shall mean the final Order entered by the Court after the Fairness Hearing.

1.19    *Order Granting Preliminary Approval.*   "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, inter alia, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.20    *Parties.*   "Parties" shall mean Plaintiffs, the Class, and Defendants.

1.21    *Plaintiffs.*   "Plaintiffs" shall refer to the Named Plaintiffs in this Litigation,

Stephanie Carattini and Nicole Hughes in the Carattini Action, and Leslie Liwanag in the Liwanag Action, or any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.22    *Settlement Fund Account.*   "Settlement Fund Account" shall mean the FDIC insured account created and controlled by the Claims Administrator.   To the extent that an interest-bearing vehicle that is also FDIC insured is available, the Claims Administrator shall use such vehicle.

1.23    *Settlement Fund.*   A "Settlement Fund" not to exceed Eight Million dollars ($8,000,000) shall be the maximum aggregate to be paid by the Defendants to pay all Class Members who file a timely claim as provided for in this Agreement, plus the Fee Award.

1.24    *Settlement Payment.*   "Settlement Payment" shall mean the aggregate of all claims made by Class Members, plus the Fee Award, plus any interest accrued as provided in Section 3.1(A), that Defendants pay to settle the Litigation.

2.      **APPROVAL AND CLASS NOTICE**

2.1     *Retention of Claims Administrator.*   The Claims Administrator shall be responsible for the claims administration process and distributions to Class Members as provided herein.   Class Counsel shall choose the Claims Administrator with Defendants' input and approval, which will not be unreasonably withheld.   The Parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement. Defendants' Counsel and Class Counsel have the right to make inquiries and receive any information from the Claims Administrator related to the claims administration process.   The Claims Administrator shall be paid out of the Fee Award.

2.2     *Preliminary Approval by the Court.*   Within 10 days of the date on which this Agreement is fully executed, Plaintiffs will submit to the Court a Motion for an Order Conditionally Certifying the Settlement Class including those who opted in to the FLSA collective action and a Rule 23 Class covering the state law claims and Preliminarily Approving the Class Action Settlement ("Preliminary Approval Motion").   In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court, among other things, (a) a proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing, and (b) a proposed Order Granting Preliminary Approval, which shall include the findings required by Federal Rule of Civil Procedure 23(a) and (b)(3).   The Preliminary Approval Motion will seek the setting of dates for opt-outs, objections, and a Fairness Hearing.   Defendants will not oppose the Preliminary Approval Motion, provided that it complies with the terms of the Agreement.

2.3     *Denial of Preliminary Approval.*   If the Court denies the Motion for Preliminary

Approval, the Parties jointly agree to meet and confer to discuss whether it is feasible to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement.   Should a motion for reconsideration and/or the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted.   The Plaintiffs shall retain the right to seek class certification, and Defendants retain the right to contest whether this case should be maintained as a class action, and to further contest the merits of the claims being asserted by Plaintiffs in this Litigation.   In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

2.4     *Final Order and Judgment from the Court.*   Plaintiffs will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment.   The Proposed Final Order and Judgment will, among other things, (a) certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.7, (d) dismiss the Litigation with prejudice (except with respect to the individual non-class claims of any Plaintiff who does not sign the settlement agreement), (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Settlement and Release.   Defendants will not oppose the application for the Final Order and Judgment, that complies with the terms of this Agreement.

2.5     *Class Notice.*

(A)     Within 10 calendar days of the date of the Order Granting Preliminary Approval, Defendants will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the names, last known addresses, social security numbers, the number of calendar years that the Class Members performed at Penthouse based on IRS Form 1099s issued or other evidence that the Defendants have that the Class Member performed in a calendar year, and to the extent Defendants have them, telephone numbers. This data, and any other data provided by Defendants to the Claims Administrator and/or Class Counsel pursuant to this Agreement, shall be presumed to be accurate, subject to the provisions of paragraph 2.5(C), and shall be held in strict confidence to be used solely for the purposes of this Litigation and shall not be disclosed to anyone outside of the Claims Administrator and attorneys for the parties in this Litigation.   Class Counsel shall provide the Claims Administrator with any updated addresses and phone numbers they obtain from Class Members prior to the Claim Bar Date, subject to Section 2.5(D) below.   The Claims Administrator shall also create a website for the purpose of making the notice and claim form available to Class Members.   The content of the website shall be limited to the language of the Court-approved notice and contact information for the Claims Administrator.

