**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**VIRGINIA & AMBINDER LLP**
Lloyd Ambinder
LaDonna M. Lusher
111 Broadway, Suite 1403
New York, New York 10006
Telephone: (212) 943-9080
Facsimile: (212) 943-9082

**URBAN JUSTICE CENTER**
**SEX WORKERS PROJECT**
Gratienne Baskin (*admitted pro hac vice*)
123 Williams Street, 16th Floor
New York, New York 10038
Telephone: (646) 602-5600
Facsimile: (212) 533-4598

**LEEDS BROWN LAW PC**
Jeffrey Brown
One Old Country Road, Suite 347
Carle Place, NY11514-1851
Telephone: (212) 661-4370
Facsimile: (516) 747-5024

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Penthouse Executive Club Compensation Litigation** | **Master File No. 10 Civ. 1145 (KMW)** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS,
## FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL OF
## THE FLSA SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 1

I.    The Penthouse Overtime Litigation .................................................................. 1

II.   Discovery and Motion Practice......................................................................... 2

III.  Settlement Negotiations ................................................................................... 3

IV.   Preliminary Approval, Class Notice, and Claim Filing ...................................... 3

V.    Class Action Fairness Act Notice ..................................................................... 7

SUMMARY OF THE SETTLEMENT TERMS................................................................... 7

I.    The Settlement Fund......................................................................................... 7

II.   Releases............................................................................................................ 7

III.  Allocation Formula ........................................................................................... 7

IV.   Attorneys' Fees, Litigation Costs, and Service Awards ..................................... 8

V.    Settlement Claims Administrator....................................................................... 8

ARGUMENT....................................................................................................................... 9

I.    The Settlement Class Meets the Legal Standard for Class Certification. ........... 9

      A.    Numerosity........................................................................................... 9

      B.    Commonality....................................................................................... 10

      C.    Typicality ............................................................................................ 11

      D.    Adequacy of the Named Plaintiffs...................................................... 12

      E.    Certification Is Proper Under Rule 23(b)(3)....................................... 13

            1.    Common Questions Predominate. ............................................ 13

            2.    A Class Action Is a Superior Mechanism................................. 14

II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be
       Approved in All Respects. ............................................................................................... 15

       A.    The Proposed Settlement Is Procedurally Fair........................................................ 16

       B.    The Proposed Settlement Is Substantively Fair. .................................................... 17

             1.    Litigation Through Trial Would be Complex, Costly, and Long
                   (*Grinnell* Factor 1) ..................................................................................... 17

             2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 18

             3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve
                   the Case Responsibly (*Grinnell* Factor 3).................................................. 20

             4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell*
                   Factors 4 and 5)............................................................................................ 20

             5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell*
                   Factor 6)......................................................................................................... 21

             6.    Defendants' Ability to Withstand a Greater Judgment is Not
                   Determinative (*Grinnell* Factor 7) ............................................................. 22

             7.    The Settlement Fund is Substantial, Even in Light of the Best
                   Possible Recovery and the Attendant Risks of Litigation (*Grinnell*
                   Factors 8 and 9)............................................................................................ 22

III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law ........................... 24

CONCLUSION..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................13, 14

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ........................................................................................24

*Asare v. Change Grp. of New York, Inc.*,
    No. 12 Civ. 3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ...........................................18

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................................17

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................12, 15

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...........................................19

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)...............................................23

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................................ *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)................................................................................................9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................................15, 17

*Davis v. J.P. Morgan Chase & Co.*,
    No. 01 Civ. 6492, 2011 WL 4793835 (W.D.N.Y. Oct. 11, 2011)...........................................18

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006)................................................................................................9

*Diaz v. Scores Holding Co.*,
    No. 07 Civ. 8718, 2011 WL 6399468 (S.D.N.Y. July 11, 2011) ...........................................22

*Dorn v. Eddington Sec., Inc.*,
    No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)...........................................20

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)............................................12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240........................................................................................................................16

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................. *passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982).......................................................................................................................10

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................................................15

*Grant v. Bethlehem Steel Corp.*,
823 F.2d 20 (2d Cir. 1987)............................................................................................................19

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968)..........................................................................................................14

*Hart v. Rick's Cabaret Int'l Inc.*,
No. 09 Civ. 3043, 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010)................................10, 11, 14

*Hernandez v. Merrill Lynch & Co.*,
No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ..............................................14

*Hoffmann-LaRoche Inc. v. Sperling*,
493 U.S. 165 (1989).......................................................................................................................24

