## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/14/14

In re Penthouse Executive Club Compensation Litigation

Master File No. 10 Civ. 1145 (KMW)

KMW

---

### [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

KMW

Plaintiffs Stephanie Carratini and Nicole Hughes ("Plaintiffs")[1] are former entertainers

(dancers) at the Penthouse Executive Club, an adult night club in New York City.  Plaintiffs

Stephanie Carattini and Nicole Hughes filed a class and collective action on December 29, 2009.

Plaintiff Leslie Liwanag filed a similar case on February 11, 2010.  On June 11, 2010, the

District Court, Judge Naomi Buchwald presiding, ordered that the two cases be consolidated.

ECF No. 20.  Plaintiffs alleged that ~~Plaintiffs alleged that~~ Penthouse misclassified Class

KMW

Members as independent contractors, denying them the protections of the Fair Labor Standards

Act ("FLSA") and the New York Labor Law ("NYLL").   ECF Nos. 1, 20.  As a result, Plaintiffs

claimed, Defendants paid Class Members no wages, unlawfully required them to pay "house

fees" and other fees, and unlawfully took Class Members' tips by retaining a portion of Class

---

[1]      Former plaintiffs Leslie Liwanag and Nicki Mpogiatzis have opted out of the case and are no longer class representatives. *See Martens v. Smith Barney, Inc.*, 190 F.R.D. 134, 139-40 (S.D.N.Y. 1999) ("[N]amed plaintiffs . . . who opt out of a settlement no longer remain in the class in any capacity.").

Members' credit card and "executive dollar" tips. *Id.* Plaintiffs sought unpaid overtime wages, attorneys' fees and costs, interest, liquidated damages, and injunctive and declaratory relief. *Id.*

On October 27, 2010, the Court granted Plaintiffs' motion for conditional certification of a FLSA collective action under 29 U.S.C. § 216(b) and for court-authorized notice. ECF No. 34. Twenty additional dancers joined the case. On April 24, 2013, Class Counsel filed an Amended Complaint adding an additional named plaintiff, Nicki Mpogiatzis. ECF No. 108.

After substantial formal discovery and vigorous motion practice, the parties reached a settlement totaling $8,000,000. Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Decl.") ¶¶ 38. The parties reached this settlement after two formal mediations under the supervision of experienced employment law mediators, David Geronemus and Martin F. Scheinman, respectively. *Id.* ¶¶ 22-25. At the second mediation with Martin F. Scheinman, the parties made further progress towards a settlement and, during the next several months, exchanged more information and nearly finalized a settlement. *Id.* In order to address the outstanding issues, the parties attended a third mediation session on January 10, 2013. *Id.* ¶ 26. After several follow-up telephone calls with the mediator, the parties finally reached an agreement on all terms, which they memorialized in a formal settlement agreement ("Settlement Agreement"). *Id.*

On April 29, 2013, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally certifying the settlement class, and appointing Outten & Golden LLP ("O&G"), Virginia & Ambinder LLP ("V&A"), Leeds Brown Law, PC ("LBL"), and the Urban Justice Center Sex

2

Workers Project ("UJC") as Class Counsel, and authorizing notice to all Class Members.  ECF No. 110.

On June 26, 2013, a claims administrator sent Court-approved notice to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and reimbursement of their out-of-pocket expenses.  Swartz Decl., Ex. C (Patton Decl.) ¶ 4.  No Class Members objected to the settlement and 22 filed timely opt-out requests.  *Id.* ¶¶ 51-52.

On ~~October 2, 2013~~ January 7, 2014, Plaintiffs filed a Motion for Certification of the Settlement Class, **KMW** Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").  That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards").  Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on ~~October 17, 2013~~ January 14, 2014.  No Class Member objected to the **KMW** settlement at the hearing.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the ~~October 17, 2013~~ January 14, 2014 fairness hearing, and the complete record in **KMW** this matter, for the reasons set forth therein and stated on the record at the ~~October 17, 2013~~ January 14, 2014 **KMW** fairness hearing, and for good cause shown,

3

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1.     The Court certifies the following classes under Federal Rule of Civil Procedure

23(e), for settlement purposes:

> all individuals who perform or performed at the Penthouse Executive Club
> as entertainers from on or about January 1, 2004 through June 12, 2012,
> including any individual who has signed an "Entertainer License
> Agreement" or any other agreement containing a class or collective action
> waiver.