(B)     Within 20 calendar days after receiving the information described in Section 2.5(A), the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Court-Approved Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to all Class Members and Claim Form (together, "the Notice") using each individual's last known address as recorded in Defendants' records updated by Class Counsel.   Each Notice shall state that Class Member's "Proportionate Settlement Award," as defined in Paragraph 3.4(B).

(C)     In the event a Notice is returned undeliverable, the Claims Administrator shall take all reasonable steps, including a social security number search, to obtain the correct addresses of Class Members, and shall attempt one re-mailing to each updated address, and if such re-mailing is returned undeliverable, and a new address is obtained, a second re-mailing shall be attempted.   There shall be no further mailings of the Notice unless a new address is furnished prior to the Claim Bar Date by a Class Member.   In no event shall there be more than three (3) mailings to any Class Member. The Claims Administrator shall also send two text messages to all Class Members for whom telephone numbers are available, using each individual's last known telephone number.   The first text message shall be sent forty-five days prior to the Claim Bar Date.   The second text message shall be sent fourteen days prior to the Claim Bar Date.   Both text messages shall read "A class action settlement against Penthouse may affect your rights. Please visit [website name] or call [Claims Administrator phone number] for info."   Other than the provisions set forth in this section, the Claims Administrator shall not call or email Class Members unless the Class Member first contacts the Claims Administrator by phone or email in which case the Claims Administrator may communicate in kind with the Class Member.   Under no circumstances will the Claims Administrator encourage or discourage a Class Member's participation in the Settlement or the filing of a Claim Form and Release.

(D)     The Parties agree that the proposed Class Notice constitutes the best notice practicable under the circumstances, and constitutes due and sufficient notice of the pendency of the Litigation, the proposed settlement, and the Fairness Hearing to all persons entitled to notice, in full compliance with due process under the United States Constitution.   As such, Class Counsel shall not directly or indirectly initiate contact, or encourage or instruct others to initiate contact, with the Class Members from the date of execution of this Agreement through the date of the Final Order and Judgment.   Plaintiffs acknowledge that this provision is a material term of this Agreement and that the Defendants would not have entered into this Agreement without Class Counsel's agreement to this provision. However, nothing set forth herein shall limit Class Counsel's ability to answer questions posed by members of the Class.

2.6     *Class Member Opt-Out.*

(A)    Any Class Member may request exclusion from the Class by "opting out." Class Members who choose to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the Litigation ("Opt-Out Statement").  The Opt-Out Statement must contain the name, stage name, social security number, estimated years of performance at the Penthouse Executive Club, address and telephone number of the Class Member to be valid.  It must also contain words that clearly describe her intention to opt-out such as: "I elect to exclude myself from the settlement in the Penthouse Executive Club Litigation" in order to be valid.  To be valid, the Class Member must also enclose a copy of her government issued picture identification, such as a driver's license or passport.  To be effective, such Opt-Out Statements and enclosures must also be sent via First Class United States Mail and postmarked by the Claim Bar Date, which will be specified on the Notice.  The Claim Bar Date will be 90 calendar days after the Claims Administrator mails the Notice.

(B)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof.  The Claims Administrator also shall, within 3 calendar days of the end of the Opt-Out Period, file with the Clerk of Court stamped copies of any Opt-Out Statements.  The Claims Administrator shall, within 2 business days of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel.  The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(C)    In the event that 30 or more of the Class Members file valid Opt-Out Statements by the deadlines set herein, Defendants shall have a period of 10 business days after receipt of the final list of all Opt-Out Statements from the Claims Administrator in which to revoke this Agreement, in which case it shall be void, final approval shall not be sought or granted, and the provisions of Sections 2.11(a) and (b) shall apply.  Defendants must notify Class Counsel, the Claims Administrator, and the Court in writing in order to revoke this Agreement.  Any expenses incurred by the Claims Administrator prior to or in connection with this revocation shall be borne by the Defendants if they should revoke this Agreement in accordance with the conditions of this Paragraph.  In the event that Defendants revoke this Agreement pursuant to this Section, Defendants shall, within 10 business days following such revocation, reimburse Class Counsel for all fees paid by Class Counsel to Martin Scheinman, Esq., David Geronemus, Esq. and JAMS for their mediation services.