*In re Ira Haupt & Co.*,
304 F. Supp. 917 (S.D.N.Y. 1969)................................................................................................20

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
109 F.R.D. 391 (S.D.N.Y. 1986) ..................................................................................................10

*In re Lloyd's American Trust Fund Litig.*,
No. 96 Civ.1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..............................................19

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................................................18

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)..........................................................................................................11

*Martens v. Smith Barney, Inc.*,
190 F.R.D. 134 (S.D.N.Y. Dec. 2, 1999)......................................................................................12

v

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ...............................................................13

*McKenna v. Champion Intern. Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ...............................................................24

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .................................... *passim*

*Meyer v. U.S. Tennis Ass'n*,
    No. 11 Civ. 6268, 2013 WL 1777556 (S.D.N.Y. Apr. 25, 2013)...................................10, 11

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
    471 F.3d 24 (2d Cir. 2006)...............................................................13

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. July 14, 2008) ...............................................................12

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)...............................................................12, 15

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...............................................................23

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...............................................................20

*Reyes v. Altamarea Group, LLC*,
    No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011)...............................................................11

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...............................................................11

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)...............................................................13

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)...............................................................8

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)...............................................................15

*Torres v. Gristede's Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)...............................................................14

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)...............................................................16

*Toure v. Cent. Parking Sys. of N.Y.*,
      No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ...........................................12

*Velez v. Majik Cleaning Serv., Inc.*,
      No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)............................................21

*In re Visa Check/MasterMoney Antitrust Litig.*,
      280 F.3d 124 (2d Cir. 2001)............................................................................................13, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
      396 F.3d 96 (2d Cir. 2005)..........................................................................................7, 15, 16

*In re Warfarin Sodium Antitrust Litig.*,
      391 F.3d 516 (3d Cir. 2004)....................................................................................................20

*Wright v. Stern*,
      553 F. Supp. 2d 337 (S.D.N.Y. 2008)....................................................................................18

*Yuzary v. HSBC Bank USA, N.A.*,
      No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................................24

*Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*,
      758 F.2d 86 (3d Cir. 1985)......................................................................................................19

*Zivali v. AT&T Mobility, LLC*,
      784 F. Supp. 2d 456 (S.D.N.Y. 2011)....................................................................................21

**Statutes**

28 U.S.C. § 1715(d) ..........................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6)................................................................................................................2, 20

2 McLaughlin on Class Actions § 6:24 (8th ed.) ...........................................................................19

Deborah R. Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain 9-37
      (2000)......................................................................................................................................19

William Simon, Class Actions-Useful Tool or Engine of Destruction, 55 F.R.D. 375, 379
      (1973)…....................................................................................................................................19

**INTRODUCTION**

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval").  The parties' $8,000,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiffs seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Certification ("Swartz Declaration");[1] and (3) approving the FLSA Settlement.

On April 29, 2013, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing.  Swartz Decl. ¶ 29; ECF No. 110.  Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement.  Ex. C (Decl. of Mark Patton ("Patton Decl."), Ex. A (Notice and Claim Form).  No Class Member has objected to the settlement, and 22 Class Members have filed timely opt-out requests.  Ex. C (Patton Decl.) ¶¶ 7.  For the reasons stated below, the Court should grant final approval.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    The Penthouse Overtime Litigation**

Plaintiffs Stephanie Carattini and Nicole Hughes filed a class and collective action on December 29, 2009.  Ambinder Decl. ¶¶ 6.  Plaintiff Leslie Liwanag filed a similar case on

---

[1]    Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

February 11, 2010.  Swartz Decl. ¶ 14.  On June 11, 2010, the Court, Judge Naomi Buchwald presiding, ordered that the two cases be consolidated.  *Id.*; ECF No. 20.

Before filing, Class Counsel conducted thorough investigations.  Swartz Decl. ¶ 19; Decl. of Lloyd Ambinder ("Ambinder Decl.") ¶ 9; Decl. of Jeffrey K. Brown ("Brown Decl.") ¶ 12; Decl. of Gratienne Baskin ("Baskin Decl.") ¶ 10.  They also conducted extensive legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, the likelihood of class certification, and Defendants' affirmative defenses.  *Id.*