2.     Plaintiffs meet all of the requirements for class certification under Federal Rule of

Civil Procedure 23(a) and (b)(3).

3.     Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are

approximately 1,230 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp.*

*v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of

40 members.").

4.     The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the

commonality requirement. The claims of Plaintiffs and the Class Members share common issues of fact and                    KMW

law, including whether Defendants misclassified ~~them~~ Class Members as independent contractors, paid them no

wages, unlawfully required them to pay "house fees" and other fees, and unlawfully took their

tips, in violation of the FLSA and NYLL. *See Hart v. Rick's Cabaret Int'l Inc.*, No. 09 Civ.

3043, 2010 WL 5297221, at *6 (S.D.N.Y. Dec. 20, 2010) (plaintiff adult entertainers satisfied

the Rule 23 commonality requirement because they had "raised several issues that are common

to all members of the putative class . . . [including] defendants' policy of characterizing

entertainers as independent contractors, rather than employees; . . . whether cash payments made

by the defendants to entertainers in exchange for 'dance dollars' count toward the defendants'

minimum wage obligations, or whether those payments are gratuities as a matter of law, as the plaintiffs contend; . . . whether the defendants' alleged policy of requiring entertainers to make certain payments to other employees constituted a demand for an unlawful kickback, under [NYLL]; and . . . whether fees and deductions allegedly levied against the entertainers violated [NYLL]."); *see also Meyer v. U.S. Tennis Ass'n*, No. 11 Civ. 6268, 2013 WL 1777556, at \*6 (S.D.N.Y. Apr. 25, 2013) (commonality satisfied where plaintiffs performed similar work consistent with employer's policies and sought a common determination that their work did not comport with classification as independent contractors); *Reyes v. Altamarea Group, LLC*, No. 10 Civ. 6451, 2011 WL 4599773, at \*1-2 (S.D.N.Y. June 3, 2011) (commonality satisfied where plaintiffs contended, among other allegations, that defendant had a policy of misappropriating tips). These common issues satisfy the commonality requirement.

5.      Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the class members' claims. *Meyer*, 2013 WL 1777556, at \*9 (typicality satisfied where "the duties [umpires alleging they were misclassified as independent contractors] performed resemble those of each other"); *Hart*, 2010 WL 5297221, at \*6 (typicality requirement "met by the plaintiffs' allegation that their miscategorization as independent contractors . . . was pursuant to a blanket policy that applied to all members of the putative class.").

6.      Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Plaintiffs' and the class members' interests are at odds. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013) (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (same).

Outten & Golden LLP and  Shavitz Law Group, P.A.

7.     In addition, Plaintiffs' Counsel are experienced and adequate to serve as Class

293 F.R.D. at 473

Counsel. *See, e.g.*, *Beckman*, ~~2013 WL 1803736, at *3~~ (noting that attorneys at Outten &          KMW

Golden LLP "have substantial experience prosecuting and settling employment class actions,

including wage and hour class actions[,] and are well-versed in wage and hour law and class

action law," and finding ~~both firms~~ adequate class counsel) (internal quotation and citation          KMW

omitted); *Dabrowski v. Abax Inc.*, 84 A.D.3d 633, 634 (N.Y. App. Div. 2011)  (observing that

V&A "has demonstrated its expertise and zealous representation of the plaintiffs here, as well as

in prior class action cases which have reached this court on appeal"); *Garcia et al. v. The*

V&A and

*Executive Club*, No. 10 Civ. 1545, Doc. No. 66 (S.D.N.Y. May 11, 2012) (appointing Leeds          KMW

Brown Law, P.C., formerly Leeds Morelli Brown P.C., as class counsel); *Clark v. Astrue*, 274

472

F.R.D. 462, ~~No. 06 Civ. 15521~~ (S.D.N.Y. Mar. 18, 2011) (noting that UJC was "qualified,          KMW

experienced, and generally able to conduct the litigation").

8.     Plaintiffs also satisfy Rule 23(b)(3).  Plaintiffs' common factual allegations and a

common legal theory – that Defendants violated federal and state law by misclassifying them as

independent contractors, failing to pay them wages, improperly requiring them to pay fees and

improperly withholding their tips – predominate over any factual or legal variations among class

members. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at

*3 (S.D.N.Y. Mar. 21, 2013) (common factual allegations and legal theory predominated over

variations in wage and hour misclassification case); *Hart*, 2010 WL 5297221, at *7 (courts have

found that "the propriety of the defendants' blanket categorization of the plaintiffs as

independent contractors, and, if improper, the legal consequences of that categorization, by their

nature tend to predominate over any individual issues."); *Torres v. Gristede's Corp.*, No. 04 Civ.