(D)    Class Members who have signed an Entertainer License Agreement or any

other agreement containing a class waiver provision are under no obligation to opt-out or decline to participate, and Defendants will not encourage them to do so.

2.7   *Class Member Claims.*

(A)   A Class Member who submits a timely and properly and fully completed Claim Form and Release, post-marked by the Claim Bar Date, will be deemed eligible for a payment hereunder.   To be valid, the Claim Form and Release must signed by the Class Member, include all information requested from the Class Member in the Claim Form and Release   as well as a complete W-9 form.   Payments will be made by check issued by the Claims Administrator.   The Claim Form shall request the Class Member's name, mailing address, estimated years of performance at the Penthouse Executive Club, and signature.

(B)   Neither Defendants, their attorneys or agents, nor the Claims Administrator shall encourage or discourage any Class Member from filing the Claim Form and Release in any manner, and will not have any unsolicited contact with any Class Member, tell any Class Member she is no longer permitted to perform at the Penthouse Executive Club, threaten, harass, penalize, or in any other manner discriminate or retaliate against any Class Member for filing the Claim Form and Release or choosing not to do so.   For the avoidance of doubt, this prohibition includes speaking with any Class Member's current or prospective employers about a Class Member's decision to file or not file the Claim Form and Release. If Defendants or their agents, including their attorneys, receive an inquiry from a Class Member about participation in this settlement, they shall not discuss the issue with the Class Member and shall refer the Class Member to the Claims Administrator by providing the Class Member with the Claims Administrator's telephone number. Neither Defendants, their agents, nor the Claims Administrator shall encourage or discourage Class Members from participating in the settlement in any way.   The Parties and the Claims Administrator shall also not disclose to any third party the name of any Class Member who files the Claim Form and Release.

2.8   *Objections to Settlement.*

(A)   Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing stating the grounds for the objection specifically.   Failure to state the specific grounds for the objection shall invalidate it.   To be considered, such statement must be sent to the Claims Administrator via First-Class United States mail, postage prepaid, and be received by the Claims Administrator by the Claim Bar Date, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing.   The Claim Bar Date shall be 90 days after the mailing of the Notice by the Claims Administrator.   The Claims Administrator shall

stamp the date received on the original objection and send copies of each objection to Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof.  The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 3 calendar days after the end of the Opt-Out Period.

(B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector.  An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing at the time he/she submits his/her written objections.  An objector may withdraw his/her objections at any time.  No objector may appear at the Fairness Hearing unless he/she has filed a timely objection that complies with the procedures provided in Section 2.8(A) and (B).  Any Class Member who has submitted an Opt-Out Form may not submit objections to the settlement.

(C)     The Parties may file with the Court written responses to any filed objections no later than 15 calendar days before the Fairness Hearing.

2.9     Motion for Judgment and Final Approval.  No later than 15 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.  The Fairness Hearing shall be held at the Court's convenience.

2.10    Entry of Judgment.  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.6, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Agreement.

2.11    Effect of Failure to Grant Final Approval.  In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Parties shall proceed as follows: The Parties jointly agree to (a) seek reconsideration of the decision denying entry of Judgment, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration is denied, or a mutually agreed-upon settlement is not approved:

(A)     The Litigation will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and Defendants retain the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this action.

(B)     The Court will provide notice to Class Members that the Agreement did not

become final and, as a result, no payments will be made to Class Members under the Agreement.   Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the Notice.