Plaintiffs and the members of the class ("Class Members" or "the Class") were entertainers (dancers) at the Penthouse Executive Club, an adult night club in New York City.  Swartz Decl. ¶ 13.  Plaintiffs alleged that Penthouse misclassified Class Members as independent contractors, denying them the protections of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  *Id.*  As a result, Plaintiffs claimed, Defendants paid Class Members no wages, unlawfully required them to pay "house fees" and other fees, and unlawfully took Class Members' tips by retaining a portion of Class Members' credit card and "executive dollar" tips.  *Id.*

## II.    Discovery and Motion Practice

Class Counsel reviewed thousands of pages of documents; analyzed time, payroll and tip allocation records, tax documents, and financial records; prepared three Plaintiffs and four opt-in plaintiffs for their depositions and defended them; served and responded to document requests and interrogatories; took a Fed. R. Civ. P. 30(b)(6) deposition; and deposed two of Defendants' managers.  *Id*.  The parties also engaged in heavy discovery motion practice.  *See* ECF Nos. 26, 35, 50, 60, 65, 88-89.

On October 27, 2010, the Court granted Plaintiffs' motion for conditional certification of a FLSA collective action under 29 U.S.C. § 216(b) and for court-authorized notice.  *See* ECF No. 34.  Twenty additional Class Members joined the case.  Swartz Decl. ¶ 18.  On April 24, 2013, Class Counsel filed an Amended Complaint adding an additional named plaintiff, Nicki Mpogiatzis. *Id.* ¶ 28; ECF No. 108.

### III.   Settlement Negotiations

After completing substantial discovery, the parties agreed to attempt to resolve the case through private mediation overseen by David Geronemus of JAMS.  Swartz Decl. ¶ 22. Plaintiffs submitted a detailed mediation statement that explained the claims, noted Defendants' vulnerabilities, acknowledged risk, and explained the damage calculations.  *Id.* ¶ 23.

On January 26, 2012, the Parties attended an all-day mediation.  *Id.* ¶ 24.  The parties made progress but did not settle.  *Id*.  After further discovery and motion practice, the parties attended a second mediation on June 12, 2012, conducted by Martin F. Scheinman.  *Id.* ¶ 25. The parties made further progress towards a settlement and, during the next several months, exchanged more information and nearly finalized a settlement.  *Id.*  In order to address the last outstanding issues, the parties attended a third mediation session on January 10, 2013, also overseen by Mr. Scheinman.  *Id.* ¶ 26.  After this session, several follow-up telephone calls with the mediator, and direct negotiations among counsel, the parties finally reached an agreement on all terms, which they memorialized in the Settlement Agreement.  *Id.*

### IV.   Preliminary Approval, Class Notice, and Claim Filing

The Court granted Plaintiffs' motion for preliminary settlement approval on April 30, 2013.  ECF No. 110.  The settlement claims administrator that Plaintiffs hired, Settlement Services, Inc. ("SSI"), mailed notice to the Class on June 26, 2013 by U.S. Mail.  Ex. C (Patton

3

Decl.) ¶ 4.  The notice advised Class Members, among other things, that they could object to or exclude themselves from the settlement.  Ex. C (Patton Decl.), Ex. A (Notice).

SSI received 654 Notices returned as undeliverable by the United States Post Office without forwarding addresses.  Patton Decl. ¶ 5.  SSI performed traces on all of these addresses that revealed new addresses for 523 of them.  *Id.*  SSI re-mailed notices to the 523 Class Members.  *Id.*  Of the 523 re-mailed notices, 99 were returned to SSI as undeliverable a second time.  *Id.*  In addition to the 654 undeliverable notices, 28 notices were returned to SCI as undeliverable with new forwarding addresses.  *Id.*  Per this Court's September 30, 2013 Order, notice was mailed to these 28 Class Members on October 1, 2013.  Id. ¶ 5; ECF No. 123.

In addition to mailed notice, on August 9, 2013, and September 10, 2013, SSI also sent two text messages to each of the 1,231 Class Members for whom it had telephone numbers.  SSI also established a website that provided information about the settlement.  *Id.* ¶¶ 10-11.  Additional notice was also posted on www.stripperweb.com, an industry website, pursuant to this Court's May 10, 2013 Order.  ECF No. 116.  On November 26, 2013, pursuant to the Court's November 8, 2013 Order, ECF No. 137, SSI sent a reminder postcard and a third text message informing class members of the extended claim bar date of December 26, 2013, and notifying Class Members that they could file anonymously.  Ex. C (Patton Decl.) ¶ 12.

Under the Settlement Agreement, Class Members had 90 days to return a completed claim form in order to participate in the settlement.  Ex. A (Settlement Agreement).