3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient

proof that Defendants engaged in a common practice to deny employees overtime pay," and "[t]his issue predominates over any individual calculations of overtime wages").

9.    Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Beckman*, ~~2013 WL 1803736, at *3~~ 293 F.R.D. at 473   KMW; *Morris*, 859 F. Supp. 2d at 617. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction.

## APPROVAL OF THE SETTLEMENT AGREEMENT

10.    The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11.    Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 452 (2d Cir. 1974) *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

12.    Courts examine procedural and substantive fairness in light of the "strong judicial policy ~~favoring~~ in favor of settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation and citation omitted); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005).   KMW

13.    A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

### *Procedural Fairness*

14.    The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *McMahon v. Olivier Cheng Catering & Events, LLC,* No. 08 Civ. 8713, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010).  The settlement was reached after the parties had conducted a thorough investigation and evaluated the claims and defenses, after significant discovery and motion practice, and after arm's-length negotiations between the parties. Swartz Decl. ¶¶ 22-27.

15.    The parties attended three mediation sessions over the course of a year, each with an experienced mediator, during which they engaged in a vigorous exchange regarding their respective claims and defenses. Swartz Decl. ¶¶ 22-26.  After several follow-up telephone calls with the mediator following the final mediation, the Parties reached an agreement on all terms, which they memorialized in the Settlement Agreement. *Id.*  These arm's-length negotiations involved counsel and mediators well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116-17; *McMahon*, 2010 WL 2399328, at *4.

*Substantive Fairness*

16.     The settlement is substantively fair.  All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

17.     The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.

18.     Litigation through trial would be complex, expensive and long.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

19.     The class's reaction to the settlement was positive.  The Notices sent to Class Members included an explanation of the allocation formula, an estimate of each Class Member's award, informed Class Members of their right to object to or exclude themselves from the settlement and explained how to do so.  Ex. C (Patton Decl.) Ex. A (Notice) ¶¶ 4, 6, 12.  No Class Member has objected to the settlement.[2]  Ex. C (Patton Decl.) ¶ 8.  ~~Twenty-two~~ *Only twenty-two* Class Members asked to be excluded from the settlement~~, and more importantly, no~~ *No* Class Members *to the settlement* objected.  Swartz Decl. ¶ 52; Ex. C (Patton Decl.) ¶¶ 7-8.  This response demonstrates strong support for the settlement.  *See Davis v. J.P. Morgan Chase & Co.*, ~~No. 01 Civ. 6492, 2011 WL~~

*KMW*

*KMW*

---

[2]     Although former plaintiff Leslie Liwanag expressed an intent to object to the Settlement, she has not filed any objection and opted out of the Settlement on September 13, 2013.  Ex. C (Patton Decl.), Ex. B.

~~4793835, at *3 (W.D.N.Y. Oct. 11, 2011); Davis v. J.P. Morgan Chase & Co.~~, 827 F. Supp. 2d      KMW

172, 177 (W.D.N.Y. 2011) (granting final approval and noting "very little negative reaction by

class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3

objected); *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb.

18, 2011) (granting final approval of the settlement where 7 out of 2,025 class members objected

and 2 opted out); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374,

at * 3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of

5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong

support by class members"); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)

(approving settlement where 13 out of 3,500 class members objected and 3 opted out, noting that

"[t]he fact that the vast majority of class members neither objected nor opted out is a strong

indication" of fairness).

      20.     The fact that several Class Members represented by the same counsel have opted

out of the settlement does not stand in the way of the "silent majority's" right to recover. *In re*

*Lloyd's American Trust Fund Litig.*, No. 96 Civ.1262, 2002 WL 31663577, at *24 (S.D.N.Y.

Nov. 26, 2002) ("[T]his Court has a fiduciary duty to protect all Class Members-including the

silent majority who have not voiced any objections to the Settlement."); *Grant v. Bethlehem Steel*

*Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) ("[T]he mere fact that the only class members expressing

opinions regarding the settlement were a vocal minority opposing it does not alter the district

court's discretion in approving the settlement or its duty to protect the interests of the silent class

majority . . . .").