3.   **SETTLEMENT TERMS**

3.1   *Settlement Payment.*

(A)   Defendants, jointly and severally, agree to pay a sum not to exceed $8,000,000, which shall resolve and satisfy: (a) court-approved attorneys' fees and costs; (b) all gross amounts to be paid to Class Members; and (c) court-approved service payments to Plaintiffs.   Defendants will not be required to pay more than $8,000,000 under this Agreement.

(B)   Within five (5) calendar days after the Effective Date, Defendants shall deposit into the Settlement Fund Account, to be established by the Claims Administrator, a sum equal to all the aggregate of the Class Claimants' allocated shares of the settlement, plus the service payments, plus one million dollars ($1,000,000) representing the first of three installments of the Fee Award.   Defendants shall pay the remaining two installments of the Fee Award in two (2) equal installments of $587,500 each, to be paid three months and six months, respectively, after the Effective Date.   Interest shall accrue on the unpaid portion of the Fee Award at 5% per annum beginning six days after the Effective Date until all amounts due are deposited into the Settlement Fund Account.   In the event any payment under this section is not made when due, Class Counsel or their authorized agent shall deliver a notice of such default, via overnight mail, addressed to Jeffrey Kimmel, Esq., Two Grand Central Tower, 140 East 45th Street, 19th Fl. New York, New York 10017.   Any such default may be cured by issuing the appropriate payment of the installment or installments then due to Class Counsel within five business days of receipt of Class Counsel's notice of default. All deposits made to the Settlement Fund Account (whether timely or after notice of default is issued) shall be made by wire transfer, pursuant to the following instructions (which may be amended by Class Counsel upon written notice to Defendants), as follows:

> The Settlement Fund Title:
> The Settlement Fund Account Number:
> Settlement Fund Address:
> Settlement Fund Bank:
> Settlement Fund Bank Address:
> Settlement Fund ABA:
> SWIFT CODE:

Within 5 business days of the payment in full of the Fee Award, Plaintiffs shall dismiss the Litigation against defendant Robert Gans, *with prejudice*.

(C) Within thirty (30) calendar days of the Effective Date, and thereafter within thirty (30) calendar days of when any additional money is funded into the account pursuant to Section 3.1(A) above, the Claims Administrator will distribute the money in the Settlement Fund Account by making the following payments:

    (1) Paying Class Counsel Court-approved attorneys' fees as described in Section 3.2(A).

    (2) Paying Class Claimants their individual allocated portions of the Settlement Payment as described in Section 3.4.

3.2 *Settlement Amounts Payable as Attorneys' Fees and Costs.*

(A) Plaintiffs may apply for no more than 27.1875% of the Settlement Fund for professional fees, costs, and expenses.

(B) Defendants will not oppose such application provided it is consistent with this Agreement and specifically Section 3.2(A).   Defendants shall have no additional liability for attorneys' fees and costs except for as provided in Section 3.1(B).

(C) The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.   The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

3.3 *Payments to Plaintiffs*.   Prior to the Fairness Hearing, Plaintiffs Stephanie Carattini, Nicole Hughes and Leslie Liwanag will apply to the Court to receive $15,000 each from the Settlement Fund for services rendered to the Class.   Opt-In Plaintiffs Nadene Speer, Alicia Daniels, Nicki Mpogiatzis, and Marsha Chalmers will apply to the Court to receive $8,750 each from the Settlement Fund for services rendered to the Class.   Defendants will consent to such application.   To the extent granted by the Court, the service payments and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Payment.   The substance of the above-referenced Plaintiffs' application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation.   The outcome of the Court's ruling on the application for service payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.   If a Plaintiff or an Opt-In Plaintiff opts out of the settlement, she is not entitled to a service payment.

3.4     *Distribution to Class Members.*

(A)     A Class Member who submits a timely Claim Form and Release pursuant to Section 2.7(A) will be deemed eligible for a payment hereunder, subject to the release set forth in Section 2.8.

(B)     A Class Member's portion of the settlement award ("Individual Settlement Payment") shall be determined by the Claims Administrator pursuant to the formulas set forth below.

*Minimum Payment*

Each Class Member shall receive $3,727.79 for the first calendar year during which she performed ("Minimum Payment").