Over the course of the 90-day claim-filing period, Class Counsel became aware that Defendants took various steps, some subtle and some overt, designed to dissuade class members from participating in the settlement.  Ex. D (Sept. 30, 2013 Pl. Ltr. to Court).  Defendants' employees with the authority to hire and fire told class members that they would lose their job or

4

otherwise suffer retaliation if they filed a claim form or if they did not rescind a filed claim form. *Id.* Defendant's intimidation tactics were effective and resulted in a lowered participation rate than expected. *Id.*

On September 30, 2013, Class Counsel wrote to the Court requesting certain relief that Class Counsel believed would increase the participation rate including that the Court: 1) schedule an in-person status conference at its earliest convenience at which Defendant Mark Yackow should be required to appear; 2) extend the claim bar date by 60 days, from September 24, 2013, to November 25, 2013; 3) allow class members to join the case anonymously to Defendants; 4) authorize the Claims Administrator to send postcards to all class members who have not returned claim forms to inform them of the new claim filing deadline and that they may participate anonymously; 5) authorize the Claims Administrator to conduct a search for class members' most current telephone numbers (at Class Counsel's expense) and send a reminder text message to each class member for whom a number is found (there was an uptick in claim forms submitted following the previous text messages); 6) order Defendants to post a notice in the entertainers' locker room to inform class members of the new claim filing deadline, that they may participate anonymously, and that retaliation is illegal; and 7) order Defendants and their agents not to communicate with class members about the settlement. Defendants opposed this relief. Ex. E (Sept. 24, 2013 Def. Ltr. to Court). The Court held a telephone conference on September 30, 2013. Swartz Decl. ¶ 31; ECF. No. 127.

After hearing from the parties, the Court ordered an extension of the claim deadline, authorized notice to the class via postcards and a reminder text message by the claims administrator, and ordered Defendants to post notice in the club. Swartz Decl. ¶ 31; Ex. F (Sept. 30, 2013 Court Tr.) 6:8-7:23. The Court also ordered the parties to meet and confer in order to

5

determine a process by which Class Members could opt-in anonymously. Swartz Decl. ¶ 31; Ex. F (Sept. 30, 2013 Court Tr.) 3:4-5:5.

Initially, the parties could not agree on a process for anonymous filing, but, after another round of correspondence with the Court, on November 7, 2013, the parties informed the Court that they had agreed on a solution and submitted a proposed order. Swartz Decl. ¶ 33; ECF No. 136. The next day, the Court signed the proposed order, which, among other things, extended the time to file a claim form from November 25, 2013, to December 26, 2013, and ordered the identities of class members who filed claims after October 1, 2013, to be kept strictly confidential from all Defendants, including the Penthouse Executive Club's owners, management and staff (excluding the accounting staff). Swartz Decl. ¶ 34; ECF No. 137. The order also prohibited communications between the in-house accounting staff and its owners, management, and other staff that would apprise, reveal or cause to be revealed the identities of the claimants. Swartz Decl. ¶ 35; ECF No. 137.

The Court also approved Plaintiffs' proposed notice informing class members of the extension of the claim period and that that they are protected from retaliation. The Court ordered that the notice be posted in the Penthouse entertainers' locker room and sent to class members via a reminder post-card and a text message. Swartz Decl. ¶ 36; ECF No. 137. Twenty-three additional class members returned claim forms.

At the end of the claims period, 245 class members had returned claim forms. Ex. C (Patton Decl.) ¶ 9. Notice was mailed to 1,231 Class Members. *Id.* ¶ 4. 654 notices were returned undeliverable, and, of those, the claims administrator was able to obtain new addresses for 523, which were re-mailed to the new addresses. *Id.* ¶ 5. The claims administrator was not able to obtain new addresses for ninety-nine Class Members. *Id.* ¶ 5.

**V.      Class Action Fairness Act Notice**

Defendants sent notices to federal and state authorities as required by the Class Action Fairness Act ("CAFA") on or around October 7, 2013. *See* 28 U.S.C. § 1715(d); Swartz Decl. ¶ 32. The 90-day CAFA notice period concluded on January 5, 2014. *Id.*  No federal or state official objected. *Id.*

## SUMMARY OF THE SETTLEMENT TERMS

**I.      The Settlement Fund**

The Settlement Agreement creates a common fund of $8,000,000 (the "Fund"), Ex. A (Settlement Agreement) § 3.1(A), which covers Class Members' awards, the cost of settlement administration, any Court-approved service payments, and any Court-approved attorneys' fees and expenses. Ex. A (Settlement Agreement) § 3.1(A). All individuals who performed at Penthouse as entertainers between January 1, 2004 and June 12, 2012, may participate in the settlement. Ex. A (Settlement Agreement) § 1.5.