      21.     The parties have completed enough discovery to recommend settlement.  The

pertinent question is "whether counsel had an adequate appreciation of the merits of the case

before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)

(internal quotation marks omitted). Here, in addition to conducting thorough pre-suit

investigations, Class Counsel reviewed thousands of pages of documents; analyzed time, payroll

and tip allocation records, tax documents, and financial records; prepared three Plaintiffs and

four opt-in Plaintiffs for their depositions and defended them; served and responded to document

requests and interrogatories; took a Fed. R. Civ. P. 30(b)(6) deposition; and deposed two of

Defendants' managers. The parties' participation in three mediation sessions allowed them to        KMW

further explore the claims and defenses. The third *Grinnell* factor weighs in favor of final

approval.

22.     The risk of establishing liability and damages further weighs in favor of final

approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171

F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the

uncertainty of a trial on the merits. *See In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y.

1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6

(S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and

damages, including overcoming Defendants' defenses that Class Members were independent

contractors and not employees under the FLSA or NYLL, and that the tips they earned were not

gratuities, but rather mandatory service charges which should be considered wages, among other

defenses. The proposed settlement eliminates this uncertainty. This factor therefore weighs in

favor of final approval.

23.     The risk of obtaining class certification and maintaining both collective and class

certification through trial is also present. A contested class certification motion would likely

require extensive discovery and briefing. Defendants would also be likely to challenge this

11

Court's certification of the FLSA collective by seeking decertification at a later date, after the close of discovery. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

24.     Even if Defendants could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted)). Accordingly, this factor is neutral and does not preclude the Court from approving the settlement.

25.     The amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). These factors also weigh in favor of final approval.

## APPROVAL OF THE FLSA SETTLEMENT

26.     The Court hereby approves the FLSA settlement.

27.     Because, under the FLSA, "parties may elect to opt in but a failure to do so does

not prevent them from bringing their own suits at a later date," *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, *McMahon*, 2010 WL 2399328, at *6. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23.

28.     Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon*, 2010 WL 2399328, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *McMahon*, 2010 WL 2399328, at *6.

29.     In this case, the settlement was the result of arm's-length negotiation ~~involving vigorous back-and-forth~~ vigorous. Swartz Decl. ¶ 27. During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a *bona fide* dispute under circumstances supporting a finding that is fair and reasonable. KMW

## DISSEMINATION OF NOTICE

30.     Pursuant to the Preliminary Approval Order, the Notices were sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the right to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on ~~October 17, 2013.~~ January 14, 2014 Additional notice was provided on www.stripperweb.com pursuant to this KMW

Court's order (ECF No. 116). The Claims Administrator also sent two text messages to Class

Members on August 9, 2013 and September 10, 2013, and established a website that provided

notice of the settlement.  On October 1, 2013, Notices were sent to 28 Class Members for whom

the Claims Administrator located new possible addresses.  Patton Decl. ¶ 5; ECF No. 123.  The

second notice period ended on December 26, 2013.  No Class Members included in this second

mailing opted out or objected. Class Members were provided with the best notice practicable

under the circumstances.

31.    The Court further finds that the Notices and their distribution comported with all

constitutional requirements, including those of due process.

32.    The Court confirms Settlement Services, Inc. as the Claims Administrator.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

33.    On April 29, 2013, the Court appointed Outten & Golden LLP ("O&G"), Virginia

& Ambinder LLP ("V&A"), Leeds Brown Law, PC ("LBL"), and the Urban Justice Center Sex

Workers Project ("UJC") as Class Counsel because they met all of the requirements of Federal

Rule of Civil Procedure 23(g).  *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165

(S.D.N.Y. 2008) (Rule 23(g) requires the court to consider "the work counsel has done in

identifying or investigating potential claims in the action, . . . counsel's experience in handling

class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's

knowledge of the applicable law, and . . . the resources counsel will commit to representing the

class.") (internal quotation marks omitted).