*Points for Additional Proportionate Settlement Award*

a.      Each Class Member earns 1 point for each additional calendar year during which she performed (in excess of the first year) between January 1, 2004 and June 12, 2012.

b.      A "calendar year during which a Class Member performed" is any year for which defendant The Executive Club, LLC either issued a Class Member a Form 1099 or has other evidence that the Class Member performed in that calendar year.

(For example, a class member for whom Defendant issued Forms 1099 in 2005, 2006, and 2007 shall be allocated $3,727.79 plus 2 points)

*Calculation*

To calculate each Class Member's Additional Proportionate Settlement Award:

a.      Add all points together to obtain the "Total Denominator."

b.      Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the Net Fund for Allocation."

c.      Multiply each Class Member's Portion of the Net Fund for Allocation by the Net Fund for Allocation to determine each Class Member's allocated Additional Proportionate Settlement Award.

        d.     Add each Class Member's Additional Proportionate Settlement Award, if any, to each Class Member's Minimum Payment to determine each Class Member's "Individual Settlement Payment."

(C)    The Claims Administrator shall mail to all Class Claimants their Proportionate Settlement Award within 30 days of the Effective Date.   The Claims Administrator shall use reasonable efforts to make an additional mailing to Class Claimants whose checks are returned because of incorrect addresses.   Such efforts shall include using social security numbers to obtain better address information and, for Class Claimants whose payment is greater than $100, attempting to call and email such Class Claimants.

(D)    If payments to Class Claimants as described in this Section are not cashed within 180 days of the date of the checks, the checks will be null and void and the Claims Administrator shall put a stop payment on all checks not yet deposited.   Any and all money remaining in the Escrow Account more than 180 days after the Claim Bar Date, including any accrued interest, except for any remaining portions of the Fee Award pursuant to Paragraph 3.1(B), shall be immediately returned to Defendants via return wire transfer to the account from which the Escrow Account was funded

(E)    All payments to Class Claimants made pursuant to this Agreement shall be deemed to be paid to such Class Claimants solely in the year in which such payments actually are received by the Class Claimants.

3.5    *Release.*

(A)    Release of Class Member Claims.

(1)    By operation of the entry of the Final Judgment and Order, and except as to such rights or claims as may be created by this Agreement, each Class Member who does not timely opt-out shall release Defendants from all wage and hour claims under the New York Labor Law that were, or could have been, brought in the Litigation and interest, liquidated damages, attorneys' fees, and costs with respect to such claims.

(2)    Each Class Claimant who endorses and/or deposits her settlement check shall release Defendants from all wage and hour claims under the Fair Labor Standards Act and under the New York Labor Law that were, or could have been, brought in the Litigation, including interest, liquidated damages, attorneys' fees, and costs with respect to such claims.

(B)    *Release of Fees and Costs for Settled Matters*.   Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any

claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsels' representation of Plaintiffs and the Class. Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.   However, a Plaintiff who opts out of the settlement agreement does not release any claims against Defendants.

(C)   *No Assignment*.   Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(D)   *Non-Admission of Liability*.   By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied.   Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.   Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class.   Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement.   The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

3.6   *Press Contacts/Publicity*.   The Parties, their lawyers, their agents and the Claims Administrator shall not contact the press or general media regarding the Litigation, or this Agreement, until six months after the Effective Date.   As used herein, "the press or general media" shall refer to and include newspapers, periodicals, magazines, online publications, and television and radio stations and programs, and any representative of the foregoing.   The Parties and their lawyers may return phone calls or otherwise respond to any inquiries they receive directly from the press or general media, but in doing so will only advise of the existence of this provision and direct the requesting Party to the Court file without providing any

further information.  This provision shall not preclude Defendants from making announcements and/or disclosure required by law.

3.7     *Miscellaneous.*

    (A)    *Cooperation Between the Parties; Further Acts*.  The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, at its own cost and expense, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

    (B)    *Entire Agreement*.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

    (C)    *Binding Effect*.  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

    (D)    *Arms' Length Transaction; Materiality of Terms*.  The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

    (E)    *Captions*.  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

    (F)    *Construction*.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

    (G)    *Blue Penciling*.  Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

    (H)    *Governing Law*.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law

of the United States governs any matter set forth herein, in which case such federal law shall govern.