**II.     Releases**

Class Members who do not timely opt out release Defendants from all wage and hour claims under the NYLL. Ex. A (Settlement Agreement) § 3.5(A)(1). Each Class Member who files a Claim Form and Release shall release Defendants from all wage and hour claims under the FLSA as well. Ex. A (Settlement Agreement) § 3.5(A)(2).

**III.    Allocation Formula**

Each participating Class Member will receive $3,727.79 for the first calendar year during which she performed ("Minimum Payment"). Ex. A (Settlement Agreement) § 3.4. In addition, Class Members who worked during additional calendar years will receive additional payments of approximately $988.13 per year through June 12, 2012. *Id.*  For example, a Class Member who

7

worked for Penthouse during 2005, 2006, and 2007 will be allocated the base payment of $3,727.79 plus $1996.26 (two times $998.13).  Swartz Decl. ¶¶ 39.

Five calendar days after the Effective Date,[2] Defendants will deposit funds sufficient to pay all Class Members' claims, any Court-approved service payments, and $1,000,000 as a first installment of any Court-awarded attorneys' fees and expenses.  Ex. A (Settlement Agreement) § 3.1.  Defendants will pay the rest of any Court-awarded attorneys' fees and expenses in two additional installments three months and six months, respectively, after the Effective Date of the settlement.  *Id.*  Any funds remaining in the settlement account more than 180 days after the last date to file a claim will be returned to Defendants.  Ex. A (Settlement Agreement) § 3.4(F); Ex. B (Addendum to Settlement Agreement) § 1(e).

## IV.    Attorneys' Fees, Litigation Costs, and Service Awards

Class Counsel have filed a Motion for Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of Service Awards simultaneously with this Motion.

## V.    Settlement Claims Administrator

The parties retained SSI, a professional third-party class action claims administrator, to administer the settlement.  Swartz Decl. ¶ 49.  Courts have approved SSI as the claims administrator in wage and hour cases.  *See e.g.*, *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *2, *9 (S.D.N.Y. Apr. 16, 2012) (noting use of SSI's services in wage and hour settlement); *McMahon v. Olivier Cheng Catering & Events, LLC,* No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) (same).

---

[2]    The "Effective Date" of the settlement will be 31 days after the Court enters its Final Order and Judgment, unless there is an appeal, in which case the Effective Date will be the day after any and all avenues of rehearing or reconsideration have been exhausted. Ex. A (Settlement Agreement) § 1.12(A)-(B).

**ARGUMENT**

**I.      The Settlement Class Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified.  *See Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006).  On April 30, 2013, the Court preliminarily certified the settlement class.  The Court should now grant final certification because the settlement meets all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Plaintiffs respectfully request that the Court certify the Rule 23 Classes for purposes of effectuating the settlement.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).

**A.      Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy the numerosity requirement because there are more than 1200 Class Members.  Ex. C (Patton Decl.) ¶ 3-4.

9

## B.    Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005).  There must be a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181.

Plaintiffs and Class Members all bring the identical claims that Penthouse misclassified them as independent contractors, paid them no wages, unlawfully required them to pay "house fees" and other fees, and unlawfully took their tips, in violation of the FLSA and NYLL.  *See Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043, 2010 WL 5297221, at *6 (S.D.N.Y. Dec. 20, 2010) (plaintiff adult entertainers satisfied the Rule 23 commonality requirement because they had "raised several issues that are common to all members of the putative class . . . [including] the propriety of the defendants' policy of characterizing entertainers as independent contractors, rather than employees; . . . whether cash payments made by the defendants to entertainers in exchange for 'dance dollars' count toward the defendants' minimum wage obligations, or whether those payments are gratuities as a matter of law, as the plaintiffs contend; . . . whether the defendants' alleged policy of requiring entertainers to make certain payments to other employees constituted a demand for an unlawful kickback, under [NYLL]; and . . . whether fees and deductions allegedly levied against the entertainers violated [NYLL].");  *see also Meyer v. U.S. Tennis Ass'n*, No. 11 Civ. 6268, 2013 WL 1777556, at *6 (S.D.N.Y. Apr. 25, 2013)

10

(commonality satisfied where plaintiffs performed similar work consistent with employer's policies and sought a common determination that their work did not comport with classification as independent contractors); *Reyes v. Altamarea Group, LLC*, No. 10 Civ. 6451, 2011 WL 4599773, at *1-2 (S.D.N.Y. June 3, 2011) (commonality satisfied where plaintiffs contended, among other allegations, that defendant had a policy of misappropriating tips).  These common issues satisfy the commonality requirement.