34.    Class Counsel are experienced employment lawyers with good reputations among

the employment law bar. *See, e.g., Beckman,* ~~2013 WL 1803736, at *3~~ **293 F.R.D. at 473** (noting that attorneys at **KMW**

Outten & Golden LLP "have substantial experience prosecuting and settling employment class

14

_Outten & Golden LLP and Shavitz Law Group, P.A._

actions, including wage and hour class actions[,] and are well-versed in wage and hour law and

class action law," and finding ~~both firms~~ adequate class counsel) (internal quotation and citation    KMW

omitted); _Dabrowski v. Abax Incorporated_, 84 A.D.3d 643 (1st Dept. 2011) (observing that

V&A "has demonstrated its expertise and zealous representation of the plaintiffs here, as well as

in prior class action cases which have reached this court on appeal"); _Garcia et al. v. The_

_Executive Club_, No. 10 Civ. 1545, Doc. No. 66 (S.D.N.Y. May 11, 2012) (appointing V&A and Leeds    KMW

Brown Law, P.C. (formerly Leeds Morelli Brown P.C.) as class counsel); _Clark v. Astrue_, 274

F.R.D. 462, ~~No. 06 Civ. 1552~~ 472 (S.D.N.Y.  Mar. 18, 2011) (noting that UJC was "qualified,    KMW

experienced, and generally able to conduct the litigation").

    35.    The work that Class Counsel has performed in litigating and settling this case

demonstrates their commitment to the class and to representing the class's interests.  Class

Counsel have committed substantial resources to prosecuting this case.

    36.    The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class

Counsel $2,175,000, which is 27.1875% of the settlement fund.

    37.    The trend in this Circuit is to use the percentage of the fund method to

compensate attorneys in common fund cases like this one.  _McDaniel v. County of Schenectady_,

595 F.3d 411, 417 (2d Cir. 2010); _Wal-Mart Stores, Inc. v. Visa U.S.A., Inc._, 396 F.3d 96, 121

(2d Cir. 2005); _Sewell_, 2012 WL 1320124, at *10; _Beckman_, ~~2013 WL 1803736, at *8~~ 293 F.R.D. at 477.    KMW

    38.    Although the Court has discretion to award attorneys' fees based on the lodestar

method or the percentage-of-recovery method, _McDaniel_, 595 F.3d at 417, in wage and hour

class action lawsuits, public policy favors a common fund attorneys' fee award, _Beckman_, ~~2013~~

~~WL 1803736, at *8~~ 293 F.R.D. at 477; _McMahon_, 2010 WL 2399328, at *7.  Fee awards in wage and hour cases    KMW

are meant to "encourage members of the bar to provide legal services to those whose wage

claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3.

39.     Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

41.     Class Counsel's request for 27.1875% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *McMahon*, 2010 WL 2399328, at *7.

42.     Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports class counsel's request for one-third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *McMahon*, 2010 WL 2399328, at *8 (internal citation and quotations omitted).

43.     In addition, in Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for up to 33% of a class-wide recovery and that they would pay Class Counsel 33% of any individual recovery. Decl. of Justin M. Swartz in

Supp. of Pls.' Mot. for Approval of Attys' Fees and Reimbursement of Expenses and Pls.' Mot.

for Approval of Service Awards ("Swartz Fees & Service Awards Decl.") ¶ 18; Decl. of Lloyd

Ambinder in Supp. of Pls.' Mot. for Approval of Attys' Fees and Reimbursement of Expenses

and Pls.' Mot. for Approval of Service Awards ("Ambinder Fees & Service Awards Decl.") ¶ 14.

This also provides support for Class Counsel's request for 27.1875% of the fund.

44.    No Class Member objected to Class Counsel's request for one-third of the fund,

which also provides support for Class Counsel's fee request of 27.1875%.

45.    All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 48-49

(2d Cir. 2000) weigh in favor of the requested fee award.

46.    Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that

the lodestar sought by Class Counsel, approximately 1.13 times their hourly rates, falls within the range granted     KMW

by courts and  is reasonable.  "Courts regularly award lodestar multipliers of up to eight times the

lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. at 481; *see also*

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class

action settlements where multiplier ranged up to 8.5 times, and in one case 19.6 times); *Sewell*,

2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and

six."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (a "multiplier of 2.09 is at

the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g.*,

*Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well

within the range of multipliers that courts have allowed"); ~~*Ramirez v. Lovin' Oven Catering*~~     KMW

~~*Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting~~

~~attorneys' fees equal to 6.8 times lodestar)~~; *Davis*, 827 F. Supp. 2d at 184-86 (awarding

multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10

Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 741, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768, 770 (S.D. Ohio 2007) (awarding multiplier of six times); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of 6.96 times); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y. 1991) (awarding multiplier of 8.74).