(I)     *Continuing Jurisdiction*.   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.   The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

(J)     *Waivers, etc. to Be in Writing*.   No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.   Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(K)     *When Agreement Becomes Effective; Counterparts*.   This Agreement shall become effective upon its execution by all of the Parties and Class Counsel. The Parties and Class Counsel may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs, Class Counsel and Defendants had signed the same instrument.

(L)     *Facsimile/Electronic Signatures*.   Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.   Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(M)     *Amended Pleading*.   Prior to the date of the Fairness Hearing, Plaintiffs in the *Liwanag Action* may move to amend their Complaint to add Nicki Mpogiatzis as a Named Plaintiff.   Defendants will not oppose Plaintiffs' application.

(N)     *Named Plaintiffs' Signatures*.   This Agreement will be deemed to be fully executed and enforceable with the signatures of at least two Named Plaintiffs, in addition to the other signatures called for.

DATED:  April 4, 2013                    The Executive Club, Inc. LLC

                                         By:

                                         Its:

DATED:  April 4, 2013                    Penthouse Club, Inc.

                                         By:

                                         Its:

DATED:  April 4, 2013                    Robert Gans

DATED:  April 4, 2013                    Mark Yackow

DATED:  April __, 2013                   Stephanie Carattini

DATED:  April __, 2013                   Nicole Hughes

DATED:  April __, 2013                   Nicki Mpogiatzis

DATED:  April 5, 2013                    Outten & Golden, LLP

                                         By:

                                         Its:
                                         As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                         and (C) only

DATED:  April __, 2013            The Executive Club, Inc.

                                  By: _____

                                  Its: _____


DATED:  April __, 2013            Penthouse Club, Inc.

                                  By: _____

                                  Its: _____



DATED:  April __, 2013            Roberts Gans

                                  _____


DATED:  April __, 2013            Mark Yackow

                                  _____


DATED:  April __, 2013            Stephanie Carattini

                                  _____


DATED:  April 4, 2013             Nicole Hughes

                                  _____

DATED:   April__, 2013            Nicki Mpogiatzis

                                  _____


DATED:  April __, 2013            Outten & Golden, LLP


                                  By:_____


                                  Its:_____
                                  As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                  and (C) only

DATED:   April ___, 2013          The Executive Club, Inc.

                                  By: _____

                                  Its: _____


DATED:   April ___, 2013          Penthouse Club, Inc.

                                  By: _____

                                  Its: _____


DATED:   April ___, 2013          Roberts Gans

                                  _____


DATED:   April ___, 2013          Mark Yackow

                                  _____


DATED:   April ___, 2013          Stephanie Carattini

                                  _____


DATED:   April ___, 2013          Nicole Hughes

                                  _____


DATED:   April ___, 2013          Nicki Mpogiatzis

                                  _____


DATED:   April ___, 2013          Outten & Golden, LLP

                                  By: _____

                                  Its: _____
                                  As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                  and (C) only

DATED:   April___, 2013                    Virginia & Ambinder, LLP

                                           By:_____

                                           Its:_____
                                           As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                           and (C) only


DATED:   April ___, 2013                   Leeds Brown Law, P.C.

                                           By: _____

                                           Its:_____
                                           As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                           and (C) only


DATED:   April ___, 2013                   Urban Justice Center

                                           By:_____

                                           Its:_____
                                           As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                           and (C) only

DATED:   April___, 2013                    Virginia & Ambinder, LLP


                                           By:_____ _____


                                           Its:_____ _____
                                           As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                           and (C) only

DATED:   April ___, 2013                   Leeds Brown Law, P.C.


                                           By:_____ _____


                                           Its:_____ _____
                                           As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                           and (C) only

DATED:   April ___, 2013                   Urban Justice Center

                                           By:_____ _____

                                           Its:_____ _____
                                           As to Paragraphs 2.5(D), 3.2(A) and (B) and 3.5(B)
                                           and (C) only