### C.   Typicality

Typicality is also satisfied because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Penthouse classified all Plaintiffs and Class Members as independent contractors pursuant to the same company policy and pattern or practice, and Plaintiffs claim the same injury as do Class Members – that Defendants failed to pay them any wages, improperly required them to pay fees, and improperly withheld their tips.  Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement.  *Meyer*, 2013 WL 1777556, at *9 (typicality satisfied where "the duties [umpires alleging they were misclassified as independent contractors] performed resemble those of each other"); *Hart*, 2010 WL 5297221, at *6 (typicality

11

requirement "met by the plaintiffs' allegation that their miscategorization as independent contractors was pursuant to a blanket policy that applied to all members of the putative class").

### D.    Adequacy of the Named Plaintiffs

Plaintiffs Carattini and Hughes are adequate class representatives.[3]  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).   "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).  There is no evidence that the Plaintiffs' and the class members' interests are at odds.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013) (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (same). Class Counsel also meet the adequacy requirement of Rule 23(a)(4).  Swartz Decl. ¶ 8 (listing

---

[3]    Plaintiffs do not address the adequacy of former plaintiffs Leslie Liwanag or Nicki Mpogiatzis because both have opted out of the case, Ex. C (Patton Decl.), Ex. B, and are no longer class representatives.  *See Martens v. Smith Barney, Inc.*, 190 F.R.D. 134, 139-40 (S.D.N.Y. Dec. 2, 1999) ("[N]amed plaintiffs . . . who opt out of a settlement no longer remain in the class in any capacity.").  The settlement class may be certified so long as at least one class representative is adequate.  *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135-36 (S.D.N.Y. July 14, 2008) (finding adequacy requirement satisfied and certifying Rule 23 class where one lead plaintiff was adequate but the other lead plaintiff was not).

cases); Ambinder Decl. ¶ 5 (listing cases); Brown Decl. ¶¶ 5-8 (listing cases); Baskin Decl. ¶¶ 4-6 (providing background experience).

### E.    Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.    Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.*, 280 F.3d at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Class Members' common factual allegations and legal theory – that Penthouse violated federal and state law by misclassifying them as independent contractors, failing to pay them wages, improperly requiring them to pay fees and improperly withholding their tips –

13

predominate over any variations among Class Members. *See Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL 1209563, at *3-4 (S.D.N.Y. Mar. 21, 2013) (common factual allegations and legal theory predominated over variations in wage and hour misclassification case); *Hart*, 2010 WL 5297221, at *7 (courts have found that "the propriety of the defendants' blanket categorization of the plaintiffs as independent contractors, and, if improper, the legal consequences of that categorization, by their nature tend to predominate over any individual issues"); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "[t]his issue predominates over any individual calculations of overtime wages").

### 2.    A Class Action Is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

Class adjudication of this case is superior to individual adjudication because it will

---

[4]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

conserve judicial resources and is more efficient for class members, particularly those who lack

the resources to bring their claims individually. *See Beckman*, 293 F.R.D. at 473-74; *Morris*,

859 F. Supp. 2d at 617. Concentrating the litigation in this Court is also desirable because all of

the allegedly wrongful conduct occurred within its jurisdiction.

**II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.**

Rule 23(e) requires court approval for a class action settlement to insure that it is

procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). To

determine procedural fairness, courts examine the negotiating process leading to the settlement.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche

Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine

whether the settlement's terms are fair, adequate, and reasonable according to the factors set

forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other

grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy

in favor of settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (citation

omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6

(S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class

actions."). When, as here, "a settlement is negotiated prior to class certification, . . . it is subject

to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *accord Spann*,

2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations

support approving the proposed settlement.