47.     The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). "[W]here 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine*, 2010 WL 3119374, at *6). In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the

18

settlement and distributing the fund. *See* Swartz Fees & Service Awards Decl. ¶ 12. "The fact

that Class Counsel's fee award will not only compensate them for time and effort already

expended, but for time that they will be required to spend administering the settlement going

forward also supports their fee request." *See McMahon*, 2010 WL 2399328, at *8.

     48.    The attorneys' fee percentage should come out of the full settlement amount,

rather than the claimed funds. "An allocation of fees by percentage should . . . be awarded on

the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina*

2d Cir.

*Model Agency, Inc.*, 473 F.3d 423, 437 (~~S.D.N.Y.~~ 2007). In *Diaz*, the court found that "although

KMW

the percentage-of-recovery here is based on the entire settlement fund, including the amount that

will revert to defendants, rather than on the portion of the fund equal to the claims actually made,

the fee requested is nevertheless reasonable in light of the *Goldberger factors.*" *Diaz v. Eastern*

*Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010).

"The whole purpose of fee-shifting statutes is to generate attorneys' fees that are

*disproportionate* to the plaintiff's recovery." *Torres v. Gristede's Operating Corp.*, 519 F.

App'x 1, 6 (2d Cir. 2013) (citing *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011)).

"[T]he value of legal service rendered in the creation of a settlement fund [is not] diminished by

the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time*

*Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010).

     49.    The Court also awards Class Counsel reimbursement of their litigation expenses

in the amount of $57,729.06. Courts typically allow counsel to recover their reasonable out-of-

pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 &

n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including court and process

server fees, postage and courier fees, transportation, working meals, photocopies, electronic

research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class.

50.     The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

51.     The Court finds reasonable service awards of $15,000 each for named Plaintiffs Stephanie Carattini and Nicole Hughes ~~in the amount~~, and of $8,750 to opt-in Plaintiff Alicia     **KMW** Daniels, in recognition of the services they rendered on behalf of the class.[3] These amounts shall be paid from the settlement fund.

52.     Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *McMahon*, 2010 WL 2399328, at *9.   Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).

53.     The "Effective Date" of the settlement shall be 31 days after the date of this Order if no party appeals this Order.  If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.  This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

54.     Within 3 days of the time to appeal this Order has expired, the claims

---

[3]     The Court declines to grant service awards to former named plaintiffs Leslie Liwanag or Nicki Mpogiatzis, or to former opt-in plaintiffs Nadene Speer or Marsha Chalmers because they have opted out of the case and are not participating in the settlement. *See Morris*, 859 F. Supp. 2d at 624 (awarding service awards to remaining named plaintiff only, after one named plaintiff     **KMW** objected and other named plaintiff opted out); *Martens*, 190 F.R.D. at 139-40 ("[N]amed plaintiffs . . . who opt out of a settlement no longer remain in the class in any capacity.").

administrator shall distribute the funds in the settlement account by making the following

payments in the order below:

      A.      Paying Class Counsel 27.1875% of the fund ($2,175,000);

      B.      Reimbursing Class Counsel for $57,729.06 in litigation costs and expenses;

      C.      Paying service awards of $15,000 each to named Plaintiffs Stephanie Carattini and Nicole Hughes, and paying a service award of $8,750 to opt-in Plaintiff Alicia Daniels.

55.      Within 3 days of the time to appeal this Order has expired, and after the claims

administrator has distributed the funds according the schedule set forth above, Defendants shall

make payments to class members in accordance with the allocation plan described in the

Settlement Agreement and the Addendum to the Settlement Agreement.

56.      The Court retains jurisdiction over this action for the purpose of enforcing the

Settlement Agreement and overseeing the distribution of settlement funds.  The parties shall

abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

57.      Upon the Effective Date, this litigation shall be dismissed with prejudice, and

Class Members who have not excluded themselves from the settlement shall be permanently

enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the

settlement. *The Motions in Docket numbers 139, 141, and 147 are granted. The Clerk of Court is directed to close this case. Any other pending motions are moot.*

It is so ORDERED this *14th* day of *January*, 2014.


                                    *Kimba M. Wood*
                                    Honorable Kimba M. Wood
                                    United States District Judge