### A.    The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *McMahon*, 2010 WL 2399328, at *4 (same). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (citation omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, *et al.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Class Counsel conducted thorough investigations and evaluated the claims and defenses, after significant discovery and motion practice, and after extensive arm's-length negotiations between the parties. Swartz Decl. ¶¶ 21, 22, 27; Ambinder Decl. ¶¶ 11-13; Brown Decl. ¶¶ 12-16; Baskin Decl. ¶¶ 10-14. The parties attended three mediation sessions over the course of a year, each with an experienced mediator, during which they engaged in a vigorous exchange regarding their respective claims and defenses. Swartz Decl. ¶¶ 24-26. After several follow-up telephone calls with the mediator following the final mediation, the Parties reached an agreement on all terms, which they memorialized in the Settlement Agreement. *Id.* These arm's-length negotiations involved counsel and mediators well-versed in wage and hour law, raising a presumption that the settlement achieved meets the

16

requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *McMahon*, 2010 WL 2399328, at *4.

### B.      The Proposed Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d at 463.  The *Grinnell* factors guide district courts in making this determination.  They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id*. at 463.  All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1.  <u>Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)</u>

By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with more than 1,000 Class Members and multiple claims.

Further litigation here would cause additional expense and delay.  Additional discovery would be required to establish liability and prove damages.  In addition, the parties likely would file cross-motions for summary judgment on Defendants' defenses.  If the Court denied the

17

motions, a fact-intensive trial would be necessary to determine employment status.  A trial would be lengthy and consume tremendous time and resources.  A judgment would likely be appealed. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

The notices sent to Class Members included an explanation of the allocation formula, an estimate of each Class Member's award, informed Class Members of their right to object to or exclude themselves from the settlement, and explained how to do so.  Ex. C (Patton Decl.), Ex. A (Notice) ¶¶ 4, 6, 12.  The fact that a "vast majority of class members neither object[s] nor opt[s] out" of a settlement "is a strong indication" of its fairness.  *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008).

Here, no Class Member objected to the settlement. [5]  This positive response is a "significant factor" favoring settlement approval.  *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).   In fact, a lack of any class member objections "may itself be taken as evidencing the fairness of a settlement."  *Asare v. Change Grp. of New York, Inc.*, No. 12 Civ. 3371, 2013 WL 6144764, at *10 (S.D.N.Y. Nov. 18, 2013) (citation omitted).

Likewise, only 22 out of 1,231 Class Members asked to be excluded from the settlement. Swartz Decl. ¶ 52; Ex. C (Patton Decl.) ¶ 7.   All of the opt-outs are represented by counsel and eleven of them are represented by the same counsel.  Swartz Decl. ¶ 53.  The relatively low number of out-outs provides further support for settlement approval.  *See Davis v. J.P. Morgan Chase & Co.*, No. 01 Civ. 6492, 2011 WL 4793835, at *3 (W.D.N.Y. Oct. 11, 2011) (granting

---

[5]      Although former plaintiff Leslie Liwanag expressed an intent to object to the Settlement, she has not filed an objection and may not do so because she chose to opt out of the Settlement on September 13, 2013.  Ex. C (Patton Decl.), Ex. B.

final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members").

Even a higher number of opt-outs would not stand in the way of other class members' rights to recover. The Court should "protect all Class Members-including the silent majority who have not voiced any objections to the Settlement." *In re Lloyd's American Trust Fund Litig.*, No. 96 Civ.1262, 2002 WL 31663577, at *24 (S.D.N.Y. Nov. 26, 2002); *see also Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987) ("[T]he mere fact that the only class members expressing opinions regarding the settlement were a vocal minority opposing it does not alter the district court's discretion in approving the settlement or its duty to protect the interests of the silent class majority . . . .").

Finally, the 19 percent participation rate favors approval. A 19 percent participation rate is typical in class action settlements. *See* 2 McLaughlin on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range."); *Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92 (3d Cir. 1985) (noting that only 12 percent of the class responded to the notice by filing a claim to share in the settlement); Deborah R. Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain 9-37 (2000) ("It was estimated that somewhere between 14 and 33 percent of all eligible consumers filed claims in the Levi Strauss suit."); William Simon, Class Actions-Useful Tool or Engine of Destruction, 55 F.R.D. 375, 379 (1973) ("Even after a settlement, where class

19

members are notified that they can share in the recovery merely by filing a simple proof of claim, only 10% to 15% bother to do so"). This factor weighs in favor of final approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3rd Cir. 2001) (internal quotation mark omitted). The Parties' discovery here meets this standard. In addition to conducting thorough pre-suit investigations, Class Counsel reviewed thousands of pages of documents; analyzed time, payroll and tip allocation records, tax documents, and financial records; prepared three Plaintiffs and four opt-in Plaintiffs for their depositions and defended them; served and responded to document requests and interrogatories; took a Fed. R. Civ. P. 30(b)(6) deposition; and deposed two of Defendants' managers. Swartz Decl. ¶ 21. This factor favors preliminary approval. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding, in a case at similar stage of discovery, that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims").

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934

(S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  Plaintiffs would have to overcome Penthouse's defenses that Class Members were independent contractors and not employees under the FLSA or NYLL, and that the tips they earned were not gratuities, but rather mandatory service charges which should be considered wages, among other defenses.  While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development.  Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of final approval.

### 5.    <u>Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)</u>

The risk of obtaining certification and maintaining it through trial is also present.  The Court has not certified the Rule 23 Class, and the Parties anticipate that such a determination would be reached only after further discovery and exhaustive briefing.  In opposing class certification, Defendants would likely argue that individualized questions preclude class certification.  Settlement eliminates the risk, expense, and delay that permeates such processes.

In addition, after the close of discovery, Defendants would likely challenge the Court's determination that Plaintiffs may proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  *See, e.g., Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify collective action).  Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

21

6. **Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)**

It is not certain that Defendants could withstand a greater judgment. In recent years, however, other similar establishments have filed for bankruptcy. *See Diaz v. Scores Holding Co.*, No. 07 Civ. 8718, 2011 WL 6399468, at *1 (S.D.N.Y. July 11, 2011) (noting bankruptcy petition of adult nightclub). Moreover, even if Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor favors final approval.

7. **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Defendants have agreed to pay a substantial amount, up to $8,000,000. This represents considerable value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not

22

*per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." By Class Counsel's estimation, the $8,000,000 settlement represents approximately 25% of the class's lost wages ($31,554,048), assuming approximately 130 days worked per year and an average shift of 8 hours, as well as spread-of-hours damages, house fee, executive dollar and tip deductions, plus laundering and uniform costs.[6] The settlement represents a substantial recovery for Class Members, particularly in light of the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal. Swartz Decl. ¶ 48.

Here, Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, and claims administration fees) of approximately $4,666.94. Ex. C (Patton Decl.) ¶ 13. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

---

[6] Class Counsel's estimate of 130 days worked per year is based on a sampling of documents produced by Defendants, with a spread of days and seasons. Swartz Decl. ¶ 43. Class Counsel estimated an 8 hour shift based on the average sign-in time of 8:00 p.m. and sign out time of at least 4:00 a.m. each night. *Id.* Based on these assumptions, the total minimum wage owed was approximately $4,959,829. *Id.* Class Counsel calculated spread-of-hours damages as approximately $32,847. *Id.* at ¶ 45. The total damages for unlawful deductions were approximately $26,155,190. *Id.* at ¶ 46. Laundering and uniform damages were approximately $406,182. *Id.* at ¶47.

**III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law**

Plaintiffs also request that the Court approve the settlement of their FLSA claims.  They have brought their FLSA claims as a collective action.  Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001).  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also McMahon*, 2010 WL 2399328, at *6.  Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *See Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *6-7 (S.D.N.Y. Oct. 2, 2013).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *McMahon*, 2010 WL 2399328, at *6.  Because the Settlement Agreement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.

24

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement class; (2) grant final approval of the class settlement; (3) approve the FLSA settlement and (4) appointing Outten & Golden LLP ("O&G"), Virginia & Ambinder LLP ("V&A"), Leeds Brown Law, PC ("LBL"), and the Urban Justice Center Sex Workers Project ("UJC") (collectively, "Plaintiffs' Counsel") as Class Counsel.

Dated: January 7, 2014
       New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz

Justin M. Swartz
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**VIRGINIA & AMBINDER LLP**
Lloyd Ambinder
LaDonna M. Lusher
111 Broadway, Suite 1403
New York, New York 10006
Telephone: (212) 943-9080
Facsimile: (212) 943-9082

**LEEDS BROWN LAW PC**
Jeffrey Brown
One Old Country Road, Suite 347
Carle Place, NY11514-1851
Telephone: (212) 661-4370
Facsimile: (516) 747-5024

**URBAN JUSTICE CENTER**
**SEX WORKERS PROJECT**
Gratienne Baskin (*admitted pro hac vice*)
123 Williams Street, 16th Floor

25

New York, New York 10038
Telephone: (646) 602-5600
Facsimile: (212) 533-4598

**Attorneys for Plaintiffs and the Class and
Collective**